JEFFREY C. KRAUSE, (State Bar No. 94053)
jkrause@stutman.com
H. ALEXANDER FISCH, (State Bar No. 223211)
afisch@stutman.com
GABRIEL I. GLAZER, (State Bar No. 246384)
gglazer@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Telecopy: (310) 228-5788

PAUL K. CAMPSEN, (VSB No. 18133)
pkcampsen@kaufcan.com
DENNIS T. LEWANDOWSKI, (VSB No. 22232)
dtlewand@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Telecopy: (757) 624-3169

Counsel for The Colonial Williamsburg Foundation

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>CARTER'S GROVE, LLC<br><br>                Debtor. | Bankruptcy Case No: 11-30554<br><br>Chapter 11<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>**Hearing**<br><br>Date: April 1, 2011<br>Time: 9:30 A.M.<br>Place: Courtroom 23<br>        235 Pine Street<br>        San Francisco, CA 94104 |

The Colonial Williamsburg Foundation ("CWF"), by counsel and pursuant to 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure, appears before the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("CA Bankruptcy Court"), and submits this memorandum and the Declaration of Robert B. Taylor in Support of Motion to Transfer Venue ("Taylor Declaration") in support of its motion to transfer venue ("Motion"). The Motion, which is being filed simultaneously with this memorandum, seeks to transfer the venue of this case from the CA Bankruptcy Court to the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division ("VA Bankruptcy Court").

## Introduction

CWF is the beneficiary of a first deed of trust on the sole asset of Carter's Grove, LLC ("Debtor"), securing the payment of a debt of approximately $4,000,000. The Debtor's sole asset is certain real property and improvements located in James City County, Virginia ("Virginia Property"). There are no significant operations being conducted on the Virginia Property, other than activities related to its preservation and upkeep. It produces no income and the Debtor's CA Bankruptcy Court filings indicate that the Debtor has ten (10) unsecured creditors, seven (7) of which are located in Virginia. The Debtor appears to have engaged one caretaker of the Virginia Property, who is in Virginia. CWF, the Debtor's primary secured creditor, is located in Virginia.

The Debtor's only connection to California is that Halsey M. Minor ("Minor"), who is the trustee of the sole member of the Debtor, the Halsey McLean Minor Revocable Trust 11304, lists his present address in San Francisco. The Debtor is a Virginia limited liability company that was formed in December 2007, and whose sole purpose was to acquire and own the Virginia Property. The operating agreement for the Debtor provides that its construction and enforcement will be governed by Virginia law. Until February 7, 2011, the Debtor's principal place of business and principal office are listed in the operating agreement as being 1340 Stony Point Road, Charlottesville, Virginia. Effective December 31, 2010, the Debtor's status with the Virginia State Corporation Commission was listed as "cancelled".[1]

---

[1] The Debtor's existence was reinstated on February 7, 2011, one week before the petition date, at which time the Debtor changed its principal office from Virginia to California.

There are compelling reasons to transfer to the case to the VA Bankruptcy Court for the convenience of the parties and in the interest of justice. The Debtor is a Virginia entity. Its sole asset, the Virginia Property, most of its creditors and the likely witnesses are located in Virginia. The major issues in the case will involve experts based in Virginia and application of Virginia law. Moreover, the Debtor's unsecured creditors, the largest of whom is owed approximately $18,000, will be deprived, as a practical matter, of the opportunity to participate in the case if venue is retained in the CA Bankruptcy Court.

These and other factors discussed below demonstrate that the VA Bankruptcy Court is the proper and most efficient venue for the convenience of the parties and in the interest of justice.

## Jurisdiction

The CA Bankruptcy Court has jurisdiction of the Motion pursuant to 28 U.S.C. § 1334(b). It is a core proceeding as defined by 28 U.S.C. § 157(b). The relief requested in the Motion is sought under 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure.

## Factual Background[2]

The Debtor is a limited liability company organized under the laws of the Commonwealth of Virginia. It was created by the execution of an operating agreement ("Op. Agreement") and articles of incorporation ("Articles"), true and correct copies of which are attached as **Exhibit A** and **Exhibit B** to the Taylor Declaration. The Operating Agreement and the Articles establish the Debtor's multiple connections with Virginia. For example, the Debtor is organized under the laws of the Commonwealth of Virginia. (Op. Agreement Art. I § 1.1.) The Operating Agreement provides that it will be construed, enforced and interpreted, and the formation, administration and termination of the Debtor shall be governed, by Virginia law. (Op. Agreement Art. I § 1.3; Art. X § 10.9). The Debtor's sole purpose is to acquire, finance, develop, improve, conserve, own and hold title to, the Virginia Property. (Op. Agreement Art. I § 1.5.) Art. IX § 9.1 (a) of the Operating Agreement states that the Debtor's principal place of business and the principal

---

[2] As the Debtor has yet to file its schedules, information that the Debtor has filed with the CA Bankruptcy Court concerning the Debtor's finances is limited.

office are listed as 1340 Stony Point Road, Charlottesville, VA (though the Articles listed a California address). The books of account, records and all documents and other writings of the Debtor are required to be kept and maintained at the principal office of the Debtor in Charlottesville, VA. (Op. Agreement Art. IX § 9.3.)

In December 2007, the Debtor purchased the Virginia Property, which is known as Carter's Grove, from CWF. The Virginia Property is an approximately 400-acre parcel situated on the James River in James City County, Virginia.[3] It is designated as a National Historic landmark and is listed on the National Register of Historic Places and the Virginia Landmarks Register. The Virginia Land includes an 18th-century plantation mansion (the "Mansion"), Native American and early colonial archaeological sites, reconstructed slave quarters and an archaeological museum built by CWF. The Mansion, which has approximately 18,500 square feet of living space, is a Georgian-style brick structure with a refined, sophisticated design featuring some of the best American decorative woodwork from the period. The decorative woodwork is irreplaceable and, to be preserved, the interior must be maintained at a constant temperature and humidity. During 2007, CWF offered the Virginia Property for sale on a highly restricted basis to assure the protection and stewardship of the property's historic, architectural, visual, archeological and environmental resources.

Since the Debtor acquired the Virginia Property, a caretaker has lived in "Mrs. Eddy's cottage," a small outbuilding, but the Mansion has been vacant. No commercial activity has occurred, or is occurring, on the Virginia Property and it produces no income. Minor has previously represented that he intended to occupy the Virginia Property and operate a thoroughbred breeding operation; this has not occurred. Other than contributions from Minor, the Debtor has no funds to operate, or to maintain and preserve, the Virginia Property.

---

[3] James City County is located within the Newport News district of the VA Bankruptcy Court. LBR 1071-1 of the Local Rules of the United State Bankruptcy Court for the Eastern District of Virginia.

548632v1

## A. The Loan.

The purchase price for the Virginia Property was paid, in part, by a deed of trust note executed by Debtor ("Note"), a true and correct copy of which is attached to the Taylor Declaration as **Exhibit C**. The Note is dated December 17, 2007, and is payable to the order of CWF at its offices in Williamsburg, Virginia. The original principal amount of the Note was $10,300,000.

The Debtor agreed to pay the Note in six (6) consecutive semiannual installments of principal of $1,716,666.67, plus accrued and unpaid interest. The first installment was due on July 15, 2008, and thereafter an installment was due on each July 15 and January 15 with the last installment due on January 15, 2011. Minor has unconditionally guaranteed payment of the Note.

The Note is secured by a deed of trust ("Deed of Trust"), a true and correct copy of which is attached to the Taylor Declaration as **Exhibit D**, dated December 17, 2007, by and among the Debtor, as grantor, Manus E. Holmes, as trustee, and CWF, as the beneficiary. The Deed of Trust granted CWF a first priority lien on the Virginia Property, including all buildings, improvements, fixtures and equipment. It is recorded in the Clerk's Office of the Circuit Court of the City of Williamsburg and County of James City, Virginia, as Instrument No. 070034970. Pursuant to the terms of the Deed of Trust, the Debtor agreed to, among other things, continually maintain liability and property insurance on the Virginia Property and to keep and maintain the Virginia Property in good condition, order and repair. The Debtor also agreed not to allow subordinate liens on the Virginia Property. The Deed of Trust is governed by, and construed under, Virginia law.

The Note contains a confession of judgment provision whereby the Debtor, as maker, and Minor, as guarantor, both consented to the entry of a judgment in the Circuit Court of the City of Williamsburg and County of James City, Virginia, in the event of a default under the Note. It also contains a provision waiving any right to offset or reduction.

## B. The Default.

Notwithstanding extensive efforts by CWF to work with Minor, CWF notified the Debtor that it was in default under the terms of the Note and Deed of Trust by failing to make the July 15, 2010, installment payment. Taylor Declaration ¶ 9. CWF demanded payment of the July

15, 2010 installment by not later than January 21, 2011. Taylor Declaration ¶ 9. Payment was still not made. Taylor Declaration ¶ 9. The Debtor also failed to pay the January 15, 2011, final installment. Taylor Declaration ¶ 9. The Debtor also defaulted by failing to pay real property taxes on the Virginia Property, resulting in a lien senior to CWF's Deed of Trust.

Moreover, the Debtor allowed the homeowners insurance on the Virginia Property to lapse and failed to maintain the Virginia Property by, among other things, not paying delinquent utility bills. CWF was informed by Minor that the Debtor would not pay the outstanding utility bill owing and, as a consequence, the electricity service would be terminated. Taylor Declaration ¶ 10. These violations of the Deed of Trust forced CWF to obtain insurance and to pay the delinquent utility bills. Had the utilities been discontinued, irreparable harm could have resulted to the interior of the Mansion, including its irreplaceable woodwork.

In addition, the Debtor allowed its existence to be terminated by the Virginia State Corporation Commission effective December 31, 2010. Taylor Declaration ¶ 13. Its existence was not reinstated until February 7, 2011, presumably in anticipation of the bankruptcy filing. Id.

On January 24, 2011, the outstanding amounts under the Note totaled in excess of $4,000,000, and interest, fees and costs continue to accrue. Taylor Declaration ¶ 11. A foreclosure sale of the Virginia Property was scheduled for February 15, 2011. Id.

**C.    Bankruptcy.**

The Debtor filed a voluntary chapter 11 petition in the CA Bankruptcy Court on February 14, 2011, the day before the foreclosure sale, commencing the above-captioned chapter 11 case. The Debtor has not filed schedules. In its "skeleton" filing, the Debtor listed ten unsecured creditors. Seven (7) of these creditors, including the largest unsecured creditor, are located in Virginia. With the exception of one creditor in Charlottesville, all are within the boundaries of the VA Bankruptcy Court. Of the remaining three (3) creditors not located in Virginia, one (1) is in the adjacent state of North Carolina; one (1) is in Grapevine, Texas, which is approximately three hundred miles closer to Newport News, Virginia than San Francisco, California; and the last is located in the Central District of California.

There appear to be four secured creditors which assert liens on the Virginia Property. CWF is the beneficiary of the first priority deed of trust. AVN AIR, LLC, a Connecticut limited liability company and subsidiary of GE Capital, a multinational financing corporation, is the beneficiary of a subordinate deed of trust dated February 1, 2010, in the maximum amount of $5,000,000.[4] Taylor Declaration ¶ 12. Sotheby's, Inc., a Delaware corporation operating out of New York, is the beneficiary of a second subordinate deed of trust dated January 31, 2011, in the amount of $3,400,000.[5] The second subordinate lien on the Virginia Property was admitted to record the day before the Debtor filed its petition. Id. Both subordinate liens secure the debt of Minor, not the Debtor. Id. The fourth secured creditor is the County for nonpayment of real property taxes.

## Argument

## Venue Should Be Transferred To The VA Bankruptcy Court
## For The Convenience Of The Parties And In The Interests Of Justice[6]

Venue of a chapter 11 bankruptcy case is governed by 28 U.S.C. § 1408. It provides that a case under title 11 may be commenced in the district court for the district in which the domicile, residence, principal place of business in the United States, or principal assets in the United States of the entity that is the subject of the case have been located for the 180 days immediately preceding such commencement. The Debtor asserts that its principal place of business is in San Francisco, where its manager, Minor, resides. San Francisco, the Debtor appears to allege, is the Debtor's "nerve center" and, thus, its principal place of business.

---

[4] This lien was placed on the Virginia Property without CWF's knowledge or consent and an intentional violation of the Debtor's contractual agreement with CWF. See Taylor Declaration ¶ 12 and Deed of Trust ¶ 1(u). It appears to secure obligations of an insider, not obligations of the Debtor, and may be avoidable as a constructive fraudulent transfer.

[5] This lien was placed on the Virginia Property without CWF's knowledge or consent and in intentional violation of the Debtor's contractual agreement with CWF. Taylor Declaration ¶ 12 and Deed of Trust ¶ 1(u). The Debtor's action in granting Sotheby's a lien on the Virginia Property likely constitutes a fraudulent conveyance, because it appears to secure obligations of an insider, not obligations of the Debtor.

[6] Although some courts treat the "convenience of the parties" and the "interests of justice" as distinct grounds for transferring a case, the Bankruptcy Courts in California combine them and look at the totality of the circumstances in each case.

While venue may be appropriate in the CA Bankruptcy Court, 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(a) permit the CA Bankruptcy Court to transfer the Debtor's case to the VA Bankruptcy Court in the "interest of justice" or "for the convenience of the parties." Case law has established certain criteria by which Bankruptcy Courts determine what constitutes "in the interest of justice" or "for the convenience of the parties."

In considering transfer for the convenience of the parties or in the interest of justice, Bankruptcy Courts in California consider the totality of the circumstances, including the following non-exclusive factors: (a) proximity of creditors to the CA Bankruptcy Court; (b) proximity of debtor to the VA Bankruptcy Court; (c) proximity of witnesses necessary to administration of estate; (d) location of assets; (e) economic and efficient administration of case; and (f) need for further administration if liquidation ensues. Donald v. Curry (In re Donald), 328 B.R. 192, 204 (B.A.P. 9th Cir. 2005). The burden is on the party seeking the transfer to prove by a preponderance of the evidence that the transfer is appropriate.

An analysis of these factors overwhelmingly supports the transfer of the venue of this case from the CA Bankruptcy Court to the VA Bankruptcy Court.

**A. Proximity of Creditors.**

Based on the listing of the largest unsecured creditors provided by the Debtor, seven out of ten of the listed creditors are located within the jurisdiction of the VA Bankruptcy Court. This includes the largest unsecured creditor, Virginia Dominion Power, with its $18,000 claim. The remaining unsecured creditors have claims less than $18,000 and as small as $133.20.

Retention of venue in the CA Bankruptcy Court would exclude the unsecured creditors from effectively participating in the proceedings given the expenses involved and the relatively small amount of their respective claims. "While it may be economically efficient for those in control of a bankruptcy case to administer it in a location that handicaps parties in interest, the integrity of the bankruptcy process requires that the natural enemies have reasonable access to the court." Donald, 328 B.R. at 204.

Among the four secured creditors, CWF and the Virginia tax collector are located within the jurisdiction of the VA Bankruptcy Court. Sotheby's is located principally in New York,

in closer proximity to the VA Bankruptcy Court than the CA Bankruptcy Court. AVN AIR, LLC, is a subsidiary of GE Capital, an entity with global reach and has offices within the jurisdiction of the VA Bankruptcy Court.

Furthermore, when considering the proximity of creditors, creditors whose claims are likely to be challenged are to be given greater weight than those with undisputed claims. In re West Coast Interventional Pain Med., Inc., 435 B.R. 569, 580 Bankr. (N.D. Ind. 2010). Minor has indicated that the Debtor contests the amount it owes CWF because of alleged defects in the Virginia Property. While CWF believes that any such allegations would be specious and CWF will challenge any claim to offset the amount due under the Note, it appears the Debtor intends to object to CWF's claim. The Debtor has also indicated that it intends to contest the validity of conservation and preservation easements on the Virginia Property that are held by the Virginia Outdoors Foundation and the Virginia Board of Historic Resources, both located in Richmond, Virginia (the "VA Grantees"). The VA Grantees will certainly contest the Debtor's right to amend or remove the easements. Given the amount of CWF's claim, the historical importance of the Virginia Property, and the importance of the conservation and preservation easements, these issues (which are all controlled by Virginia law) are likely to be the most significant determinations in this chapter 11 case. For that reason, the proximity of CWF and the VA Grantors to the forum should be given substantial weight.

The proximity of the creditors to the VA Bankruptcy Court weighs strongly in favor of transfer to that forum.

B. **Minor Has Other Virginia Property in Bankruptcy in Virginia.**

While the manager of the Debtor may be located in San Francisco, this factor should not weigh against a transfer to the VA Bankruptcy Court. The Debtor's manager currently is engaged in a bankruptcy case, which he initiated, in the United States Bankruptcy Court for the Western District of Virginia.

On September 24, 2010, Minor caused Minor Family Hotels, LLC to file a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division (the "Lynchburg Bankruptcy Matter"). Minor has retained Virginia

548632v1

8

Case: 11-30554 Doc# 22 Filed: 03/03/11 Entered: 03/03/11 18:17:34 Page 9 of 14

counsel for that matter and has actively participated in a contentious case. He saw no inconvenience in filing that bankruptcy case in Virginia. Minor cannot now claim with credibility that the Debtor being "forced" to proceed in Virginia would be inconvenient.

Minor's involvement in the Lynchburg Bankruptcy Matter weighs strongly in favor of transfer to the VA Bankruptcy Court in this case.

**C. Debtor's Consent to Virginia Court Jurisdiction**

The Debtor has waived any objection based on inconvenience by consenting to judgment on the Note in the Virginia state courts. When a debtor signs documents that consent to a particular forum in dealing with its creditors, it waives the right to argue inconvenience when faced with a motion to transfer to that forum. In re B.L. McCandless LP, 417 B.R. 80, 83 (Bankr. N.D. Ill. 2009). The Note contains not only a forum selection clause, but also a confession of judgment clause whereby the Debtor, as maker, and Minor, as guarantor, agree to the entry of a judgment in the Circuit Court for the City of Williamsburg in the event of default. The Williamsburg Circuit Court is located in the Eastern District of Virginia, approximately 25 miles from the bankruptcy court in Newport News. "It is disingenuous now to claim that transfer . . . would be inconvenient." Id.

**D. Debtor's Operation of Business**

The Debtor by its own actions has involved itself in the remote operation of a business and cannot now complain of any resulting inconvenience. The Debtor has made the choice to seek bankruptcy relief, and chose to own property in Virginia while its manager resides in California. "[I]t is the debtor on balance which should, given the situation be more amenable to going to [Virginia] to meet with creditors if necessary ([rather] than to ignore them because the distance and costs of participation lessen their opposition to what the debtor might propose)." Matter of Macatawa, 158 B.R. 82, 88 (Bankr. E.D. Mich. 1993). The Debtor committed itself to whatever costs it might incur by having its manager in one location and its real property in another. Id.

For these reasons, the proximity of the Debtor should not be considered as weighing against transfer to the VA Bankruptcy Court.

**E. Most Witnesses Who Will Testify In this Case Reside in Virginia.**

Minor has advised CWF that the Debtor contests the amount due on the Note. The basis of the dispute, as alleged by the Debtor, appears to be that the Virginia Property purportedly had a leak known only to CWF, which CWF prevented the Debtor from discovering. The Debtor apparently contends that it should be allowed to reduce the amounts owed under the Note by damages allegedly caused by this leak.[7] Moreover, Minor has stated that the Debtor also intends to contest the efficacy of conservation and preservation easements affecting the Virginia Property, which were mutually negotiated by the Debtor and CWF and recorded by CWF prior to the Debtor acquiring title to the Virginia Property. Finally, the Debtor and CWF are in substantial disagreement over the value of the Virginia Property.

The witnesses necessary to resolve these disputes will be found in Virginia. Virginia lawyers conducted the sale of the Virginia Property. Virginia residents maintain the Virginia Property. Virginia experts will be in the best position to testify about the condition of the Virginia Property, the historic significance of the Virginia Property and the efficacy of the conversation and preservation easements. Virginia appraisers will be in the best position to establish the Virginia Property's value. It would be patently unfair and a great expense to require CWF and all these witnesses to travel the breadth of this country to litigate these matters.

Even if there were no disputes between CWF and the Debtor, the Debtor's only asset is the Virginia Property. The witnesses whose testimony will be relevant to the administration of that asset will undoubtedly reside in or near Virginia. The CA Bankruptcy Court will have no opportunity to view the Virginia Property and may not appreciate the historic significance of Carter's Grove Plantation. Excepting Minor, there is no reason to believe any witnesses will reside in California and, even if they did, they would have to travel to Virginia to learn anything of substance about the Virginia Property.

---

[7] Prior to CWF noticing the foreclosure sale of the Virginia Property and during the three year period that the Debtor owned and was in possession of the Virginia Property, neither the Debtor nor Minor advised CWF of the "leak" issue. It was only after the Debtor was given notice of the impending foreclosure sale that the Debtor decided that the monetary defaults under the Note were justified by the "leak" issue. Taylor Declaration ¶ 14. The Note precludes the Debtor from off setting the amounts due under it.

The fact that all the relevant witnesses are in Virginia weighs strongly in favor of transferring the case to the VA Bankruptcy Court.

### F. The Debtor's Only Asset Is In Virginia.

The Debtor's only asset is the Virginia Property, located wholly within the jurisdiction of the VA Bankruptcy Court. Courts often consider this factor to be entitled to extra weight in determining venue. Macatawa, 158 B.R. at 88; In re Toxic Control Tech., Inc., 84 B.R. 140, 144 (Bankr. N.D. Ind. 1988).

This factor weighs indisputably in favor of transfer of the case to the VA Bankruptcy Court.

### G. The Case Would Be Administered Most Economically In Virginia.

The Debtor's estate could be administered most efficiently in the VA Bankruptcy Court, the location of the Debtor's only asset, the Virginia Property. See In re Oklahoma City Assocs., 98 B.R. 194, 199 (Bankr. E.D. Pa. 1989) ("[I]t is generally accepted that the estate of a real estate partnership is most efficiently administered where its principal asset is located."); In re Greenridge Apartments, 13 B.R. 510, 513 (Bankr. D. Haw. 1981) (holding that efficiency is the most important factor and that efficiency favored the venue where the primary asset was located). If the case is converted to a chapter 7 case, Virginia trustee could more efficiently administer the Virginia Property.

There are no assets to administer in California. The VA Bankruptcy Court would be in a better position to oversee the administration or liquidation of the Virginia Property. It would be in a better position to evaluate the costs of maintaining the Virginia Property and to judge the credibility of local appraisers. Id. This same analysis applies with greater force in the event of liquidation. The sale of a parcel of Virginia real estate undoubtedly would involve appraisals and transactions in Virginia. The sale itself would take place in Virginia.

The efficiency of case administration and any subsequent liquidation weighs strongly in favor of transferring the case to the VA Bankruptcy Court.

**H. Local Concerns Weigh In Favor Of Transfer To Virginia.**

Courts apply differing standards when weighing local concerns, but all agree that matters involving real property are inherently local disputes that should be resolved by a local court. See, e.g., In re Bell Tower Assocs., 86 B.R. 795, 803 (Bankr. S.D.N.Y. 1988) (dispute regarding structural damage to real property should be decided by local court); Toxic Control, 84 B.R. at 144. In this case, the local interest is heightened because the Virginia Property is a historical landmark with legally protected status.

Matters involving real estate inherently involve state law and a federal court sitting within the particular state is in the best position to efficiently and accurately interpret its state's law. West Coast, 435 B.R. at 583; McCandless, 417 B.R. at 85. In addition to controlling the determination of any underlying dispute about the Virginia Property itself, Virginia law governs the Deed of Trust as well, pursuant to a choice of law provision.

These additional local factors weigh in favor of a transfer to the VA Bankruptcy Court.

**Conclusion**

While venue may be proper in the CA Bankruptcy Court, it is most appropriate in the VA Bankruptcy Court. The factors to be considered in determining whether a transfer is for the convenience of the parties or in the interest of justice weigh in favor of transferring this case to the VA Bankruptcy Court: 1) proximity of creditors; 2) any witnesses would be found in Virginia; 3) the Debtor's only asset is in Virginia; 4) the case would be administered most economically in Virginia; and 5) local concerns weigh in favor of transfer to Virginia. Only the proximity of the principal of the Debtor's manager weighs against transfer. The Debtor has waived any objections based on inconvenience through its actions in connection with the Virginia Property and Minor's filing of the Lynchburg Bankruptcy Matter demonstrates that Virginia is not an inconvenient forum for him.

///

///

For these reasons, the CA Bankruptcy Court should grant the Motion, transfer this case to the VA Bankruptcy Court and grant such other and further relief as may be necessary.

Respectfully submitted,

Dated: March 3, 2011
STUTMAN, TREISTER & GLATT
JEFFREY C. KRAUSE
H. ALEXANDER FISCH
GABRIEL I. GLAZER

By: */s/ H. Alexander Fisch*
Counsel for THE COLONIAL WILLIAMSBURG FOUNDATION