JEFFREY C. KRAUSE, (State Bar No. 94053)
jkrause@stutman.com
H. ALEXANDER FISCH (State Bar No. 223211)
afisch@stutman.com
GABRIEL I. GLAZER, (State Bar No. 246384),
gglazer@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600
Telecopy: (310) 228-5788

PAUL K. CAMPSEN, (VSB No. 18133)
pkcampsen@kaufcan.com
DENNIS T. LEWANDOWSKI, (VSB No. 22232)
dtlewand@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Telecopy: (757) 624-3169

Counsel for The Colonial Williamsburg Foundation

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>CARTER'S GROVE, LLC,<br><br>　　　　Debtor. | Case No. 11-30554 (TC)<br><br>Chapter 11<br><br>**DECLARATION OF ROBERT B. TAYLOR IN SUPPORT OF MOTION TO TRANSFER VENUE OF CHAPTER 11 CASE**<br><br><u>Hearing Date</u><br><br>DATE: April 1, 2011<br>TIME: 9:30 a.m.<br>PLACE: Courtroom 23<br>　　　　235 Pine Street<br>　　　　San Francisco, CA 94104 |

I, Robert B. Taylor, declare, as follows:

1. I am Senior Vice President, Finance & Administration, for The Colonial Williamsburg Foundation ("CWF"). I am over 18 years of age and if called upon would competently testify to the matters set forth herein from my personal knowledge, except as otherwise stated.

2. Carter's Grove, LLC (the "Debtor") is a limited liability company organized under the laws of the Commonwealth of Virginia. It was created by the execution of an operating agreement ("Op. Agreement") and articles of incorporation ("Articles"), true and correct copies of which are attached hereto as **Exhibit A** and **Exhibit B**. The Exhibits show that (a) the Debtor is organized under the laws of the Commonwealth of Virginia (Op. Agreement Art. I § 1.1.), (b) the Operating Agreement must be construed, enforced and interpreted, and the formation, administration and termination of the Debtor shall be governed by Virginia law (Op. Agreement Art. I § 1.3; Art. X § 10.9), (c) the Debtor's sole purpose is to acquire, finance, develop, improve, conserve, own and hold title to Carter's Grove (the "Virginia Property") (Op. Agreement Art. I § 1.5.), (d) its principal place of business and the principal office are both listed as 1340 Stony Point Road, Charlottesville, Virginia (Op. Agreement Art. IX § 9.1 (a)), and (e) the books of account, records and all documents and other writings of the Debtor are required to be kept and maintained at the principal office of the Debtor in Charlottesville, Virginia (Op. Agreement Art. IX § 9.3.)

3. In December 2007, the Debtor purchased the Virginia Property from CWF. Carter's Grove is an approximately 400-acre parcel situated on the James River in James City County, Virginia. It is designated as a National Historic landmark and is listed on the National Register of Historic Places and the Virginia Landmarks Register. Carter's Grove includes an 18th-century plantation mansion, Native American and early colonial archaeological sites, reconstructed slave quarters and an archaeological museum built by CWF. The mansion, which has approximately 18,500 square feet of living space, is a Georgian-style brick structure with a refined, sophisticated design featuring some of the best American decorative woodwork from the period. The decorative woodwork is irreplaceable and to be preserved, the interior must be maintained at a constant temperature and humidity. CWF offered Carter's Grove for sale on a highly restricted basis to

1

assure the protection and stewardship of the property's historic, architectural, visual, archeological and environmental resources.

4. Since the Debtor acquired the Virginia Property a caretaker has lived in Mrs. Eddy's cottage, a small outbuilding, but the mansion has been vacant. No commercial activity has occurred, or is occurring, on the Virginia Property and it produces no income. At the time of the sale, the Debtor's manager, Halsey Minor ("Minor"), stated that he intended to occupy the Virginia Property and operate a thoroughbred horse-breeding operation; this has not occurred. Other than contributions from Minor, it appears that the Debtor has no funds to operate, or to maintain and preserve, the Virginia Property.

5. The purchase price for the Virginia Property was paid, in part, by a deed of trust note executed by Debtor ("Note"), a true and correct copy of which is attached hereto as **Exhibit C**. The Note is dated December 17, 2007, and is payable to the order of CWF at its offices in Williamsburg, Virginia. The original principal amount of the Note is $10,300,000.

6. The Debtor agreed to pay the Note in six (6) consecutive semiannual installments of principal of $1,716,666.67, plus accrued and unpaid interest. The first installment was due on July 15, 2008, and thereafter an installment was due on each July 15 and January 15, with the last installment due on January 15, 2011. Minor has unconditionally guaranteed the payment of the Note.

7. Payment on the Note is secured by a deed of trust ("Deed of Trust"), a true and correct copy of which is attached hereto as **Exhibit D**, dated December 17, 2007, by and among the Debtor, as grantor, Manus E. Holmes, as trustee, and CWF, as the beneficiary,. The Deed of Trust granted CWF a lien on the Debtor's primary asset, the Virginia Property, including all buildings, improvements, fixtures and equipment. It is recorded in the Clerk's Office of the Circuit Court of the City of Williamsburg and County of James City, Virginia, as Instrument No. 070034970. Pursuant to the terms of the Deed of Trust, the Debtor agreed to, among other things, continually maintain liability and property insurance on the Virginia Property and to keep and maintain the Virginia Property in good condition, order and repair. The Debtor also agreed not

to allow subordinate liens on the Virginia Property. The Deed of Trust is governed by, and construed under, Virginia law.

8. The Note contains a confession of judgment provision whereby the Debtor, as maker, and Minor, as guarantor, consents to the entry of a judgment in the Circuit Court of the City of Williamsburg and County of James City, Virginia, in the event of a default under the Note. It also contains a provision waiving any right to offset or reduction.

9. After extensive efforts by CWF to work with Minor, CWF notified the Debtor it was in default under the terms of the Note and Deed of Trust by failing to make the July 15, 2010, installment payment. CWF demanded payment of the July 15, 2010 installment by not later than January 21, 2011. That payment was not made. The Debtor also failed to pay the January 15, 2011, final installment.

10. Moreover, the Debtor allowed the homeowners insurance on the Virginia Property to lapse, effective January 22, 2011, and failed to maintain the Virginia Property by, among other things, not paying the delinquent utility bills. These violations of the Deed of Trust forced CWF to obtain insurance and to pay the delinquent utility bills. Had the utilities been discontinued, irreparable harm could have resulted to the interior of the mansion, including its irreplaceable woodwork.

11. On January 24, 2011, the outstanding amounts under the Note totaled in excess of $4,000,000, and interest, fees and costs continue to accrue. A foreclosure sale of the Virginia Property was scheduled for February 15, 2011.

12. The Debtor also defaulted under the Deed of Trust by granting subordinate liens on the Virginia Property to secure the debts of insiders. AVN AIR, LLC (a Connecticut limited liability company and subsidiary of GE Capital, a multinational financing corporation) is the beneficiary of a subordinate lien deed of trust dated February 1, 2010, in the maximum amount of $5,000,000. Sotheby's, Inc. (a Delaware corporation operating out of New York) is the beneficiary of a second subordinate lien deed of trust dated January 31, 2011, in the amount of $3,400,000. The second subordinate lien on the Virginia Property was admitted to record the day before the Debtor filed its petition. Both subordinate liens secure the debt of Minor, not the Debtor. Both of these

subordinate liens were placed on the Virginia Property without CWF's knowledge or consent and in violation of the Deed of Trust.

13. The Debtor allowed its existence to be terminated by the Virginia State Corporation Commission effective December 31, 2010. Attached hereto as **Exhibit E** is a true and correct copy of the print out of the records pulled from the Virginia State Corporation Commission showing the terminated status. The Debtor's existence was not reinstated until February 7, 2011, one week before the commencement of the Debtor's chapter 11 case. Attached hereto as **Exhibit F** is a true and correct copy of the print out of the records pulled from the Virginia State Corporation Commission showing the terminated status and the change in the address of the principal offices for the first time.

14. In publicly reported statements and emails, sent only after CWF served a formal notice of default and started the foreclosure process, Minor indicated that the Debtor contests the amount it owes CWF based on alleged defects in the Virginia Property. CWF intends to dispute the Debtor's allegations and will challenge any claim to offset the amount due on the Note. Minor has also indicated that the Debtor may try to challenge the validity of conservation and preservation easements on the Virginia Property that are held by the Virginia Outdoors Foundation and the Virginia Board of Historic Resources, both with offices in Richmond, Virginia, (the "VA Grantees"). CWF believes that there is no legitimate basis for the Debtor to force an amendment or removal of the easements and that the VA Grantees will contest any attempt by the Debtor to amend or remove the easements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of March, 2011, at Williamsburg, Virginia.

_____
ROBERT B. TAYLOR