applicable to any Member. Distributions under this Section 5.5 shall be made when such taxes are due, including the payment of estimated taxes, and shall be netted against other distributions made under this Article V. Amounts otherwise distributable to a Member pursuant to this Section 5.5 shall be reduced by all prior distributions made to a Member under this Article V.

5.6 **Withholding.** All other provisions hereof notwithstanding, the Company's obligation, and the Manager's authority, to make any distribution is subject to the restrictions governing distributions under the Act and such other pertinent governmental restrictions as are now and may hereafter become effective. All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member or Members pursuant to this Article V.

## ARTICLE VI
## PROFITS AND LOSSES; TAX MATTERS

6.1 **Maintenance of Members' Capital Accounts.** A separate capital account (the "Capital Account") for each Member shall be established and maintained throughout the full term of the Company. Each Capital Account shall be established and maintained in accordance with the Treasury Regulations which must be complied with for the allocations of profits and losses in this Agreement to have "economic effect" under applicable Treasury Regulations.

6.2 **Allocations of Profits, Losses, and Credits of the Company.** Except as expressly otherwise provided in this Agreement, the Company's net profits, net losses and tax credits, if any, for a fiscal year or other periods shall be allocated among the Members as follows:

(a) Net Profits. The net profits for a fiscal year or other period of the Company shall be allocated to the Members in accordance with their respective Membership Interests.

(b) Net Losses. The net losses, if any, for a fiscal year or other period of the Company shall be allocated to the Members in accordance with their respective Membership Interests.

(c) Credits. Any tax credits (and credit recapture, if any) shall be allocated in the manner specified by the Code and the Treasury Regulations issued thereunder.

6.3 **Tax Allocations.** Except as otherwise expressly provided in this Agreement or the Code or Treasury Regulations, the Company shall allocate its tax items in the same manner and percentages as its book items are allocated.

6.4     **Tax Year and Accounting Matters.** The tax year of the Company shall be the calendar year. The Company shall adopt methods of accounting as the Manager determines upon the advice of the certified public accounting firm engaged by the Company.

6.5     **Tax Elections.** The Managers may cause the Company to make, refrain from making, or revoke all tax elections provided for under the Code and the Treasury Regulations.

## ARTICLE VII
## TERM AND TERMINATION OF THE COMPANY

7.1     **Term of the Company.** The term of the Company shall commence upon the date of this Agreement and shall continue until terminated as provided in this Agreement.

7.2     **Events of Dissolution.** The Company shall be dissolved upon the occurrence of any of the following events:

      (a)     the determination in writing of a Majority to dissolve the Company;

      (b)     the entry of a decree of judicial dissolution under § 13.1-1047 of the Act; or

      (c)     except upon the determination of the Manager, which decision has not been objected to by a Majority, to continue the business of the Company within six months of the following events, in which case the Company shall not be dissolved and the Company and the business of the Company shall be continued:

           (i)     the sale, transfer or other disposition of substantially all of the non-cash assets of the Company (other than Debt Instruments) with the intent to liquidate the Company;

           (ii)     when otherwise so required by this Agreement; or

           (iii)     as otherwise required by the Act.

7.3     **Conclusion of Affairs.** Subject to the operation of Section 7.5, upon the dissolution of the Company for any reason, if the Company is not continued as permitted by this Agreement, the Manager shall promptly wind up the Company' affairs. Except as otherwise provided in this Agreement, the Members and their successors in interest shall continue to share distributions and allocations during the winding up period in the same manner as before dissolution. The Manager shall have reasonable discretion to determine the time, manner and terms of any sale or sales of Company property pursuant to such winding up, having due regard to the activity and the condition of the Company and relevant market, financial and economic conditions, and consistent with its obligations to the Members.

9

7.4     **Liquidating Distributions.** After paying or providing for the payment of all debts and liabilities of the Company and all expenses of winding up, and subject to the right of the Manager to set up such reserves as he may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation, and any other remaining assets of the Company, shall be promptly distributed to, or for the benefit of, the Members (and their successors in interest) in accordance with this Agreement. No Member shall have any right to demand or receive property other than cash upon dissolution and winding up of the Company. However, the Manager may determine whether and to whom property should be distributed in kind rather than liquidated. The Value of property distributed in kind shall be determined as set forth in this Section 7.4. Any property distributed in kind shall be treated as though such asset was sold for its Value at the time of the distribution, and the cash proceeds were distributed. The difference between the Value of property distributed in kind and its previous Value for purposes of maintenance of the Capital Accounts shall be treated as profits or losses and shall be credited or charged to Members' Capital Accounts in accordance with their interest in such profits or losses pursuant to Section 6.2. The **"Value"** of an asset of the Company shall be, in the case of other than securities, real estate and improvements, book value as determined by the certified public accountant for the Company in accordance with the Company's accounting method applied on a consistent basis and, in the case of securities, real estate and improvements, their fair market value as determined pursuant to the following provisions. The fair market value of securities shall be determined in accordance with the then current Treasury Regulations for federal estate tax purposes concerning valuation. The Manager shall select a qualified, independent appraiser to appraise any real estate and improvements at the Company's expense, and such appraised value shall be its fair market value.

7.5     **Termination.** Within a reasonable time following the completion of the winding up of the Company, the Manager shall supply to each Member a statement setting forth the assets and the liabilities of the Company as of the date of completion of the winding up and each Member's portion of the distributions pursuant to this Agreement. Upon completion of the winding up of the Company and the distribution of all Company assets, the Company shall terminate, and the Manager shall execute and file Articles of Cancellation of the Company and all other documents required to effectuate the dissolution and termination of the Company.

## ARTICLE VIII
## TRANSFERS AND THE ADDITION, SUBSTITUTION, AND WITHDRAWAL OF MEMBERS

8.1     **Transfer, Substitution, & Withdrawal.** Except as otherwise provided herein, a Membership Interest may be assigned in whole or in part only as follows:

(a)     A Member may transfer all or a portion of his or her Interest to a spouse, ancestor, lineal descendant, charitable organization described in § 501(c)(3) or § 170(c) of the Code, or a trust or an entity solely for the benefit of one or more of the foregoing persons. A transfer pursuant to this Section 8.1(a) shall not be subject to Sections 8.1(b) through (f), but shall be subject to all other provisions of this Agreement, including Section 8.1(g).

Case: 11-30554   Doc# 23-2   Filed: 03/03/11   Entered: 03/03/11 18:32:14   Page 3 of 9

(b) Except as provided in Section 8.1(a), if any Member desires to sell, exchange, or otherwise convey for consideration, give, assign or pledge his Membership Interest (the "**Offered Interest**"), such Member or his duly authorized representative (hereinafter called "**Seller**") shall give written notice thereof to the Company and the remaining Members, which notice (hereinafter referred to as "**Seller's Notice**") shall set forth the following:

(i) the identity of the person, firm, or corporation (hereinafter called "**Purchaser**") to whom the Offered Interest is proposed to be sold, exchanged, conveyed, given, assigned or pledged;

(ii) the purchase price for the Offered Interest; and

(iii) any other terms and conditions associated with the sale of the Offered Interest, including but not limited to the schedule for payment of the purchase price.

Such Seller's Notice shall constitute an offer by Seller to sell the Offered Interest to the Company, and if such offer is not accepted by the Company, it shall constitute an offer to sell all, but not less than all, of the Offered Interest to the remaining Members, at a price equal to the price specified in Seller's Notice and upon the same terms and conditions specified in Seller's Notice.

(c) Upon receipt of Seller's Notice, the Company shall have a period of 30 days next following the date of mailing of Seller's Notice within which to accept Seller's offer to sell the Offered Interest. If the Company elects to purchase the Offered Interest, written notice thereof shall be given to Seller on or before the last day of said 30-day period. Upon mailing of said notice, Seller shall be obligated to deliver to the Company the certificates or other instruments evidencing the Offered Interest properly endorsed for transfer, and the Company shall be obligated to accept the Offered Interest and pay the purchase price therefor. If the Company fails to exercise its right to purchase the Offered Interest, the Company shall be deemed to have waived its right to purchase the Offered Interest, and all rights of the Company to purchase such Offered Interest under Seller's Notice shall terminate. If the right of the Company to purchase the Offered Interest terminates, the Company shall provide prompt written notice of such termination (the "**Termination Notice**") to the remaining Members.

(d) Upon receipt of the Termination Notice, each remaining Member shall have a period of 30 days next following the date of mailing of the Termination Notice within which to accept Seller's offer to sell the Offered Interest. The remaining Members shall be entitled to purchase such portion of the Offered Interest as they may among themselves agree, or, if they shall not agree, each of the remaining Members shall have the right to purchase that portion of the Offered Interest equal to the fraction, the numerator of which shall be the Membership Interest of such remaining Member expressed as a percentage and the denominator of which shall be the total of the Membership Interests of all remaining Members exercising the right of purchase expressed as a percentage; provided, however, that all of the Members exercising the right of purchase shall be required to purchase all of the Offered Interest. If a

11

remaining Member elects to purchase the Offered Interest, written notice thereof shall be given to Seller on or before the last day of said 30-day period. Upon mailing of such notice, Seller shall be obligated to deliver to the remaining Member or Members the certificates or other instruments evidencing the Offered Interest properly endorsed for transfer, and the remaining Members who have exercised the above purchase rights shall be obligated to purchase the applicable portion of the Offered Interest and pay the purchase price therefor. The remaining Members failing to exercise their right to purchase the Offered Interest shall be deemed to have waived their right to purchase the Offered Interest, and all rights of those remaining Members to purchase such securities under such Seller's Notice shall terminate.

(e) If the Offered Interest is not purchased by the Company or the remaining Members do not Purchase the Offered Interest in its entirety, Seller may make a bona fide transfer or encumbrance to the Purchaser named in Seller's Notice on the terms and conditions set forth therein. If Seller fails to make such transfer or encumbrance within 30 days following the expiration of the remaining Members' purchase rights, such Membership Interest shall become again subject to all the restrictions of this Agreement.

(f) The closing of any purchase by the Company or a Member pursuant to this Section shall take place at the principal office of the Company. All acts or decisions of the Company with respect to the provisions of Sections 8.1(b) through (f) as they relate to a particular Offered Interest shall be based upon the vote or consent of a Majority of the Members other than Seller.

(g) Any transfer of a Membership Interest, other than to an existing Member, shall be effective only to give the transferee ("Transferee") the right to receive the share of allocations and distributions to which the transferor would otherwise be entitled. Any Transferee who is not a Member before the transfer shall not have the right to become a substituted Member without the written consent of two-thirds (2/3) of the Members, which approval may be granted or denied in the exercise of the sole and absolute discretion of the Members, and only if the Transferee agrees to be bound by all of the terms and conditions of this Agreement as then in effect. Unless and until a Transferee is admitted as a substituted Member, the Transferee shall have no right to exercise any of the powers, rights and privileges of a Member hereunder. A Member who has assigned his Membership Interest shall cease to be a Member upon assignment of the Member's entire Membership Interest and thereafter shall have no further powers, rights and privileges as a Member hereunder, but shall, unless otherwise relieved of such obligations by agreement of all of the other Members or by operation of law, remain liable for all obligations and duties incurred as a Member. A Transferee who becomes a substitute Member is liable for any obligations of his transferor to make or retain capital contributions as provided in this Agreement and by the Act; provided, however, such Transferee shall not be obligated for liabilities of his transferor unknown to him at the time he became a Member.

(h) The Manager may, in his reasonable discretion, charge a fee to cover the additional administrative expenses (including attorney's fees) incurred in connection with, or as a consequence of the transfer of, all or part of a Membership Interest.

(i) The Company, each Member and any other person having business with the Company need deal only with Members who are admitted as Members or as substituted Members of the Company, and they shall not be required to deal with any other person or entity by reason of assignment by a Member or by reason of the death of a Member, except as otherwise provided in this Agreement. In the absence of the substitution (as provided herein) of a Member for an assigning or deceased Member, any payment to a Member or to a Member's executors or administrators shall release the Company and the Manager from all liability to any other persons who may be interested in such payment by reason of an assignment by, or the death of, such Member.

(j) No lien or security interest shall be created or perfected in any Membership Interest except in accordance with the provisions of this Agreement and upon prior notice to the Company of such security interest together with a copy of all documentation with respect thereto, including financing statements.

(k) Any transfer not in accord with this Agreement shall be void, except to give rise to a cause of action against the purported transferor for breach of this Agreement.

**8.2 Additional Members.** Any additional Membership Interest offered must be expressly approved in writing by a majority of the Members, who may withhold such approval in their sole and absolute discretion. A new Member's admittance to the Company will cause a pro rata reduction in each Member's Membership Interest. No new Members shall be entitled to any retroactive allocation of income, losses or expense deductions the Company incurs. The Manager may, at its option, at the time a new Member is admitted, close the Company's books (as though the Company's tax year had ended) or make pro rata allocations of income, loss and expense deductions to a new Member for that portion of the Company's tax year in which the new Member was admitted in accordance with the provisions of Code Section 706(d) and the regulations thereunder.

## ARTICLE IX
## ADMINISTRATIVE PROVISIONS

**9.1 Office and Registered Agent.**

(a) The initial principal place of business and principal office of the Company shall be 1340 Stony Point Road, Charlottesville, Virginia 22911. The Company may relocate the principal place of business and principal office and have such additional offices as the Manager may deem advisable.

(b) The Member hereby appoints Alexander M. Toomy, a resident of the Commonwealth of Virginia, as special manager of the Company solely to act as the Company's initial registered agent for purposes of the Act. The address of the initial registered office of the Company is 1340 Stony Point Road, Charlottesville, Virginia 22911. The registered agent's sole

13

duty is to forward to the Company at its principal office and place of business any notice that is served on him as registered agent.

9.2  **Bank Accounts.**  The Manager may, from time to time, open bank accounts in the name of the Company, and the Manager shall be the only signatories thereon, unless the Manager determines otherwise. Funds of the Company shall be deposited in such account or accounts as the Manager shall determine. Funds may be withdrawn from such accounts only for bona fide and legitimate Company purposes and may from time to time be invested in such securities, money market funds, certificates of deposit, or other liquid assets as the Manager deems prudent. The Manager shall not be accountable or liable for any loss of Company funds resulting from failure or insolvency of the depository institution, so long as the deposit of such funds was in compliance with this Agreement.

9.3  **Books and Records.**  At all times during the term of the Company, the Manager shall keep, or cause to be kept, full and accurate books of account, records and supporting documents, which shall reflect completely, accurately and in reasonable detail each transaction of the Company (including, without limitation, transactions with the Members or affiliates). The books of account shall be maintained and tax returns prepared and filed based on the method of accounting the Manager determines. The books of account, records and all documents and other writings of the Company shall be kept and maintained at the principal office of the Company. Each Member or its designated representative shall, upon reasonable notice to the Manager, have access to such financial books, records and documents during reasonable business hours and may inspect and make copies of any of them at its own expense. The Manager shall cause the Company to keep at its principal office all books and records required to be maintained by the Act and the other laws of the Commonwealth of Virginia.

9.4  **Notices.**  Unless otherwise provided herein, any offer, acceptance, election, approval, consent, certification, request, waiver, notice or other communication required or permitted to be given hereunder (hereinafter collectively referred to as a "Notice"), shall be given by addressing the same to the Member to whom the Notice is to be given at the appropriate address set forth on the attached Exhibit 4.1 or at such other address as any Member hereafter may designate in accordance with the provisions of this Section 9.4 and delivering such Notice in person, by facsimile or by U.S. Mail, postage prepaid. In addition, the Company and any other Members shall be sent a copy of all Notices by delivery in person, by facsimile or by U.S. Mail, postage prepaid.

# ARTICLE X
# MISCELLANEOUS

**10.1 Amendment.** Except as provided by law or as otherwise set forth herein, this Agreement may be modified or amended only by a written instrument evidencing the unanimous approval of the Members. Notwithstanding anything to the contrary in this Agreement, Exhibit 4.1 may be amended from time to time by the Manager only to the extent necessary to reflect accurately the then current status of the information contained thereon.

**10.2 Interpretation.** Whenever the context may require, any noun or pronoun used herein shall include the corresponding masculine, feminine or neuter forms. The singular form of nouns, pronouns and verbs shall include the plural, and vice versa.

**10.3 Severability.** Each provision of this Agreement shall be considered severable, so that if any provision hereof is determined to be invalid, such invalidity shall not impair or affect the valid portions of this Agreement, and this Agreement shall remain in full force and effect and shall be construed and enforced in all respects as if such invalid or unenforceable provision had been omitted.

**10.4 Burden and Benefit Upon Successors.** Except as expressly otherwise provided herein, this Agreement is binding upon and inures to the benefit of the Members and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.

**10.5 Third Parties.** The agreements, covenants and representations in this Agreement are made solely for the benefit of the Members and not for the benefit of any third parties, including, without limitation, any creditors of the Company or of a Member.

**10.6 Further Assurances.** Each Member shall execute and deliver such further instruments, provide all information and take or forbear such further acts and things as may be reasonably required to carry out the intent and purpose of this Agreement and as are not inconsistent with the terms hereof.

**10.7 Counterparts.** This Agreement may be executed in any number of counterparts, all of which together shall constitute one fully-executed instrument.

**10.8 Section Headings.** Section titles or captions contained in this Agreement are inserted as a matter of convenience and for reference only and shall not be construed in any way to define, limit or extend or describe the scope of this Agreement.

**10.9 Applicable Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Virginia without regard to conflicts of law rules.

**10.10 Legal Counsel.** This Agreement has been prepared by LeClair Ryan, A Professional Corporation ("LeClair Ryan"), as counsel to the Company, with the consent of each Member. Each Member acknowledges that it was advised by counsel to the Company that a conflict exists among their individual interests with respect to this Agreement, that each Member should seek the advice of independent counsel, and that each Member has had the opportunity to seek the advice of independent counsel. Each Member further acknowledges that counsel for the Company has provided no advice or representations to them regarding the tax consequences of this Agreement to any individual Member, and that each Member has been advised to seek the advice and consultation of its own personal tax advisers with respect to such tax consequences.

IN WITNESS WHEREOF, the Member has executed this Agreement by its duly-authorized signature below.

SOLE MEMBER:

HALSEY MCLEAN REVOCABLE TRUST 11304

_____
By: Halsey M. Minor, Trustee

Case: 11-30554   Doc# 23-2   Filed: 03/03/11   Entered: 03/03/11 18:32:14   Page 9 of 9