Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California  94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
E-mail:    rpachulski@pszjlaw.com
           dgrassgreen@pszjlaw.com
           jlucas@pszjlaw.com

Attorneys for Carter's Grove, LLC
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.:  11-30554 (TEC) |
| **CARTER'S GROVE, LLC,** | Chapter 11 |
| Debtor. | **DEBTOR'S OBJECTION TO MOTION OF COLONIAL WILLIAMSBURG FOUNDATION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF VIRGINIA** |
| | Date:  April 1, 2011
Time:  10:00 a.m.
Place:  U.S. Bankruptcy Court
235 Pine Street, 19th Floor
San Francisco, California
Judge: Honorable Thomas E. Carlson |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 3

    A.    The Nerve Center of Carter's Grove ................................................... 3

    B.    Assets ................................................................................................ 6

    C.    Nature of Debt and Location of Creditors ......................................... 6

        1.    First Deed of Trust ................................................................ 6

        2.    Second Deed of Trust/AVN Air, LLC Guaranty. .................... 7

        3.    Third Deed of Trust/Sotheby's Guaranty. .............................. 7

        4.    Tax Claims ............................................................................ 8

        5.    Trade Debt ............................................................................ 8

        6.    Summary and Geographic Distribution of Debt ..................... 9

    D.    Restructuring Efforts ......................................................................... 9

    E.    Minor Family Hotels, LLC Bankruptcy Case ...................................... 10

ARGUMENT .................................................................................................... 11

    A.    Venue in the Northern District of California Is Proper .......................... 11

    B.    Venue is Proper in the Northern District of California  Because the Debtor's Principal Place of Business is in San Francisco ...................................... 12

    C.    Given That Venue Is Proper, the Debtor's Case  Should Not Be Transferred to the Eastern District of Virginia ...................................................... 13

        1.    Transfer Is Not in the Interest of Justice ................................ 14

                (a)    Efficient Administration of the Bankruptcy Estate .......... 15

                (b)    Fairness .................................................................... 17

        2.    Transfer is Not Warranted for the Convenience of the Parties ................ 17

                (a)    Proximity of Creditors to the Court ............................. 17

                (b)    Proximity to the Court of the Debtor and Witnesses ....... 21

                (c)    Location of Assets ..................................................... 22

                (d)    Economic Administration of the Estate ........................ 23

                (e)    Other Factors Not Relevant to the Convenience of Parties Analysis ..................................................... 24

CONCLUSION ................................................................................................. 25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

i

**CASES**

*Athena Automotive, Inc. v. DiGregorio*,
   166 F.3d. 288 (4th Cir. 1999) .......................................................................... 12

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.*
   (*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239 (5th Cir. 1979).......... 13, 14, 15, 21

*Hertz Corp. v. Friend*,
   130 S. Ct. 1181 (2010)...................................................................................... 12

*Huntington Nat'l Bank v. Indus. Pollution Control, Inc.* (*In re Indus. Pollution
   Control, Inc.*),
   137 B.R. 176 (Bankr.W.D. Pa. 1992)................................................................ 23

*In re Asset Resolution, LLC*,
   2009 WL 4505944 (Bankr. S.D.N.Y. Nov. 24, 2009) ....................................... 23

*In re B.L. McCandless LP*,
   417 B.R. 80 (Bankr. N.D. Ill. 2009) .................................................................. 20

*In re Baltimore Food Systems, Inc.*,
   71 B.R. 795 (Bankr. D.S.C. 1986).................................................................... 22

*In re Consolidated Companies*,
   113 B.R. 269 (Bankr. N.D. Tex. 1989).............................................................. 13

*In re Del. & Hudson Ry Co.*,
   96 B.R. 467 (Bankr. D. Del. 1988) *aff'd* 884 F.2d 1383 (3d Cir. 1989)............ 13

*In re Donald*,
   328 B.R. 192 (B.A.P. 9th Cir. 2005).................................................................. 19

*In re Enron Corp.*,
   274 B.R. 327 (Bankr. S.D.N.Y. 2002)....................................................... passim

*In re Enron Corp.*,
   317 B.R. 629 (Bankr. S.D.N.Y. 2004)............................................................... 21

*In re Fairfield Puerto Rico, Inc.*,
   333 F. Supp. 1187 (D. Del. 1971)..................................................................... 23

*In re Garden Manor Associates, L.P.*,
   99 B.R. 551 (Bankr. S.D.N.Y. 1988)........................................................... 16, 23

*In re Grumman Olson Industries, Inc.*,
   329 B.R. 411 (Bankr. S.D.N.Y. 2005)............................................................... 14

*In re International Filter Corp.*,
   33 B.R. 952 (Bankr. S.D.N.Y. 1983)................................................................. 15

*In re LaGuardia Associates, L.P.*,
   316 B.R. 832 (Bankr. E.D. Pa. 2004) ............................................................... 15

*In re Land Steward, L.C.*,
   293 B.R. 364 (Bankr. E.D. Va. 2002)............................................................... 23

*In re Macatawa*,
   158 B.R. 82 (Bankr. E.D. Mich. 1993).......................................................... 22, 24

*In re Manville Forest Prods. Corp.*,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

896 F.2d 1384 (2d Cir. 1990)........................................................................13, 15

*In re One-Eighty Investments, Ltd.*,
18 B.R. 725 (Bankr. N.D. Ill. 1981) ..........................................................22

*In re Pubco Corp.*,
27 B.R. 139 (Bankr. E.D. Pa. 1983) ...........................................................22

*In re Ross*,
312 B.R. 879 (Bankr. W.D. Tenn. 2004), *aff'd, In re MacDonald*, 356 B.R. 416
(W.D. Tenn. 2006) .....................................................................................18

*In re Scotia Development, LLC*,
2007 WL 1192137 (Bankr. S.D. Tex. 2007)...............................................11

*In re Suzanne de Lyon, Inc.*,
125 B.R. 863 (Bankr. S.D.N.Y. 1991) ................................................17, 23

*In re Toxic Control Tech., Inc.*,
84 B.R. 140 (Bankr. N.D. Ind. 1988).........................................................22

*In re West Coast Interventional Pain Med., Inc.*,
435 B.R. 569 (Bankr. (N.D. Ind. 2010) ...............................................12, 19

*Levisa Coal Co. v. Consolidation Coal Co.*,
2001 WL 515262 (W.D. Va. Jan. 30, 2001) ..............................................12

**STATUTES**

28 U.S.C. § 1408.............................................................................................11, 14

28 U.S.C. § 1412....................................................................................................20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Carter's Grove, LLC, debtor and debtor-in-possession in the above-captioned case (the "Debtor"), submits this objection to the motion (the "Motion") of Colonial Williamsburg Foundation ("CWF") for an order transferring venue to the Eastern District of Virginia.

**PRELIMINARY STATEMENT**

In seeking to transfer this case to the Eastern District of Virginia, CWF: (i) presupposes without legal basis that venue must be where the assets are located; (ii) disregards that the principal place of business – the nerve center – for this Debtor is located in San Francisco; and (iii) argues that its personal convenience is paramount to the convenience of the Debtor and other creditors.

The Debtor's principal place of business is in the Northern District of California and as such, the Debtor is entitled to select the Northern District of California as the venue for its pending chapter 11 case. Congress afforded corporate debtors the right to select venue in their principal place of business, not just where their assets are located. Corporations exercise that right regularly, and that decision is entitled to "great weight." Nothing in the Motion is sufficient to outweigh that deference.

Reported decisions emphasize repeatedly that it is the economic and efficient administration of the case that is the single most important consideration and, significantly, that it is the convenience of the parties, professionals and financiers that are likely to be most instrumental in a debtor's reorganization that factor most heavily. Such considerations strongly favor retention of venue in California.

The focus of this case is not operations, but financial restructuring. The Debtor is an entity that was formed to hold title to an historic residential property acquired by Halsey M. Minor ("Mr. Minor"), a longtime San Francisco resident and entrepreneur and an avid preservationist. It is not a commercial enterprise. It operates no business.

CWF, the former owner and seller of the Debtor's property, has a $4 million claim against the Debtor's estate that is abundantly oversecured by a first priority lien against the Carter's Grove, which has a value in excess of $20 million. The Debtor believes CWF has a 400% equity cushion. It is undeniable that CWF will get paid –it is simply a matter of time– if its claim is allowed. The equity cushion is so large that the three other secured creditors also have more than a 100% equity

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

cushion.  Despite substantial equity in the property, the Debtor's ability to pay its ongoing obligations is entirely dependent on Mr. Minor's personal financial situation.  All of the decisions regarding the property and the Debtor are made by Mr. Minor from his offices in San Francisco, and all of the financial records are maintained in California.  The events that precipitated this bankruptcy case were caused by Mr. Minor's personal liquidity issues and solution of those liquidity problems, in conjunction with Mr. Minor's personal restructuring (currently being negotiated out of court), will form the foundation of the Debtor's reorganization plan.  The Debtor and Mr. Minor simply cannot be separated.  CWF knows this because all of its principal business communications and negotiations have been with Mr. Minor and his representative here in California.  This fact is further evidenced by the various transaction documents related to Carter's Grove annexed to the pleadings filed by CWF, all of which reflect Mr. Minor doing business in California.

The center of gravity in this case is not the Eastern District of Virginia.   The Debtor has approximately $12.4 million in secured debt and $53,400 in unsecured debt.  The geographic distribution of the secured debt reflects that 40% of the claims are held by creditors in California (with prepetition counsel in San Francisco), 27% in New York (with prepetition counsel located in San Francisco), and 32% in Virginia.  Accordingly, approximately 67% in both number and amount of the claims asserted against the Debtor are held by creditors located in, or represented by, counsel in California and outside of Virginia.  There are only ten general unsecured creditors, including seven utilities, that enjoy the protection of Bankruptcy Code Section 366.  Nearly all of the trade and unsecured debt is held by various utility providers and is located in the region near Carter's Grove.  Unsecured debt represents less than 0.5% of the total debt asserted against the Debtor.

CWF argues that the Court should nonetheless transfer venue of this case to its own backyard, because it would be more convenient for CWF and because the residence, which is an historic property, is located in Virginia.  Another premise of the Motion is that this case involves litigation against Virginia assets by Virginia creditors that should be decided by a Virginia judge.  Bankruptcy courts, including this one, regularly administer assets outside their district and regularly decide issues that are based on substantive state law.  There is no basis to conclude that a

bankruptcy judge sitting in Virginia is any better able than this Court to determine issues under Virginia state law. In any event, at this point the Debtor is simply investigating its defenses to the CWF claims pertaining to Carter's Grove.

For the reasons set forth below and in the declaration of Halsey M. Minor filed contemporaneously herewith (the "Minor Declaration"), which is incorporated herein by reference, CWF has not satisfied its burden of proving that venue of this case should be transferred to the Eastern District of Virginia. The Motion should be denied.

## BACKGROUND

On February 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

The Debtor was formed on December 10, 2007, to hold title to Carter's Grove Plantation ("Carter's Grove"), an historic property that was acquired in 2007 by Halsey M. Minor ("Mr. Minor").[1] Carter's Grove is a 750 acre plantation located on the north shore of the James River in the Grove Community of southeastern James City County in the Virginia Peninsula area of the Hampton Roads region of Virginia.

In December 2007, the Georgian style mansion and 476 acres were acquired for $15.3 million by Mr. Minor. Mr. Minor is a strong advocate for historic preservation, which is one of his personal passions. He purchased the property with the intention of restoring it in a manner consistent with its original design. A conservation easement on the mansion and 400 of the 476 acres is co-held by the Virginia Outdoors Foundation and the Virginia Department of Historic Resources.

### A. The Nerve Center of Carter's Grove

Mr. Minor is a longtime resident of San Francisco and has been since 1994 (with the exception of 18 months during 2002-03. He is a successful entrepreneur, having founded CNET

---

[1] The sole member of the Debtor is the Halsey McLean Revocable Trust 11304.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554    Doc# 33    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 7 of 29
55801-002\DOCS_SF:76290v7    DEBTOR'S OBJECTION TO MOTION TO TRANSFER VENUE

and numerous other successful technology businesses. Since 2005, Mr. Minor has conducted all of his various business ventures out of the office of his investment firm Minor Venture, originally located at 50 Fremont Street, San Francisco, California. These offices were moved to 199 Fremont, San Francisco California in June 2007. In April 2010, Mr. Minor relocated his office to his home (which is also an historically significant property).

At all times during the negotiation of the purchase of Carter's Grove and to date, Mr. Minor has controlled, directed, and coordinated the preservation, anticipated renovation and maintenance of Carter's Grove from his offices in San Francisco, California. The financial records regarding the property are located in San Francisco. All decisions regarding capital expenditures and equity infusions were and continue to be made by Mr. Minor in San Francisco, California and implemented by employees in San Francisco.

Mr. Minor initially purchased Carter's Grove through the Halsey McLean Minor Revocable Trust 11304 (the "Trust"). Mr. Minor is the trustee and sole beneficiary of the Trust. A true and correct copy of the Trust is annexed to the Minor Declaration as Exhibit A. The Trust was initially formed on or around November 3, 2004 in San Francisco, California pursuant to the laws of the state of California. In connection with the purchase of Carter's Grove by the Trust, Mr. Minor, as trustee of the Trust, caused the Trust to assign its interest in Carter's Grove to the Debtor.

CWF was well aware that it was doing business with Mr. Minor in California. Among other things, the various transaction documents relating to the purchase, sale, lease, and use of Carter's Grove between the Debtor and CWF reflect that Mr. Minor would conduct his management duties and operation of Carter's Grove from San Francisco, California.

Notably, the Debtor's Articles of Organization, dated December 10, 2007 (the "Articles") reflect that the "address of the principal office where the records will be maintained pursuant to Va. Code § 13.1-1028 is c/o Minor Ventures, 199 Fremont Street, 12th Floor, San Francisco, California 94105. (emphasis supplied). A true and correct copy of the Articles is annexed to the Minor Declaration as Exhibit B.

The deed (the "Carter's Grove Deed") pursuant to which CWF transferred its interest in Carter's Grove to the Trust demonstrates that the management of the Debtor would take place in

San Francisco, California. A true and correct copy of the Carter's Grove Deed is annexed to the Minor Declaration as Exhibit C. The very first paragraph of the Carter's Grove Deed states that

> **THIS DEED**, made this 17th day of December, 2007, by and between **THE COLONIAL WILLIAMSBURG FOUNDATION**, a Virginia non-stock, non-profit corporation (successor in interest to **COLONIAL WILLIAMSBURG, INCORPORATED**), ("Grantor"), and **CARTER'S GROVE, LLC**, a Virginia limited liability company ("Grantee") whose address is c/o Minor Ventures, 199 Fremont Street, 12th Floor, San Francisco, California 94105.

Carter's Grove Deed, pg. 1 (emphasis in original).

Similarly, the following documents all specify Mr. Minor's San Francisco, California office location as the notice address: (i) CWF Deed of Trust (annexed to the Minor Declaration as Exhibit D), (ii) the Note relating to the Debtor's payment obligations to CWF (annexed to the Minor Declaration as Exhibit E), (iii) the Deed of Lease, dated December 17, 2007, between the Debtor and CWF with respect to the Museum (annexed to the Minor Declaration as Exhibit F), (iv) the Deed of Lease, dated December 17, 2007, between the Debtor and CWF with respect to the Pasture (annexed to the Minor Declaration as Exhibit G), (v) the Archaeological Agreement, dated December 17, 2007, between the Debtor and CWF (annexed to the Minor Declaration as Exhibit H), and (vi) the Maintenance Agreement, dated December 17, 2007, between the Debtor and CWF (annexed to the Minor Declaration as Exhibit I).

While the operating agreement of the Debtor, dated December 12, 2007 (the "Operating Agreement"), designates 1340 Stony Point Road, Charlottesville, Virginia as the Debtor's principal place of business, it should be noted that this was the address used by a person that administered the payment of bills and other ministerial services for Carter's Grove and Mr. Minor's other business ventures in Virginia. This individual ceased working for the Debtor well over a year prior to the commencement of the Debtor's case. The Debtor's accountants are located in California.

In any event, the principal place of business provision in the Operating Agreement does not restrict the Debtor from changing the principal place of business. In fact, section 9.1(a) of the operating agreement provides that the Debtor "may relocate the principle place of business and principal office and have such additional offices as the Manager (myself) may deem advisable. A true and correct copy of the Operating Agreement is annexed to the Minor Declaration as Exhibit J.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

CWF's press release regarding the sale of Carter's Grove also reflects that Mr. Minor would oversee the preservation and management of Carter's Grove. A true and correct copy of the Press Release is annexed to the Minor Declaration as Exhibit K. In the Press Release, the purchaser is described as Mr. Minor, not Carter's Grove, LLC. In addition, in the Press Release, CWF acknowledges that Mr. Minor will oversee and make the day-to-day decisions regarding Carter's Grove since it is Mr. Minor that "will protect the property for the long term . . . [and] will be a fine steward of the Carter's Grove."

**B.** **Assets**

In October 2009, after the onset of the recession that began in August 2008 and in connection with a possible refinance of the property, Mr. Minor obtained an appraisal (the "Appraisal") of Carter's Grove. The relevant pages of the Appraisal are annexed to the Minor Declaration as Exhibit L. The Appraisal shows that Carter's Grove is worth no less than $21,000,000. It should be noted that the appraisal does not include approximately 76 acres of developable land that is owned by the Debtor. Accordingly, the Debtor believes the value of its assets is greater than $21 million. The Debtor believes that the fair market value of Carter's Grove substantial exceeds the $12.5 million in claims asserted against the Debtor.

**C.** **Nature of Debt and Location of Creditors**

**1.** **First Deed of Trust**

The Debtor purchased Carters Grove from CWF for $15,300,000 million and paid CWF all but $3.4 million (the last two payments of the purchase price). In December 2007, the Debtor (through Mr. Minor) executed a note, dated December 17, 2007 (the "Note"), for the benefit of CWF promising to pay $10,300,000 in exchange for the purchase of Carter's Grove. A true and correct copy of the Note is annexed to the Minor Declaration as Exhibit E. The Note requires the Debtor to make six installment payments beginning July 15, 2008, each in the approximate amount of $1.7 million. Subsequent installment payments were due every six months thereafter until the Note was paid in full. The Debtor's repayment obligations under the Note are secured by a first priority deed of trust, dated December 17, 2007 (the "CWF Deed of Trust") and the personal guarantee of Mr. Minor. The Note also contains a provision providing for the confession of

judgment upon default. While the proposed confession of judgment may be executed in a court located Williamsburg, Virginia, CWF did not enforce the confession of judgment prior to the commencement of the Debtor's case. More importantly, the Note does not contain a forum selection clause that would require all litigation to be venued in a particular state.

As of the Petition Date, the Debtor had not made the last two installment payments due to CWF (July 15, 2010 and January 15, 2011). Despite Mr. Minor having paid nearly $14 million of the total payments of $17 million owed to CWF, Mr. Minor was experiencing severe liquidity problems that prevented the Debtor from making the payments. In particular, and as discussed below, the missed payments resulted because Sotheby's Inc. ("Sotheby's") executed on a judgment obtained in litigation in the Southern District of New York. Currently, the Debtor estimates that the claims asserted by CWF under the Note are approximately $4,000,000. The Debtor believes it may have defenses or affirmative claims against CWF relating to failure to disclose or potential active concealment of adverse conditions on the property in connection with its purchase of Carter's Grove, and is currently investigating these claims and defenses.

**2.      Second Deed of Trust/AVN Air, LLC Guaranty.**

A certain revocable trust for the benefit of Mr. Minor entered into a lease, dated May 22, 2005 (the "AVN Lease"), with AVN Air, LLC ("AVN") for a certain aircraft. In or around February 2010, after executing the AVN Lease, Mr. Minor and AVN restructured the obligations under the AVN Lease by entering into various forbearance and guaranty agreements. AVN was represented in the February 2010 restructuring, and continues to be represented by the law firm of Davis, Wright and Tremaine in San Francisco. To secure the payment obligations under these agreements, Mr. Minor caused the Debtor to guarantee the obligations to AVN in the amount of $5,000,000 and agreed to execute a second priority deed of trust, dated February 1, 2010 (the "AVN Deed of Trust"), having a limitation of liability of $5,000,000.

**3.      Third Deed of Trust/Sotheby's Guaranty.**

Prior to the Petition Date, Sotheby's obtained a judgment against Mr. Minor arising from Mr. Minor's purchase of art from Sotheby's. Mr. Minor satisfied the initial judgment through a payment of over $6 million to Sotheby's and appealed that judgment. Thereafter, in November

2010, Sotheby's obtained a judgment for attorneys' fees (the "<u>Fee Judgment</u>"). Sotheby's subsequently executed on the Fee Judgment and obtained liens and restraining notices against various art, furniture, and design property belonging to Mr. Minor (the "<u>Personal Property</u>"). Sotheby's also levied upon cash and receivables owing to Mr. Minor (approximately $1.3 million) that was generated from the sale of certain art belonging to Mr. Minor. From early November 2010 through the Petition Date, Mr. Minor's assets were completely frozen.

On or around February 14, 2011, Mr. Minor and Sotheby's entered into a settlement agreement (the "<u>Sotheby's Settlement Agreement</u>") regarding the Fee Judgment and the appeal of the prior judgment. In connection therewith, Mr. Minor agreed to (i) withdraw the appeal, (ii) permit Sotheby's to sell the Personal Property and use the sale proceeds to pay secured tax claims and to satisfy the $3.4 million Fee Judgment, and (iii) cause the Debtor to execute a third priority deed of trust (the "<u>Sotheby's Deed of Trust</u>"), to secure Mr. Minor's payment of the Fee Judgment. The Property is scheduled for auction by Sotheby's in the Fall of 2011. In exchange, Mr. Minor was released from his obligation to pay the Fee Judgment, all of which has created short term liquidity that will enable Mr. Minor to pay his personal and business expenses in the ordinary course of business and to restructure his other debts.

**4. Tax Claims**

James City County has a lien against Carter's Grove arising from the Debtor's obligation to pay certain property taxes. The property taxes were assessed on June 5, 2010 and December 6, 2010. As of the Petition Date, the Debtor estimates that James City County is owed approximately $22,000. The tax claims represent less than 0.25% of the total claims asserted against the Debtor.

**5. Trade Debt**

Of the ten general unsecured creditors listed in the Debtor's schedules of assets and liabilities (the "<u>Schedules</u>")[2], seven are utilities, two are insurance related, and one relates to services provided to Carter's Grove. In the aggregate, the trade creditors assert general unsecured claims directly against the Debtor in the approximate amount of $53,400. The general unsecured

---

[2] Based on further review of its records and discussions with the Office of the United States Trustee, including at the March 22, 2011 section 341 meeting, the Debtor intends to amend the Schedules. These amendments do not change the creditor composition.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

claims asserted against the Debtor are *de minimis*. These claims represent less than 0.5% of the total claims asserted against the Debtor. Given the value of Carter's Grove, Mr. Minor believes that all creditors, including the *de minimis* trade debt, will be satisfied in full because the Debtor's equity in the property exceeds the value of all secured claims by a substantial amount.

### 6. Summary and Geographic Distribution of Debt

As noted above, there are approximately $12.4 million in secured claims, $22,000 in tax claims, and $53,400 in general unsecured claims asserted against the Debtor's estate. The amount outstanding under the CWF Deed of Trust is approximately $4 million and held by CWF located in Williamsburg, Virginia. The amount of the AVN Deed of Trust is approximately $5 million and held by AVN who is located Irvine, California. The amount outstanding under the Sotheby's Deed of Trust is approximately $3.4 million and held by Sotheby's, Inc. who is located New York, New York. Both Sotheby's and AVN have San Francisco based counsel.

The geographic distribution of the asserted secured debt reflects that 40% of such amount is held by creditors in California, 27% in New York (with counsel located in California), and 32% in Virginia. Accordingly, approximately 67% of the claims asserted against the Debtor are held by creditors located in or represented by counsel in California. As noted above, nearly all of the trade and unsecured debt is held by various utility providers that are located in the region near Carter's Grove. However, such unsecured debt represents less than 0.5% of the total debt asserted against the Debtor.

### D. Restructuring Efforts

The commencement of the Debtor's chapter 11 case was precipitated by Mr. Minor's liquidity problems. The Debtor does not operate or generate any revenue. As a result, all of the expenses of maintaining and preserving Carter's Grove are funded by Mr. Minor. When Mr. Minor's assets were frozen, he could not fund the payments to CWF and CWF initiated foreclosure proceedings. The foreclosure sale was noticed on a very short timetable – approximately two weeks – and this case was filed just prior to the scheduled sale to preserve the Debtor's substantial equity in Carter's Grove.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1          Mr. Minor has substantial other assets which, while currently illiquid, will be available to

2   satisfy the claims of creditors.  The Debtor has already indicated that this case should move rapidly

3   and believes that, given the substantial equity cushion that exists, the restructuring of any remaining

4   secured debt should be consensual.  However, absent a consensual restructuring, the Debtor intends

5   to propose a plan that will pay all allowed claims in full.

6   **E.**      **Minor Family Hotels, LLC Bankruptcy Case**

7          In September 2010, Minor Family Hotels, LLC ("MFH") commenced a chapter 11 case in

8   the Bankruptcy Court for the Western District of Virginia.  Prior to the commencement of MFH's

9   chapter 11 case, MFH commenced actions against the developer of MFH's property and the

10   developer's principal, the bank that committed to certain financing within the Western District of

11   Virginia.  Subsequently, the general contractor filed an action against MFH and Mr. Minor, and

12   MFH and Mr. Minor filed counterclaims.  While all of these actions were pending in Virginia,

13   MFH's lender commenced an action in Georgia against MFH.

14          Due to these numerous and protracted lawsuits, Mr. Minor determined that it would be more

15   efficient and practical to commence MFH's chapter 11 case in the Western District of Virginia.

16   Unlike the Debtor's case, MFH's case was strongly tied to the development of the assets held by

17   MFH and the financing that was crucial to the development of such assets.  Accordingly, it made

18   sense to commence MFH's chapter 11 case in the Western District of Virginia, since litigation was

19   already pending in the same area against the developer and the failed lender.  After commencing

20   MFH's chapter 11 case, MFH removed these various litigations to the bankruptcy court and

21   attempted to consolidate them.  However, the bankruptcy court refused to consolidate the litigations

22   and instead transferred the actions to the Georgia court that was presiding over the case commenced

23   by MFH's lender.  Here, by contrast, the Debtor's chapter 11 case was caused by the liquidity

24   problems of Mr. Minor, and not by problems associated with the assets of the Debtor.

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARGUMENT

## A.  Venue in the Northern District of California Is Proper

Every venue analysis in a chapter 11 case starts with section 1408 of title 28 of the United States Code.  Section 1408 provides that venue is proper when a case under title 11 is commenced in the district court for the district-

> (1) in which the domicile, residence, <u>principal place of business in the United States</u>, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408 (emphasis added).

Companies are entitled to incorporate in states other than that in which their principal place of business is located, and do so routinely despite the fact that they maintain their principal place of business in a different state or district.  As the court stated in *In re Scotia Development, LLC*, 2007 WL 1192137, at *7 (Bankr. S.D. Tex. 2007):

> Venue selection is an appropriate decision made by a debtor with the assistance of counsel.  As Judge Drain said in *Winn-Dixie*, it is not "improper to file within a district that Congress has expressly created for one.  In fact it may well be a duty to do so based on one's analysis of all the facts at hand."  *In re Winn-Dixie Stores, Inc.*, Case No. 05-11063-rdd, April 12, 2005, p. 170, ll.6-11.

As reflected by the face of section 1408, the statute is drafted in the disjunctive and permits a debtor to file its case in any of the locations statutorily prescribed by Congress.  Here, the Debtor is a limited liability company organized under the laws of Virginia with its principal place of business within the Northern District of California in San Francisco, California, as described in detail below.  Accordingly, the Debtor has the option of filing its case either California or Virginia.

To date, all of the decisions regarding the maintenance and operation of the Debtor's assets have been made by Mr. Minor in San Francisco, California.  The books and records are maintained in San Francisco.  Moreover, the heart of the Debtor's chapter 11 case will be the formulation and negotiation of a plan of reorganization that involves Mr. Minor's liquidity.  This case is intertwined with Mr. Minor's personal restructuring, which is currently being handled out of court.  The sole

person in charge of this process is Mr. Minor who lives in, and conducts his various business ventures from San Francisco, California.

## B. Venue is Proper in the Northern District of California Because the Debtor's Principal Place of Business is in San Francisco

The Debtor's principal place of business is located within the Northern District of California in San Francisco, California. The United States Supreme Court recently resolved a split in authority among the Circuit Courts of Appeal and held that a company's principal place of business is determined by its "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010). In *Hertz*, the Supreme Court held that the location where the company's "high level officers direct, control, and coordinate the corporation is the corporation's 'nerve center.'" *Id.* at 1186.[3] When the company engages in the ownership and management of investment assets, the company's home office or the place where the officers direct, control, and coordinate activities is its principal place of business. *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d. 288, 290 (4th Cir. 1999).

When making the determination of a company's principal place of business, "[c]orporate documents may provide *some* evidence of [a company's] principal place of business, [but] they are by no means determinative on the issue. *Levisa Coal Co. v. Consolidation Coal Co.*, 2001 WL 515262, *3 (W.D. Va. Jan. 30, 2001) (underscored emphasis supplied). In *Levisa*, the defendant argued that the plaintiff's principal place of business should be dictated by the location set forth in various corporate documents. *Id.* However, the court did not find this approach persuasive because documents alone fail to provide "insight into the place where corporate decisions are made, where the corporation is funded, where the directors and officers are located, or where the corporate headquarters is located." *Id.*

As set forth in the Minor Declaration, Mr. Minor is the trustee of the Trust that is the sole member of the Debtor. The Debtor was formed for the sole purpose of holding title to Carter's Grove. The Debtor does not maintain or carry-on any business or operations at Carter's Grove. As

---

[3] While the Supreme Court's decision in *Hertz* was rendered in relation to the determination of principal place of business under 28 U.S.C. § 1332, it has been recognized that the principal place of business analysis under 28 U.S.C. § 1408 is the same. *In re West Coast Int'l Pain Medicine, Inc.*, 435 B.R. 569, 575 n.2 (Bankr. N.D. Ind. 2010). The foregoing decision is cited and relied upon in the Motion filed by CWF.

a result, the Debtor does not have any income but is instead entirely dependent upon Mr. Minor for day-to-day expenses, capital expenditures, and equity infusions.

Mr. Minor, as trustee for the sole member of the Debtor, makes and implements all decisions regarding preservation, maintenance, and capital requirements of the Debtor. At the time Carter's Grove was purchased from CWF, it was Mr. Minor that was solely responsible for the terms and conditions of the purchase of Carter's Grove, the initial funding, and the subsequent payments made to CWF. As noted above and reflected in the Minor Declaration, all of the transaction documents relating to the sale of the Carter's Grove and the various leases and other agreements that governed CWF's use of Carter's Grove after the sale reflect that any notices regarding such documents were to be sent to Mr. Minor's San Francisco, California office.

While it is true that the Debtor was organized under the laws of Virginia, and certain but not all of its corporate documents designate Virginia as its principal place of business, the facts demonstrate that the actual direction, control, and coordination of the Debtor occurs in San Francisco, California by Mr. Minor as trustee of the Debtor's sole member.

## C. Given That Venue Is Proper, the Debtor's Case Should Not Be Transferred to the Eastern District of Virginia

When venue is proper in the district where the bankruptcy case was filed, the case may nevertheless be transferred, on motion by a party, pursuant to 28 U.S.C. § 1412, which provides that: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

The burden is on the party requesting change of venue to demonstrate by a preponderance of the evidence that transfer of the case is warranted. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979). A debtor's choice of forum is entitled to "great weight <u>if venue is proper</u>." *In re Enron Corp.*, 274 B.R. 327, 342-43 (Bankr. S.D.N.Y. 2002) (emphasis supplied); *see also*, *In re Consolidated Companies*, 113 B.R. 269, 274 (Bankr. N.D. Tex. 1989); *In re Del. & Hudson Ry Co.*, 96 B.R. 467, 469 (Bankr. D. Del. 1988) *aff'd* 884 F.2d 1383 (3d Cir. 1989). Consequently, "[w]here a transfer would merely shift

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." *Enron*, 274 B.R. at 343. Transferring venue of a bankruptcy case is not to be taken lightly. *Id.*

The deference accorded a debtor's choice of venue cannot be dissipated by the moving parties' mantra that a debtor's assets are located elsewhere. Section 1408(1) is very clear in providing that venue is proper within the district of the debtor's principal place of business. More importantly, nothing in section 1408(1) requires a debtor to file its case within the district in which it is incorporated or has its principal assets. If Congress intended proper venue to be only where the debtor's assets were located it would have said so. Because section 1408 was drafted in the disjunctive, Congress clearly intended to allow a debtor to choose its venue from a number of options. This is evidenced by the fact that under section 1408(2), Congress expressly allows a debtor to select the same venue of an affiliate's case even if the debtor is not incorporated within the district or if its assets, employees, books or records are located in another district. *See* 28 U.S.C. § 1408(2). That conclusion is reinforced by the sweeping changes to the Bankruptcy Code in 2005, in which Congress left the venue provisions unchanged.

In addition to placing "great weight" on a debtor's choice of venue, courts consider the following factors in determining whether to transfer a bankruptcy case: (i) the proximity of creditors to the court; (ii) the proximity of the debtor to the court; (iii) the proximity of witnesses necessary to the administration of the estate; (iv) the location of the debtor's assets; (v) the economic administration of the estate; and (vi) the necessity for ancillary administration if liquidation should result. *See Enron*, 274 B.R. at 343 (*citing In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). The factor given the most weight is the promotion of the economic and efficient administration of the estate. *Enron*, 274 B.R. at 343. The factor typically given the least weight is the necessity for ancillary administration if liquidation should result. *Id.* As set forth below, these factors weigh heavily toward retention of venue in this District.

### 1. Transfer Is Not in the Interest of Justice

When considering the "interest of justice," courts apply a broad and flexible standard. *In re Grumman Olson Industries, Inc.*, 329 B.R. 411, 437 (Bankr. S.D.N.Y. 2005). A court "considers

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

14

Case: 11-30554   Doc# 33   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 18 of 29
DEBTOR'S OBJECTION TO
MOTION TO TRANSFER VENUE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  whether transfer of venue will promote the efficient administration of the estate, judicial economy,

2  timeliness, and fairness." *Enron Corp.*, 274 B.R. at 343 (*citing Manville Forest Prods. Corp.*, 896

3  F.2d at 1391). "[T]he facts and circumstances which inform one evaluation will almost always bear

4  on the other as well." *In re LaGuardia Associates, L.P.*, 316 B.R. 832, 839 (Bankr. E.D. Pa. 2004).

5       Transfer of the pending chapter 11 case to the Eastern District of Virginia, located in

6  Norfolk, Virginia,[4] would be inefficient, and would be adverse to the interests of the various

7  stakeholders in this case (other than CWF). A change of venue would also burden the professionals

8  for the parties that who will be principally responsible for obtaining the investment capital needed

9  to restructure the Debtor and for negotiating and formulating a plan of reorganization in this case in

10  which CWF has a first priority secured claim that is abundantly oversecured. Such reorganization

11  efforts are best accomplished by maintaining venue in the Northern District of California.

12       (a)    <u>Efficient Administration of the Bankruptcy Estate</u>

13       In determining whether transfer of venue is in the interests of justice, "[t]he factor given the

14  most weight is the promotion of the economic and efficient administration of the estate." *Enron*

15  *Corp.*, 274 B.R. at 343 (*citing Commonwealth*, 596 F.2d at 1247 ("[T]he most important

16  consideration is whether the requested transfer would promote the economic and efficient

17  administration of justice.")). This factor has been examined in terms of "the need to obtain post-

18  petition financing, the need to obtain financing to fund reorganization, and the location of the

19  sources of such financing and the management personnel in charge of obtaining it." *Enron Corp.*,

20  274 B.R. at 348 (*citing Commonwealth*, 596 F.2d at 1247, and *In re International Filter Corp.*, 33

21  B.R. 952, 956 (Bankr. S.D.N.Y. 1983)).

22       The application of this test by the Fifth Circuit Court of Appeals in its oft-cited decision in

23  *Commonwealth* is illustrative. In determining that transfer of the bankruptcy case to Puerto Rico

24  was not in the interest of justice, the Fifth Circuit stated as follows:

25          The main concern that this implicates is the importance of CORCO to the welfare
        and economic stability of Puerto Rico and its people. Because CORCO is a major

26          supplier of petroleum products to Puerto Rico, both the economy and the people of

27

28      [4] While it is correct that transfer of the case to a venue based on the location of assets would mean the district of Newport News, Virginia, it is the Debtor's understanding that all chapter 11 cases are actually heard in Norfolk, Virginia.

SF:76627.1   DEBTOR'S OBJECTION TO MOTION TO TRANSFER VENUE

Puerto Rico are vitally concerned with the outcome of the Chapter XI proceeding. The government contends that the overwhelming concern of Puerto Rico with the continued operations of CORCO require a transfer of this case to Puerto Rico. We disagree. Without belittling in the least the extent of Puerto Rico's interest in CORCO, that interest is served by maintaining CORCO as a functioning refinery. This can best be accomplished in San Antonio. The troubles of CORCO are financial. The people who can solve those problems are in San Antonio.

*Commonwealth*, 596 F.3d at 1248 (emphasis added).

As in this case, *Commonwealth* addressed a motion to transfer venue where the principal assets were located elsewhere. Venue in San Antonio, Texas, was challenged on the bases that Commonwealth's most substantial asset (an oil refinery) was located in Puerto Rico and was subject to substantial regulation in Puerto Rico, most of Commonwealth's products were sold to Puerto Rican customers, and Commonwealth was important to the people and economy of Puerto Rico. Notwithstanding that the substantial assets were in Puerto Rico, the Fifth Circuit Court of Appeals held that the interest of justice required retention of venue in San Antonio where Commonwealth's financial restructuring would actually take place. *Id*. at 1248.

Similarly, in *In re Garden Manor Associates, L.P.*, 99 B.R. 551 (Bankr. S.D.N.Y. 1988), the court retained venue of a single asset real estate debtor, whose sole asset was located in another jurisdiction. The court did so based on the fact that New York was the location where the debtor could most successfully reorganize. *Id*. at 554-55. In *Garden Manor*, the court found that the case turned on the debtor's ability to raise capital, renegotiate loan terms, locate a potential purchaser, or execute a potential cram down of its major secured creditor. *Id*. The parties most likely to be a source of capital were located in New York, such that efforts to reorganize could best be conducted in New York. As Judge Gonzalez recognized, citing the decision positively: "This is the ultimate purpose of a Chapter 11 bankruptcy case." *Enron Corp*., 274 B.R. at 348.

Here, as in *Commonwealth*, *Garden Manor Associates*, and *Enron*, the Court is faced primarily with a motion to transfer venue of a pending chapter 11 case to a different state and district based solely on the location of the debtor's principal assets. In support of such motion, CWF invokes the location of the Debtor's asset as the basis for transferring venue of the case in the interest of justice. In order to continue as a going concern, however, the Debtor must resolve its

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  financial troubles as embodied by its loan defaults and the underlying liquidity issues of the

2  Debtor's capital contributor, Mr. Minor.

3       (b)    Fairness

4       The interests of fairness favor retention of this case in the Northern District of California.

5  Notably absent from CWF's Motion is the support of any of the other creditors in this case (which

6  make up 67% of the claims against the estate) to contest the Debtor's proper selection of venue or

7  support transferring venue to the Eastern District of Virginia.  In fact, the Debtor believes that

8  CWF's Motion is motivated by a self-serving agenda to put the Debtor's case before a local judge

9  that will favor CWF solely because Carter's Grove has historical significance.  CWF's invocation

10  of the supposed "economies" of transfer is disingenuous when the case boils down to the

11  restructuring of financial obligations that are secured by a first priority lien, the value of which is

12  far in excess of CWF's lien.  Traditional notions of fairness dictate that the interest of justice will

13  be best served by retaining venue of this case in the Northern District of California.

14       **2.    Transfer is Not Warranted for the Convenience of the Parties**

15       (a)    Proximity of Creditors to the Court

16       Proximity of creditors favors the retention of venue in the Northern District of California.

17  When determining the proximity of creditors, courts must consider the actual number of creditors

18  and the dollar value of their respective claims.  *Enron Corp.*, 274 B.R. at 345; *Commonwealth Oil*

19  *Refining Co., Inc.*, 596 F.2d at 1248.  The views of secured creditors are of particular significance

20  on this issue.  *See In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) (giving

21  weight to the fact that two of the debtor's secured creditors favored venue selected by the debtor).

22       The Debtor has very few creditors.  The Schedules reflect that the Debtor only has ten

23  general unsecured creditors holding claims in the aggregate amount of $53,400.  The claims of

24  general unsecured creditors represent less than 0.5% of the total claims asserted against the

25  Debtor's estate, all of which will likely be paid in full given the substantial equity in Carter's

26  Grove, provided that such claims are valid and allowed.  Seven of the ten unsecured creditors are

27  utilities that have the protection of section 366 of the Bankruptcy Code.  Notably, not one of the

28  Debtor's general unsecured creditors has raised any issues with the Debtor's proper choice of venue

SF:76629v1   DEBTOR'S OBJECTION TO
MOTION TO TRANSFER VENUE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

or joined in CWF's Motion. More importantly, CWF is a first lienholder protected by a 400% equity cushion. The second and third lienholders are also oversecured and represented by San Francisco counsel. Mr. Minor is the party that has the greatest economic interest in this case.

Given the advancement of electronic communications, courts recognize that the proximity of creditors is of less importance in cases of national scope because no one location is convenient for all parties. *See In re Ross*, 312 B.R. 879, n. 6 (Bankr. W.D. Tenn. 2004), *aff'd, In re MacDonald*, 356 B.R. 416 (W.D. Tenn. 2006) ("the reality in today's bankruptcy world is that most creditors are national ones, relying upon electronic filings of pleadings in more bankruptcy courts. Outside of the need in some instances for creditors to have an attorney appear in the bankruptcy court, it may be of little concern to creditors where the individual debtor's case is filed … ."). *See also Enron Corp*., 274 B.R. at 347 (noting that the dockets of all cases pending before the court were available on Pacer, and that the burden of travel could be reduced by permitting telephonic and video conferencing). While this is not a "national case" in terms of operations, it involves the restructuring of debt, not the liquidation of assets, that will be controlled by Mr. Minor within the Northern District of California. Transferring venue of this case from the Northern District of California to the Eastern District of Virginia would do nothing more than shift the inconvenience that accompanies any chapter 11 case from CWF to the Debtor, without any showing that such shift will aid in the administration of the estate.

Moreover, the advancement of electronic communication and telephonic participation in court hearings has greatly impacted the proximity of creditors analysis. CWF has not provided any evidence to support its assertion that holders of general unsecured claims will be more likely to participate in this chapter 11 case if it is transferred, especially in light of the *de minimis* amount of the unsecured claim pool. In chapter 11 cases of varying sizes, parties routinely employ email, teleconferencing, video depositions, massive instant document transfers or data rooms. More importantly, the Court has implemented Policy and Procedures for Appearances by Telephone. Smaller creditors may file pleadings electronically and are far more likely to attend and participate in a conference call or "court call" access than to take a full day to attend a hearing, even if the hearing is located in the Eastern District of Virginia. Consequently, proximity of general unsecured

Case: 11-30554    Doc# 33    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 22 of
29
SF:76627.2    DEBTOR'S OBJECTION TO
MOTION TO TRANSFER VENUE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    creditors is of little or no concern, and unsecured creditors have not raised an issue with the

2    Debtor's choice of venue.

3         Approximately 67% of the total claims in this case, those asserted by AVN in the amount of

4    $5,000,000 and Sotheby's in the amount of $3,400,000, are not proximate to the Eastern District of

5    Virginia. AVN is located in California and is represented by San Francisco counsel. Sotheby's is

6    located in New York. There is no evidence to support that transferring the case to the Eastern

7    District of Virginia will be any more convenient for Sotheby's. In fact, pre-petition, Mr. Minor's

8    attorneys were engaged in negotiations with Sotheby's attorneys located in San Francisco,

9    California. The Debtor will continue to engage in negotiations with these attorneys as necessary

10   during this case. Third, neither AVN nor Sotheby's has filed a motion to transfer venue or joined

11   in CWF's Motion, and courts have given the position of other creditors significant weight in the

12   context of a motion to transfer venue. See *Suzanne de Lyon*, 125 B.R. at 868.

13        The only cases cited by CWF in support of the proximity of creditors are factually and

14   legally distinguishable. For example, CWF cites *In re Donald*, 328 B.R. 192, 204 (B.A.P. 9th Cir.

15   2005) for the proposition that creditors should have reasonable access to court and not administered

16   in a location that handicaps parties in interest. It should be noted that the foregoing was stated by

17   the court in the context of an individual's chapter 13 that was commenced in the improper district

18   (C.D. Cal.) by a debtor (i) that was domiciled in Georgia and not California since she only spent 30

19   days there looking for a job (and staying with a friend) before returning to Georgia, (ii) that was

20   attempting to stave off foreclosure of property that was located in Georgia, (iii) that had all of her

21   financial accounts and other property located in Georgia, and (iv) whose lender and majority of

22   other creditors were also located in Georgia. *Id.* at 195 and 204. Unlike *Donald*, the Debtor's

23   chapter 11 case was filed in the proper district in accordance with 28 U.S.C. § 1408.

24        CWF also cites *In re West Coast Interventional Pain Med., Inc.*, 435 B.R. 569, 580 (Bankr.

25   (N.D. Ind. 2010) for the proposition that when considering proximity of creditors, those creditors

26   whose claims are going to be challenged by a debtor are to be given greater weight than those with

27   undisputed claims. Unlike this case, the debtor in *West Coast* was on the record stating that the

28   claims of Indiana creditors (located in the venue selected by the debtor) would not be challenged

and the claims of California creditors (located in the venue preferred by the movant) would. Here, the Debtor's case has been pending for little more than one month. The Debtor is analyzing all the claims against the estate, not just the claims of CWF. To the extent that Debtor challenges the claim asserted by CWF or asserts affirmative claims against CWF, such claims represent less than 1/3 of the total claims asserted against the estate and in any case are fully secured.

Moreover, and as discussed above, there is no evidence that any party in interest will be prejudiced by having this case administered in the Northern District of California in the event the Debtor determines to challenge any of the claims filed against the estate.

CWF cites *In re B.L. McCandless LP*, 417 B.R. 80, 83 (Bankr. N.D. Ill. 2009), for the proposition that when a party agrees to a forum selection clause it waives the right to argue inconvenience when faced with a motion to transfer to that forum. As reflected in the Note annexed to the Minor Declaration as Exhibit E, the Note only contains a confession of judgment, not a forum selection clause. While the confession of judgment could have been executed and enforced in a court located in Williamsburg, Virginia, CWF failed to take the proper steps to record the judgment prior to the commencement of the Debtor's chapter 11 case. As a result, the enforcement of the confession of judgment is now stayed by section 362(a) of the Bankruptcy Code as the venue for the execution of such. Moreover, in *McCandless* and the case relied upon by the court in *McCandless*, the debtor agreed to an explicit forum selection clause and the court determined to transfer venue of the cases on that basis.

The fact that Mr. Minor caused MFH to commence a chapter 11 case in the Western District of Virginia has no bearing on the convenience factor or the analysis of whether to transfer this case pursuant 28 U.S.C. § 1412. As discussed above, the legal issues relating to MFH, the facts giving rise to the claims of MFH against the numerous parties, the claims asserted against both MFH and Mr. Minor, the creditors, the assets, and the various litigations that were pending in Virginia prior to filing of MFH's chapter 11 case, are factors that are not present in the Debtor's case.

In light of the foregoing, the Northern District of California is a more convenient venue to all parties than any other venue.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

With respect to these factors, the Fifth Circuit Court of Appeals has held that the proximity of the debtor's principal place of business to its chosen venue is evident.  *Commonwealth*, 596 F.2d at 1248.  While the Debtor is organized under the laws of Virginia, its sole member lives and manages the Debtor's affairs in San Francisco, California.  With respect to employees, the "concern is with the corporation's employees who must appear in court, not the employees" that are working for the debtor.  *Id.*  The Debtor has three employees who were owed wages as of the Petition Date. These employees are the caretakers of the Debtor's assets.  However, shortly after the Petition Date, Mr. Minor satisfied the claims of the Debtor's employees.  Accordingly, there is little reason to believe that the Debtor's employees will be required to appear in these cases on account of wage claims.  Given the foregoing, there is little reason on the facts of this non-operating case that any of the Debtor's employees will be required to travel to California with any significant frequency.  In *Enron*, the court found that

> [most of the Debtors' officers] will not be required to attend hearings before this Court. Rather, the certain participants in the proceedings before this Court will be the professionals retained in these cases.  Subject to court approval, appearances required by the officers (or other management) can be addressed by telephonic and video conferencing capabilities.  The limited appearances that may be required of the principals will nevertheless allow them to continue with the management of the businesses.

*Enron Corp.*, 274 B.R at 347. (footnotes omitted).  Such analysis is equally applicable here, where the Court permits attendance by telephone by parties in interest.

Moreover, it will be the professionals that attend the majority of the hearings, and all of the major stakeholders in this case have California bankruptcy counsel.  Again, in *Enron*, Judge Gonzalez' observations are apt:

> [The debtor] is dependent on a group of professionals and business people that have determined that this is the proper venue for the case.  Were the venue to change, it would not result in a change in the key individuals that are making the decisions in [the debtor's] case.  Rather, a change in venue . . . would simply make it that much less convenient for [the debtor's] decision-makers to efficiently and economically administer [the debtor's] estate.

*In re Enron Corp.*, 274 B.R. 376, 394 (Bankr. S.D.N.Y. 2002), *abrogated on other grounds, In re Enron Corp.*, 317 B.R. 629 (Bankr. S.D.N.Y. 2004).  This factor should receive little weight.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   CWF contends that it will be inconvenient to maintain venue in the Northern District of

2   California in the event that the Debtor contests the claims asserted by CWF.  CWF believes that the

3   experts that might opine on any dispute must be from Virginia.  However, the Debtor has not

4   identified any experts (although it is in the process of doing so) it is unclear where such experts

5   would be located.

6           (c)      <u>Location of Assets</u>

7   As discussed above, *Commonwealth* and other cases recognize that the location of assets in

8   a chapter 11 case is not particularly important for determining proper venue.  *See Commonwealth*,

9   596 F.2d at 1248 n.19 (recognizing that the "location of the debtor's assets would be an extremely

10  significant consideration in a liquidation proceeding."); *Enron Corp.*, 274 B.R. at 347-48 ("The

11  location of the assets is not as important where the ultimate goal is rehabilitation rather than

12  liquidation."); *see also*, *In re Baltimore Food Systems, Inc.*, 71 B.R. 795, 800-01 (Bankr. D.S.C.

13  1986) (venue proper where executives, operational and financial control are in state where

14  bankruptcy filed, despite the fact that physical facilities and assets are located in another state); *In*

15  *re Pubco Corp.*, 27 B.R. 139, 141 (Bankr. E.D. Pa. 1983) (location of assets of little importance to

16  debtor, a holding company whose principal assets consist of the stock of four companies not in

17  chapter 11); *In re One-Eighty Investments, Ltd.*, 18 B.R. 725, 729 (Bankr. N.D. Ill. 1981) (noting

18  that in a reorganization, location of assets not particularly important).

19  While CWF attempts to characterize this as a real property case, best handled in the area

20  where the real property is located, this case is just one part of Mr. Minor's overall restructuring.

21  CWF relies upon *In re Toxic Control Tech., Inc.*, 84 B.R. 140, 144 (Bankr. N.D. Ind. 1988), and *In*

22  *re Macatawa*, 158 B.R. 82, 88 (Bankr. E.D. Mich. 1993), for the proposition that location of assets

23  should be accorded great weight when the debtor's assets are located within a single jurisdiction.

24  However, both *Toxic Control* and *Macatawa* ignore the case law cited above regarding the location

25  of assets in the context of a reorganization as opposed to a liquidation.  The debtor's case in *Toxic*

26  *Control* was originally commenced as an involuntary chapter 7 and converted to chapter 11 upon

27  consent to entry of the order of relief.  There was no indication that the debtor would be able to

28  reorganize so it made sense to maintain venue in the same location as the debtor's assets.  In

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   *Macatawa*, the court failed to find a "nerve center" present. *Macatawa*, 158 B.R. at 87. In

2   contrast, and as discussed above, the Debtor satisfies the nerve center test, supporting a result

3   contrary to that reached in *Macatawa*, which was also decided nearly twenty years prior to the

4   Supreme Court's decision in *Hertz*.

5               (d)     Economic Administration of the Estate

6           The most important factors considered in a motion to transfer venue of a case filed in the

7   proper district is whether the venue supports an efficient and economic administration of the estate.

8   The economic administration of the case includes, among other things, the need to obtain financing,

9   the location of such sources, and the management personnel in charge of obtaining it. *In re Land*

10  *Steward, L.C.*, 293 B.R. 364 370 (Bankr. E.D. Va. 2002); *Enron*, 274 B.R. at 348; *Huntington Nat'l*

11  *Bank v. Indus. Pollution Control, Inc.* (*In re Indus. Pollution Control, Inc.*), 137 B.R. 176, 182

12  (Bankr.W.D. Pa. 1992); *see also In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 554-55 (Bankr.

13  S.D.N.Y. 1988) (court denied motion to transfer even when sole asset was located in another

14  jurisdiction because ability to raise capital, renegotiate loan terms and likely sources of capital were

15  located in current venue).

16          Notably, CWF has not supplied any evidence to support that the Debtor's case would be

17  more economically administered in the Eastern District of Virginia other than speculating that the

18  case could be converted to a chapter 7, which would require a trustee to administer the assets of the

19  Debtor. *See* Motion at 14:16-26.

20          There is no basis for CWF's unsupported assertion that this case could be converted to

21  chapter 7. In considering the necessity of ancillary administration in the event of liquidation, courts

22  routinely follow the approach of *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. 1187, 1191 (D. Del.

23  1971) holding that the consideration of a potential liquidation is insignificant and/or inappropriate

24  at this juncture of the case. *See also*, *Commonwealth*, 596 F.2d at 1248 n.19 (holding that

25  administration of assets "is of little importance in a . . . [bankruptcy] proceeding where the goal is

26  financial rehabilitation, not liquidation."); *In re Asset Resolution, LLC*, 2009 WL 4505944, *6

27  (Bankr. S.D.N.Y. Nov. 24, 2009) (same); *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 869 (Bankr.

28  S.D.N.Y. 1991) (discounting the factor of necessity of ancillary administration as basis for venue

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    transfer if liquidation results).  In light of the case law on this factor and the fact that there is no

2    indication that the Debtor cannot be reorganized, the Court should give no weight to this factor.

3    Moreover, the Debtor intends to file a plan of reorganization in the near term.

4            On the other hand, efficient administration of the estate will likely result from maintaining

5    venue in the Northern District of California because the heart of any reorganization is preparing and

6    negotiating a chapter 11 plan that is acceptable to all of the relevant stakeholders.  *Commonwealth*,

7    596 F.2d at 1247.  In this regard, the sole responsible person of the Debtor's affairs (Mr. Minor)

8    lives in, and conducts the Debtor's affairs from San Francisco, California.  "Where the corporation

9    transacts its corporate business is a logical place for venue in such proceedings."  *Id.* at 1246.

10   Consequently, venue should remain in the Northern District of California.

11                   (e)    Other Factors Not Relevant to the Convenience of Parties Analysis

12           CWF asserts a host of unsupported facts and inapposite case law regarding the convenience

13   of the parties analysis.  For example, CWF cites *In re Macatawa*, 158 B.R. 82, 88 (Bankr. E.D.

14   Mich. 1993), for the proposition that the debtor should bear the cost of inconvenience as opposed to

15   creditors since the principal chose to operate the business from a remote location.  It should be

16   noted that unlike *Macatawa*, the Debtor does not operate a business in the Eastern District of

17   Virginia.  The Debtor is nothing more than a holding company that is owned and maintained by Mr.

18   Minor.  All of the transaction documents relating to the sale of Carter's Grove clearly reflect that

19   CWF was aware that Mr. Minor would conduct his maintenance and management of Carter's

20   Grove from San Francisco, California.  These provisions make clear that Mr. Minor's principal

21   place of business was located in the Northern District of California.  It is disingenuous for CWF to

22   now claim inconvenience when it was clear from the outset that the Debtor could commence a

23   chapter 11 case in the Northern District of California.

24           CWF also focuses on the claims against CWF or the defenses the Debtor may assert to

25   CWF's claims as if these are the only issues to be addressed in the case.  While the Debtor does

26   believe that it has claims against CWF and intends to pursue them, it was Mr. Minor's personal

27   liquidity issues that precipitated this case and any reorganization will center around his

28   restructuring efforts.  Moreover, to the extent the disputes with CWF require the application of state

law, this court is able to apply state law just as the Bankruptcy Court in Virginia. Moreover, the issue that is being investigated – fraudulent concealment of adverse conditions of the residence – is not one that is complex from a legal standpoint or unique to Virginia.

Moreover, in *Macatawa*, the court found no "nerve center" present. *Id.* at 87. In contrast, and as discussed above, the Debtor satisfies the nerve center test, thus supporting a result contrary to that reached in *Macatawa*, which was also decided nearly twenty years prior to the Supreme Court's decision in *Hertz*.

## **CONCLUSION**

Fairly presented, the facts do not support the transfer of venue to the Eastern District of Virginia, especially when venue is proper in the Northern District of California. The Motion focuses myopically on the interests of CWF, a first priority, oversecured creditor and local trade creditors that hold less than 0.5% of the total debt and who have shown no interest in changing venue. CWF disregards the interests of the largest secured holders of debt in this case and who have the most at risk. These creditors together hold more than 2/3 of all the debt asserted against the Debtor's estate and are either located in California, have counsel in California, or both. Further, the Debtor's "nerve center" and principal place of business is clearly California. The economic and efficient administration of this case strongly favors retention of venue in the Northern District of California. Accordingly, the Debtor submits that transfer is not in the interest of justice, nor for the convenience of the parties, and the Motion should be denied.

Dated: March 23, 2011

PACHULSKI STANG ZIEHL & JONES LLP

By      */s/ Debra Grassgreen*
        Richard M. Pachulski
        Debra I. Grassgreen
        John W. Lucas

        Attorneys for Debtors
        and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA