PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  **EXHIBIT A**

2  (The Trust)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# REVOCABLE TRUST AGREEMENT

**THIS REVOCABLE TRUST AGREEMENT** is made this ___3___ day of
_November_____, 2004, between **HALSEY MCLEAN MINOR** as Grantor (hereinafter
sometimes called "**HALSEY**" or "Grantor") and **HALSEY MCLEAN MINOR** as Trustee
(hereinafter sometimes called the "Trustee"). Grantor and Trustee agree as follows:

The trust created hereunder shall be known as "**THE HALSEY MCLEAN MINOR
REVOCABLE TRUST**."

## 1. INTRODUCTORY PROVISIONS.

**1.1 Marital Status.** Grantor is married to **DEBORAH LEE MINOR**
("**DEBORAH**"), but is in the process of obtaining a dissolution of their marriage. Grantor
intentionally makes no provisions herein for **DEBORAH**.

**1.2 Family Declarations.** Grantor has three (3) children now living whose
names and dates of birth are as follows:

| | |
|---|---|
| **CARTER COLSTON MINOR** | October 12, 1996 |
| **HALSEY MCLEAN MINOR, JR.** | January 9, 1998 |
| **JACQUELINE D. MINOR** | May 4, 1999 |

All reference herein to "Grantor's child" or "Grantor's children" are to the above
named children and any other children hereafter born to or adopted by Grantor and the term
"Grantor's issue" shall refer to such children and their issue. Grantor has no deceased children.

**1.3 Assets Constituting Trust.** Grantor intends by this instrument to transfer
and does hereby transfer to the Trustee the assets listed on the attached Schedule A to this trust.
Grantor owns or may acquire certain other assets which he may hereafter transfer to this trust,
either *inter vivos* or by disposition at death. Any other person may transfer assets to the trust;
*provided, however,* that all assets added to the trust must be acceptable to the Trustee.

## 2. INCOPORATION BY REFERENCE.

Except as provided below, the trust
created hereunder shall be administered according to the provisions of **THE MINOR REVOCABLE
TRUST** entered into by **HALSEY MCLEAN MINOR** and **DEBORAH LEE MINOR**, as Grantors and
Trustees on April 21, 1997, as amended from time to time, which trust agreement and all
amendments thereto are hereby incorporated by reference (hereinafter referred to as
"**THE MINOR REVOCABLE TRUST**".

**2.1 Provisions Regarding DEBORAH LEE MINOR.** For the purposes of this instrument, all references to DEBORAH in THE MINOR REVOCABLE TRUST, whether during Grantor's lifetime or after Grantor's death, shall be interpreted as if DEBORAH were then deceased.

**2.2 Distributions of Income and Principal During Grantor's Lifetime; Grantor's Power to Amend and Revoke.** The following provisions of this Section 2.2 *et seq.* and not those in Section 4 *et seq.* of THE MINOR REVOCABLE TRUST, shall govern the administration of the trust during Grantor's lifetime.

**2.2.1 Distributions During Grantor's Lifetime.** During Grantor's lifetime, the Trustee shall pay to or apply for the benefit of Grantor as much of the net income and principal of the trust estate as is necessary for Grantor's health, support, maintenance, education comfort and welfare, in accordance with his accustomed manner of living. Any income not distributed shall be accumulated and added to principal. In addition, at the request of Grantor, the Trustee shall pay to Grantor so much of the principal as Grantor shall request.

**2.2.2 Power To Amend And Revoke.** During Grantor's lifetime, this instrument and the trust hereunder may be amended and/or revoked in whole or in part by Grantor. Upon Grantor's death, this instrument and the trust hereunder shall be irrevocable. The powers of amendment and revocation hereunder shall be exercised by an instrument or instruments in writing delivered to the Trustee. Any part of the trust estate withdrawn by amendment or revocation shall be distributed to Grantor as Grantor's separate property. Any amendment changing the duties, powers, and responsibilities of the Trustee shall require the Trustee's consent.

**2.2.3 Power Of Attorney.** If an instrument appointing an attorney-in-fact for Grantor gives the attorney-in-fact the power to amend, revoke or modify trust instruments, then any power of amendment, revocation or modification under the provisions of Section 2.2.2 above exercisable by Grantor during his lifetime may be exercised by Grantor's attorney-in-fact to the extent such power could be exercised by the Grantor subject to the limitations in the instrument appointing such attorney-in-fact.

**2.2.4 Power Of Appointment on Grantor's Death.** On Grantor's death, the Trustee shall distribute the undistributed balance of the trust (including both principal and accrued or undistributed income allocable thereto) to such one or more persons and entities, including Grantor's own estate, and on such terms and conditions, either outright or in trust, as Grantor shall appoint by a Will, or by an *inter vivos* instrument providing for a disposition to take effect upon Grantor's death, which Will or instrument specifically refers to and exercises this power of appointment. Such power of appointment shall be exercisable by Grantor alone and in all events. The Will or instrument which exercises such power of appointment which bears the latest date shall supersede all prior dated Wills or instruments in conflict therewith.

jo891.DOC

Case 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 3 of 43

**2.2.4.1 Disposition Of Property Not Appointed On Grantor's Death.** Any of the trust not effectively appointed by Grantor in this manner shall on Grantor's death be held, administered and distributed as provided in Section 5 *et seq.* of THE MINOR REVOCABLE TRUST.

**2.2.5 Alternative Beneficiary And Distributions.** Any of the trust estate of any trust under this instrument which becomes distributable by the terms of this instrument either at the death of the Grantor or at a later time, which is not effectively disposed of by the foregoing provisions of this instrument, shall be distributed, free of trust, as follows, and not as provided in Section 5.8 *et seq.* of THE MINOR REVOCABLE TRUST: All to those persons then living who (at the time of the event requiring such distribution) would then be Grantor's heirs, the identities and respective shares of the heirs to be determined as though the death of the Grantor had then occurred, and according to the laws of the State of California then in effect relating to the succession of separate property not acquired from a predeceased spouse.

Executed at San Francisco, California, this 3 day of November, 2004.

HALSEY McLEAN MINOR
Grantor and Trustee

STATE OF CALIFORNIA )
) ss.
COUNTY OF _SAN Francisco_ )

On _November 3, 2004_, before me, _KATHLEEN MERRIFIELD_, a Notary Public,
personally appeared **HALSEY MCLEAN MINOR**

☐ personally known to me
-or-
☒ proved to me on the basis of satisfactory evidence to be the person whose
name is subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity, and that by his signature on the
instrument the person or the entity upon behalf of which the person acted,
executed the instrument.

Witness my hand and official seal.

KATHLEEN MERRIFIELD
Commission # 1396817
Notary Public - California
San Francisco County
My Comm. Expires Jan 28, 2007

_Kathleen Merrifield_
Signature of the Notary

CAPACITY CLAIMED BY SIGNER
Though statute does not require the
Notary to fill in the data below, doing so
may prove invaluable to persons relying
on the document.

☒ Individual
☐ Corporate Officer(s)

☐ Partner(s) ☐ Limited
☐ General
☐ Attorney-in-Fact
☒ Trustee(s)
☐ Guardian/Conservator
☐ Other: _____
_____

SIGNER IS REPRESENTING:
Name of person(s) or entity(ies)
_____
_____

This certificate must be attached to the
document described at right:

Title or Type of Document: Revocable Trust Agreement

Number of Pages: _____

Date of Document: _11/3/04_

Signer other than named above: N/A

# EXHIBIT B

(The Articles of Organization)

# ARTICLES OF ORGANIZATION

## OF

## CARTER'S GROVE, LLC

Pursuant to Chapter 12 of Title 13.1 of the Code of Virginia, the undersigned states as follows:

1.    The name of the limited liability company is Carter's Grove, LLC (the "Company").

2.    The address of the initial registered office in Virginia is 123 East Main Street, 8th Floor, Charlottesville, Virginia 22902, which is in the City of Charlottesville, Virginia.

3.    The name and address of the initial registered agent is Steven W. Blaine, LeClairRyan, A Professional Corporation, 123 East Main Street, 8th Floor, Charlottesville, Virginia 22902, which is in the City of Charlottesville, Virginia. The initial registered agent is an individual who is a resident of the City of Charlottesville, Virginia, and a member of the Virginia State Bar.

4.    The address of the principal office where the records will be maintained pursuant to Va. Code § 13.1-1028 is c/o Minor Ventures, 199 Fremont Street, 12th Floor, San Francisco, California 94105, which is in the County of San Francisco, California.

5.    The period of duration of the Company is perpetual.

6.    No member of the Company or other person shall have authority to act for or bind the Company unless (a) the member or person is a manager, appointed by a majority of the members of the Company in accordance with the operating agreement of the Company (the "Operating Agreement"), and (b) the member or person is authorized as a manager to so act or bind the Company pursuant to the Operating Agreement or any vote, resolution or consent of a majority of the members in accordance with the Operating Agreement. Any third party dealing with a member or other person may rely without liability on the authority of such member or person as a manager or officer to act for or bind the Company provided that (a) such member or person presents the third party with a signed statement certifying that he is either a manager or officer of the Company and has such authority, and (b) the third party has no knowledge or notice that such member or person lacks such authority.

Signature:

_____
Steven W. Blaine, Organizer

Dec. 10, 2007
_____
Date

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## **EXHIBIT C**

(The Carter's Grove Deed)

$0 7 0$ **034969**

Tax ID Nos: 591-01-00-030
582-01-00-002

Consideration: $15,300,000.00

**THIS DEED**, made this 17th day of December, 2007, by and between **THE COLONIAL WILLIAMSBURG FOUNDATION**, a Virginia non-stock, non-profit corporation (successor in interest to **COLONIAL WILLIAMSBURG, INCORPORATED**), ("Grantor"), and **CARTER'S GROVE, LLC**, a Virginia limited liability company ("Grantee") whose address is c/o Minor Ventures, 199 Fremont Street, 12th Floor, San Francisco, California 94105.

### WITNESSETH:

That for and in consideration of the sum of TEN DOLLARS ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby grants, sells and conveys, with SPECIAL WARRANTY unto the Grantee, the following described property (the "Property"), to-wit:

### SEE ATTACHED EXHIBIT A

This conveyance is made expressly subject to (i) the covenants, conditions, restrictions, easements, charges and liens, if any, duly of record and constituting constructive notice, including, without limitation, the terms and provisions of that Deed of Gift of Easement, dated December 14, 2007, among Grantor, Virginia Outdoor Foundation and Virginia Board of

This document was prepared by:
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188

Return to:
Steven W. Blaine, Esq.
LeClairRyan
123 East Main Street
Charlottesville, VA 22902

Page 1 of 11

Historic Resources, recorded in the Clerk's Office of the Circuit Court of the City of Williamsburg and County of James City, Virginia, as instrument number 070034660, and (ii) such matters of title that would be disclosed by an accurate physical survey and/or inspection of the Property.

**WITNESS** the following signature and seal thereunto duly authorized:

THE COLONIAL WILLIAMSBURG FOUNDATION,
a Virginia non-stock, non-profit corporation

By: _Robert B. Taylor_____ (SEAL)
Robert B. Taylor
Senior Vice President for Finance and Administration

COMMONWEALTH OF VIRGINIA
AT LARGE, to-wit:

The foregoing instrument was acknowledged before me in _Richmond_____,
Virginia, this 18th day of _December_____, 2007 by Robert B. Taylor, who is personally known to me, as Senior Vice President for Finance and Administration of The Colonial Williamsburg Foundation, a Virginia non-stock, non-profit corporation, on its behalf.

_____
Notary Public

My commission expires: _Dec. 31, 2007_____
Registration number: _334038_____

LISA A. KELLER
NOTARY
My Comm. Expires
Dec. 31, 2007
PUBLIC
COMMONWEALTH OF VIRGINIA

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 10 of 43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

55801-002\DOCS_SF:76264a2                    MINOR DECLARATION

Tax ID Nos: 591-01-00-030
582-01-00-002

**07D034970**

Consideration: $10,300,000.00

# DEED OF TRUST

**THIS DEED OF TRUST** is made this 17th day of December, 2007, by and among **CARTER'S GROVE, LLC**, a Virginia limited liability company, ("Grantor"), and **MANUS E. HOLMES** the business address of whom is c/o First American Title Insurance Company, 1051 East Cary Street, Suite 1111, Richmond, Virginia 23219, as Trustee (the "Trustee") (index as a "Grantee"), and **THE COLONIAL WILLIAMSBURG FOUNDATION**, a Virginia non-stock, non-profit corporation ("Beneficiary") (index as a "Grantee");

## WITNESSETH:

WHEREAS, Grantor is the owner of certain parcels of land, together with all appurtenances thereunto belonging, located in the County of James City, Virginia and more particularly described in EXHIBIT A attached hereto (the "Land"); and

WHEREAS, Grantor is indebted to the Beneficiary for a purchase money loan in the amount of Ten Million Three Hundred Thousand and no/100 Dollars ($10,300,000.00) (the "Loan"); and

WHEREAS, Grantor has executed and delivered to the Beneficiary a Deed of Trust Note of even date herewith (the "Note"), payable to the order of the Beneficiary in the original principal sum of Ten Million Three Hundred Thousand and no/100 Dollars ($10,300,000.00); and

WHEREAS, to induce the Beneficiary to make the Loan, Grantor has agreed to secure such debt and interest and the undertakings prescribed in the Note and this Deed of Trust by the conveyance of the Premises (hereinafter defined);

NOW, THEREFORE, for and in consideration of the Loan and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby grants and conveys with general warranty the Premises to the Trustee;

TOGETHER with all buildings and other improvements (the "Improvements") now or hereafter erected on the Land and all rights, appurtenances, easements, privileges, remainders and reversions now or hereafter appertaining thereto; all fixtures and equipment now or hereafter owned by the Grantor and now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the use, enjoyment, occupancy or operation of the Improvements or the Land (with the Improvements and the Land being sometimes hereinafter

Prepared By/return to:
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188

**23**

Page 1 of 22

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 12 of 43

collectively referred to as the "Premises"), including, but not limited to, all plumbing and electric apparatus and equipment, cleaning and maintenance equipment, all boilers, tanks, engines, motors, power equipment, piping and plumbing fixtures, pumps, heating and air conditioning equipment and systems and lighting equipment and systems and replacements of all of the foregoing, all building materials and equipment now or hereafter delivered to the Premises and stored thereon, and all interest of any owner of the Premises in any of the foregoing items at any time acquired under conditional sales or installment sales contracts.

TOGETHER with all leases and contracts of or relating to the Premises, and all guarantees thereof, in each case whether written or oral, whether now existing or hereafter entered into, and all rents, income, revenue, issues and profits (the "Rents and Profits") now or hereafter arising from the Premises, provided that until the occurrence of an Event of Default (as hereinafter defined) and the election of the Beneficiary to collect the Rents and Profits after an Event of Default, the Grantor shall have a revocable license to collect and dispose of the Rents and Profits without restriction, and provided further that this assignment shall not impose on the Trustee or the Beneficiary any of the Grantor's obligations under such leases and contracts or otherwise.

TOGETHER with all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Premises or under or above the same or any part thereof, and all estate, rights, titles, interests, minerals, royalties, easements, privileges, liberties, tenements, hereditaments and appurtenances, reversion or reversions, remainder and remainders whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Grantor.

TOGETHER with all insurance policies, contracts, permits, approvals, licenses or plans now or hereafter pertaining to, affecting or concerning the Premises, including, without limitation, all rights accruing to the Grantor from any and all contracts with all contractors, architects, engineers, subcontractors or others relating to the design, development, construction, use, enjoyment, occupancy or operation of the Improvements on or upon the Land, including performance and materialmen's bonds and any other related items; and

TOGETHER with all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims including, without limitation, proceeds of insurance and condemnation awards.

IN TRUST to secure the payment of the Note, together with any and all renewals, extensions, substitutions, modifications and consolidations thereof, and the performance of the covenants contained in this Deed of Trust and any modification hereof and thereof.

1. Representations, Warranties and Covenants of Grantor. Grantor represents, warrants, covenants and agrees with the Trustee and the Beneficiary (and its respective successors and assigns) as follows:

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 13 of 43

(a) Authority. The Grantor has taken all necessary action to authorize the execution, delivery and performance of the Note, this Deed of Trust and the other Loan Documents (as hereinafter defined) and all transactions and documents contemplated hereby and thereby.

(b) Binding Effect and Enforceability. The Note and this Deed of Trust, when issued and delivered to the Beneficiary for value received, will constitute legal, valid and binding obligations of Grantor, enforceable in accordance with the terms thereof.

(c) Approvals. The execution, delivery and performance of the Note and this Deed of Trust and the transactions contemplated hereby and thereby, do not require any approval or consent of, or filing or registration with, any governmental or any other agency or authority, or of any other party, or if any such approval is required, the same has been obtained.

(d) No Default. Grantor is not in default in the payment of the principal of or interest on any indebtedness for borrowed money and is not in default under any instrument under and subject to which any indebtedness has been incurred, and no event has occurred and is continuing under the provisions of any such agreement that with the lapse of time or the giving of notice, or both, would constitute an event of default thereunder.

(e) Litigation. No litigation at law or in equity or any proceeding before any governmental agency involving the Grantor is pending or, to the knowledge of the Grantor, threatened in which any liability of the Grantor is not adequately covered by insurance or in which any judgment or order would have a material adverse effect upon the business or assets of the Grantor or that would affect its capacity to do business, the validity of the Note, this Deed of Trust or any other Loan Document or the performance of the Grantor's obligations hereunder and thereunder.

(f) No Conflict. The execution and delivery of the Note, this Deed of Trust and each of the other Loan Documents to which the Grantor is a party and the performance by the Grantor of its obligations hereunder and thereunder and the consummation of the transactions contemplated herein and therein will not (1) violate the Articles of Organization, Operating Agreement or other organizational documents of Grantor, (2) constitute a default under any agreement or other instrument, or (3) result in a violation of any constitutional or statutory provision or order, rule, regulation, decree or ordinance of any court, government or governmental authority having jurisdiction over the Grantor or its property.

(g) No Material Misstatements. Neither the Note, this Deed of Trust nor any written statements furnished by or on behalf of the Grantor in connection with the Loan or the Loan Documents contain any untrue statement of a material fact or omit a material fact necessary to make the statements contained therein or herein not misleading. There is no fact that the Grantor has not disclosed in writing to the Beneficiary that materially affects adversely the properties, business, prospects, profits or condition (financial or otherwise) of Grantor or the ability of the Grantor to perform his obligations under the Note or this Deed of Trust.

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 14 of 43

(h) <u>Priority</u>. Upon the recordation of this Deed of Trust, the Beneficiary will hold a first priority security interest in and lien on the Premises, free and clear of any other liens, security interests and encumbrances.

(i) <u>Note Payments</u>. Grantor shall make timely payments on the Note in the amounts, in the manner and at the place set forth therein, together with all other sums due thereunder and hereunder, when and as the same shall become due. This Deed of Trust secures payment of the Note according to its terms, which are incorporated herein by reference.

(j) <u>Performance</u>. Grantor shall perform and comply fully with the provisions of the various documents and instruments executed by the Grantor in connection with the Loan, including, without limitation, the Note and this Deed of Trust (collectively, the "Loan Documents").

(k) <u>Taxes</u>. Grantor shall pay when due all taxes, charges and assessments levied against it and the Premises or which may become a lien upon the Premises before any penalty or interest accrues thereon. In the event of the passage after the date of this Deed of Trust of any law changing in any way the laws now in force for state or local taxation of mortgages, deeds of trust or debts secured thereby, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, the whole principal sum (together with interest) secured by this Deed of Trust shall, at the option of the Beneficiary and without notice, become immediately due and payable.

(l) <u>Insurance</u>. Grantor shall continually maintain liability insurance (naming the Beneficiary as an additional insured), in such a manner and in such amounts as the Beneficiary may from time to time reasonably require on the Premises with coverages including, without limitation, liability for bodily injury, death and property damage, but in no event shall the liability limit be less than Five Million Dollars ($5,000,000) per occurrence and Ten Million Dollars ($10,000,000) in the aggregate. All policies of insurance shall be reasonably satisfactory in form and substance to the Beneficiary and shall be written with a company or companies licensed to do business in the Commonwealth of Virginia.

(m) <u>Repairs</u>. Grantor shall keep and maintain the Premises in good condition, order and repair and shall not commit or permit any waste or any other thing whereby the value of the Premises might be impaired. Grantor shall not materially alter or demolish the Improvements without the prior written consent of the Beneficiary.

(n) <u>Escrow Deposits</u>. Upon the failure of the Grantor to pay the taxes and/or insurance as requested hereunder and after demand of the Beneficiary, the Grantor shall add to each periodic payment required under the Note the amount estimated by the Beneficiary to be sufficient to enable the Beneficiary to pay, as they come due, all taxes, charges, assessments and insurance premiums which the Grantor is required to pay hereunder. Any deficiency occasioned by an insufficiency of such additional payments shall be forthwith deposited by the Grantor with the Beneficiary upon demand.

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 15 of 43

(o) <u>Compliance with Laws</u>. Grantor shall promptly comply with any applicable legal requirements of the Commonwealth of Virginia or other federal, state or local governmental entity, agency or instrumentality relating to the Premises or any part thereof.

(p) <u>Condemnation Award</u>. Any award for the taking of, or damages to, all or any part of the Premises or any interest therein upon the lawful exercise of power of eminent domain, or under threat of the exercise of such power, shall be payable to the Beneficiary. Grantor hereby appoints the Beneficiary its attorney-in-fact to receive and give all appropriate discharges for any such award. This power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked. The Beneficiary may apply the sums so received to the portion of the debt secured hereby in such manner as the Beneficiary may desire.

(q) <u>Payments by Beneficiary</u>. If Grantor shall be in default in the timely payment or performance of any of its obligations under the Loan Documents, the Beneficiary, at its option, may pay the sums (or any portion thereof) for which Grantor is obligated. Further, the Beneficiary, at its option, may advance, pay or expend such sums as may be proper and necessary for the protection of the Premises and the maintenance of this trust including but not limited to sums to satisfy taxes or other levies, and assessments or liens, to maintain insurance (including title insurance), to make repairs and to provide security guards. Any amounts so advanced, paid or expended shall be deemed principal advances secured by this Deed of Trust and its payment enforced as if it were a part of the original debt. Any such sum expended, paid or advanced shall be at the Beneficiary's sole option and not constitute a waiver of any default or right arising from the breach by Grantor of any covenant or agreement contained in the Loan Documents.

(r) <u>Continuing Lien</u>. The lien of this Deed of Trust shall not be affected by any or all of the following: (a) the sale of all or a part of the Premises, (b) the assumption by another party of Grantor's obligations hereunder, (c) the forbearance or extension of time for payment or performance of any obligation hereunder, or (d) the release of all or any part of the Premises securing such obligations or the release of any party who assumes payment of the same.

(s) <u>Attorneys' Fees</u>. In the event Grantor shall default in any of its obligations under the Loan Documents and in the opinion of the Beneficiary it becomes necessary or proper to employ an attorney to assist in the enforcement or collection of the indebtedness owed by Grantor to the Beneficiary or to enforce compliance by Grantor with any of the provisions of the Loan Documents, or in the event the Beneficiary or the Trustee voluntarily or otherwise shall become a party to any suit or legal proceeding (including a proceeding conducted under any bankruptcy law) to protect the Premises, to protect the lien of this Deed of Trust, to enforce collection of the indebtedness owed by Grantor to the Beneficiary or to enforce compliance by Grantor with any of the provisions of the Loan Documents, then Grantor agrees to pay reasonable attorneys' fees and all of the costs that may reasonably be incurred, and such fees and costs shall be secured by this Deed of Trust and its payment enforced as if it were a part of the original debt. Grantor shall be liable for such reasonable attorneys' fees and costs whether or not any suit or proceeding is commenced.

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 16 of 43

(t) <u>Anti-Marshalling Provision</u>. The right is hereby given by the Grantor to the Trustee and the Beneficiary to make partial releases or releases of security hereunder (whether or not such releases are required by agreement among the parties) agreeable to the Trustee and the Beneficiary without notice to, or the consent, approval or agreement of other parties and interests, including junior lienors and purchasers subject to the lien of this Deed of Trust, which partial release or releases shall not impair in any manner the validity or priority of this Deed of Trust on the Premises remaining hereunder. Notwithstanding the existence of any other security interests in the Premises held by the Beneficiary or by any other party, the Beneficiary shall have the right to determine the order in which any or all of the Premises shall be subjected to the remedies provided herein. The Beneficiary shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. The Grantor and all other persons liable hereunder hereby waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

(u) <u>Transfer of Premises or Interest in Grantor</u>. Grantor shall not sell, convey, transfer, assign or permit any sale, conveyance, transfer or assignment of the Premises or any part thereof or any interest therein, by operation of law or otherwise, without the prior written consent of the Beneficiary (which consent, which need not be given, may be conditional upon such modification of the terms of the Note and the payment of such fees and other charges as the Beneficiary may in its sole discretion require). The Grantor shall maintain its existence as a Virginia limited liability company and shall not consolidate with or merge into any other Person, wind up, liquidate or dissolve its affairs or enter into any agreement to do any of the foregoing, without the prior written consent of the Beneficiary. The Grantor shall not consolidate or merge with or into any other entity or convey or transfer its properties and assets substantially as an entirety to any entity. For so long as the lien of this Deed of Trust exists on any of the Premises, (A) the Grantor will not voluntarily or involuntarily commence a case with respect to itself, as debtor, under the Federal Bankruptcy Code or any similar federal or state statute, and (B) no material amendment to the Articles of Organization or Operating Agreement, including, without limitation, a change of control, may be made without first obtaining approval of the Beneficiary. Any indemnification of the Grantor to its beneficiaries or any guarantor of the Loan or "Affiliates" (hereinafter defined) or otherwise shall be fully subordinated to any obligations respecting the Premises and shall not constitute a claim against the Grantor in the event that cash flow in excess of amounts necessary to pay holders of such obligations is insufficient to pay such obligations. For purpose of the clause above, the following terms shall have the following meanings:

"Affiliate" means any person controlling or controlled by or under common control with the Grantor including, without limitation (A) any person who has a familial relationship, by blood, marriage or otherwise with any partner or employee of the Grantor, or any Affiliate thereof and (B) any person which receives compensation for administrative, legal or accounting services from the Grantor, or any Affiliate of it. For purposes of this definition, "control" when used with respect to any specified person, means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership

Page 6 of 22

of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization, or government or any agency or political subdivision thereof.

(v) <u>Application of Payments</u>. Until the occurrence and continuance of any Event of Default, all payments and other sums of money received by the Beneficiary shall be applied by the Beneficiary first to amounts due the Beneficiary pursuant to subparagraph 1(q) hereof, then to amounts payable by Grantor under the Note, then to the principal of the Note. Following the occurrence and continuance of an Event of Default, all such amounts shall be applied in such order as the Beneficiary may elect.

(w)<u>Indemnity</u>. Except as otherwise provided herein, the Grantor shall protect, indemnify and save harmless the Trustee and the Beneficiary from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against any Trustee or the Beneficiary in connection with the Premises, the Loan, the Loan Documents or any related matter.

2. <u>Environmental</u>. Grantor represents and warrants that (i) Grantor has no knowledge of any discharge, spillage, uncontrolled loss, seepage or filtration (a "Spill") of oil, petroleum or chemical liquids or solids, liquid or gaseous products or any hazardous waste or hazardous substance, as those terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 or in any other federal, state or local law, regulation or ordinance governing toxic wastes, toxic or hazardous substances, petroleum hydrocarbons, asbestos, PCB's, liquid wastes and any other environmental contaminants as such laws may be amended from time to time (collectively the "Act"), at, upon, under or within the Premises or any contiguous real estate, and (ii) Grantor has not caused or permitted to occur, and shall not permit to exist, any condition which may cause a Spill at, upon, under or within the Premises or any contiguous real estate.

3. <u>Security Agreement</u>. This Deed of Trust, to the extent that it relates to personal property located on the Land only (the "Collateral"), is a security agreement and shall support any financing statement filed showing the Beneficiary's interest as a secured party, lienholder or creditor with respect to any personal property mentioned in such financing statement. Grantor shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all costs and expenses (including reasonable legal fees) of any record searches for financing statements the Beneficiary may reasonably require. Without the prior written consent of the Beneficiary, Grantor shall not create, or suffer to be created pursuant to the Uniform Commercial Code (the "UCC"), as adopted in the Commonwealth of Virginia, any other security interest in said personal property, including replacements and additions thereto. In the event of a default of any covenant or agreement of Grantor contained in this Deed of Trust, the Beneficiary shall, in addition to all other rights and remedies herein provided, have all the remedies accorded a secured party under the UCC.

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 18 of 43

4. **Event of Default**. Upon the occurrence of any one or more of the following events, there shall be an event of default (an "Event of Default") hereunder:

(a) Failure to make due and punctual payment of any sum when due under the Note or this Deed of Trust if such failure continues for fifteen (15) days.

(b) Failure by Grantor to perform or comply with any of the other covenants, agreements, terms and conditions contained in the Loan Documents and such failure shall continue for thirty (30) days after written notice thereof from the Beneficiary to Grantor, except no such notice and opportunity to cure is required with respect to Grantor's failure to obtain the required insurance coverages.

(c) Failure by Grantor to insure the Premises as required by this Deed of Trust at any time until the Note and Deed of Trust are fully released to the satisfaction of the Beneficiary.

(d) Grantor's transfer of all or a portion of the Premises, or any interest in the owner thereof, without Seller's prior written consent.

(e) Grantor's breach of that Deed of Gift of Easement, dated December 14, 2007, among Beneficiary, Virginia Outdoors Foundation and Virginia Board of Historic Resources, that Deed of Lease (Pasture), dated the same date hereof between Grantor, as landlord, and Beneficiary, as tenant, that Deed of Lease (Museum Building), dated the same date hereof, between Grantor, as landlord, and Beneficiary, as tenant, and/or that Archaeological Agreement, dated the same date hereof, between Grantor and Beneficiary.

(f) Failure by Grantor to timely release mechanic's liens, judgment liens, or such liens within fifteen (15) days of being filed.

(g) The death, declaration of incompetency, dissolution, liquidation, transfer of substantially all the assets, termination or a material adverse change since the date of the Note in the financial condition of any Obligor.

(h) If any Obligor shall file a voluntary petition in bankruptcy or shall be adjudicated insolvent or a bankrupt or shall file a petition seeking any arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or if any Obligor shall seek or consent to or acquiesce in the appointment of any Trustee, receiver or liquidator of any of them or of the Premises, or shall make any general assignment for the benefit of creditors.

(i) If a petition shall be filed against any Obligor seeking any arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation, and shall remain undismissed for an aggregate of ninety (90) days, or if any Trustee, receiver or liquidator of any Obligor or of all or any substantial part of the properties owned by any Obligor or of the Premises shall be appointed without the consent or acquiescence of such Obligor, and such appointment shall remain unvacated for an aggregate of ninety (90) days.

Page 8 of 23

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 19 of 43

(j) If any Obligor shall suffer any judgment or decree for payment of money in an amount greater than $25,000 which is not provided for in full by insurance or any writ of attachment or execution or any similar process is issued or levied against the Premises.

As used herein, the term "Obligor" shall individually and collectively refer to the Grantor and any person or entity that is primarily or secondarily liable on the Note.

5. Remedies.

(a) Upon the occurrence of an Event of Default, the Beneficiary may, at its option and without further notice (unless specifically required by applicable law), declare the Note immediately due and payable and shall have the Trustee (or other person or entity designated by the Beneficiary), take possession of the Premises and proceed to sell the Premises at public auction, for cash or credit, upon any terms the Trustee shall deem appropriate. Before such sale at public auction is made, there shall first be advertisement of the time, place and terms of sale in accordance with applicable law, and there shall be given, at least fourteen (14) days prior to such sale, written notice of the time, place and terms of sale by certified or registered mail to the then owner of the Premises at its last known address, as such owner and address appear on the records of the Beneficiary. The Beneficiary may become the purchaser of the Premises so sold and, except as is otherwise provided by Section 58.1-3340 of the Code of Virginia, 1950, as amended, no purchaser shall be required to see to the proper application of the purchase money. The proceeds of any such sale shall be applied in accordance with the provisions of Section 55-59.4 of the Code of Virginia, 1950, as amended.

(b) Upon the occurrence of an Event of Default, without limitation of Beneficiary's rights of enforcement with respect to the Premises or any part thereof in accordance with the procedures for foreclosure of real estate, Beneficiary may exercise its rights of enforcement with respect to the Collateral or any part thereof under the Virginia UCC (or under the UCC in force in any other state to the extent the same is applicable law) and in conjunction with, in addition to or in substitution for those rights and remedies: (1) Beneficiary may enter upon Grantor's premises to take possession of, assemble and collect the Collateral or, to the extent and for those items of the Collateral permitted under applicable law, to render it unusable; (2) Beneficiary may require Grantor to assemble the Collateral and make it available at a place Beneficiary designates which is mutually convenient to allow Beneficiary to take possession or dispose of the Collateral; (3) written notice mailed to Grantor as provided herein at least ten (10) days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made shall constitute reasonable notice; (4) any sale made pursuant to the provisions of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with and upon the same notice as required for the sale of the Premises under power of sale as provided in paragraph (i) above (5) in the event of a foreclosure sale, whether made by Trustee under the terms hereof, or under judgment of a court, the Collateral and the Premises may, at the option of Beneficiary, be sold as a whole; (6) it shall not be necessary that Beneficiary take possession of the Collateral or any part thereof prior to the time that any sale pursuant to the provisions of this Section is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; (7) Beneficiary may appoint or delegate

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 20 of 43

any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Beneficiary, including the sending of notices and the conduct of the sale, but in the name and on behalf of Beneficiary.

(c) Upon the occurrence of an Event of Default, the Trustee (or other person or entity designated by the Beneficiary) at the request of the Beneficiary, shall also have the absolute right to enter the Premises and take possession thereof, and Grantor agree to surrender the Premises promptly upon demand. All the Rents and Profits received by the Trustee shall be applied to a reasonable compensation to the Trustee for its services and to the expenses of operating the Premises, with any excess to be applied to payment of amounts due under the Loan Documents. The Beneficiary and the Trustee (at the direction of the Beneficiary) may grant any extension, forbearance or other indulgence as they may deem appropriate.

(d) No right, power or remedy conferred upon or reserved to the Beneficiary or the Trustee by this Deed of Trust is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

6. Trustee. The Trustee shall be under no duty to take any action hereunder except as expressly required, or to perform any act which would involve the Trustee in expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to its satisfaction. All reasonable expenses, charges, counsel fees and other disbursements incurred or made by the Trustee in and about the administration and execution of the trust hereby created, and the performance of its duties and powers hereunder, shall be secured by this Deed of Trust prior to the indebtedness evidenced by the Note, and shall bear interest at the rate prescribed in the Note. Pursuant to the provisions of Section 26-49 of the Code of Virginia, 1950, as amended, or any successor provision, the Beneficiary, with or without cause, is hereby authorized and empowered to substitute and appoint, by an instrument recorded wherever this Deed of Trust is recorded, a trustee or trustees in the place of the Trustee.

7. Miscellaneous.

(a) Successors and Assigns. All the grants, covenants, terms, provisions and conditions herein shall bind Grantor and their successors and assigns and inure to the benefit of the successors and assigns of the Trustee and the endorsees, transferees, successors and assigns of the Beneficiary.

(b) Governing Law. This Deed of Trust shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

(c) Notices. Any notice shall be conclusively deemed to have been received by a party hereto and be effective on the day on which delivered personally to such party at the address set forth below (or at such other address as such party shall specify to the other party in writing) or if sent by registered or certified United States mail, postage prepaid, on the third business day after the day on which mailed, addressed to such party at such address:

23

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 21 of 43

| If to the Beneficiary at: | Colonial Williamsburg Foundation |
| | P.O. Box 1776 |
| | Williamsburg, VA 23187 |
| | Attention: Senior Vice President for Finance and |
| | Administration |
| | |
| If to the Trustee: | Manus E. Homes |
| | c/o First American Title Insurance Company |
| | 1051 East Cary Street, Suite 1111 |
| | Richmond, Virginia 23219 |
| | |
| If to the Grantor, at: | c/o Minor Ventures |
| | 199 Fremont Street, 12th Floor |
| | San Francisco, CA 94105 |
| | |
| and to: | Steven W. Blaine, Esq. |
| | LeClairRyan |
| | 123 East Main Street |
| | Charlottesville, VA 22902 |

(d) <u>Further Assurances</u>. Grantor shall, at its cost and without expense to the Trustee or the Beneficiary, do, execute, acknowledge and deliver every such further act, deed of trust, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as the Trustee or the Beneficiary shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto the Trustee or the Beneficiary the property and rights hereby conveyed or assigned or intended now or hereafter so to be or which Grantor may be or may hereafter become bound to convey or assign to the Trustee or the Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering or recording this Deed of Trust.

(e) <u>Severability</u>. If any term, covenant or condition of this Deed of Trust, or the application thereof to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term, covenant or condition to other persons or circumstances, shall not be affected thereby, and each term, covenant or condition of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

(f) <u>Captions: Gender; Number</u>. The captions hereof are for convenience of reference only and shall neither limit nor enlarge the provisions hereof. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders. The singular shall include the plural and vice versa unless the context specifically requires otherwise.

(g) <u>Survival</u>. All representations, warranties and covenants made by Grantor pursuant to Section 1 of this Deed of Trust shall survive (a) the sale of all or a part of the Premises, (b) the assumption by another party of the Grantor's obligations hereunder, (c) the forbearance or

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 22 of 43

extension of time for payment or performance of any obligation hereunder, whether granted to Grantor or a subsequent owner of the Premises, or (d) the release of all or any part of the Premises securing such obligations or the release of any party who assumes payment of the same until such time as the Note has been paid in full.

    8. <u>Applicable Law</u>. This Deed of Trust is made under the provisions of Article 2 of Chapter 4 of Title 55 of the Code of Virginia of 1950, as amended, and except to the extent hereinabove expressly provided otherwise, shall be construed to impose and confer upon the parties hereto and the Beneficiary secured hereby all of the duties, rights and obligations prescribed in short from by Section 55-60 or 55-59.2, as follows:

    (a) Identified by Trustee's Signature;

    (b) Deferred Purchase Money:

    (c) Exemptions Waived and Subject to Call Upon Default;

    (d) Renewal, Extension or Reinstatement Permitted;

    (e) Substitution of Trustee(s) permitted for any reason whatsoever;

    (f) Any Trustee may act;

    (g) Right of Anticipation Reserved;

    (h) Insurance Required:  Full Replacement Cost of the Improvements;

    (i) Advertisement Required:  Once a day for three (3) consecutive days.

NOTICE:  THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 23 of 43

IN WITNESS WHEREOF, Grantor has caused this Deed of Trust to be executed as of the day and year first above written.

CARTER'S GROVE, LLC,
a Virginia limited liability company

By: _____
Halsey M. Minor, Manager

STATE OF _____ )
                                                          )   to Wit:
CITY/COUNTY OF _____ )

The foregoing Deed of Trust was acknowledged before me in the _____, this the ____ day of _____, 20__ by Halsey M. Minor, who is _____ personally known to me, or ____ who produced _____ as identification, as Manager of Carter's Grove, LLC a Virginia limited liability company, on its behalf.

_____
Notary Public

My commission expires: _____
My registration number is: _____

Page 13 of 22  *23*

# **EXHIBIT E**

(The Note)

MINOR DECLARATION

DEED OF TRUST NOTE

County of James City, Virginia

December 17, 2007

U.S. $10,300,000.00

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

FOR VALUE RECEIVED, CARTER'S GROVE, LLC, a Virginia limited liability company, as maker (the "Maker"), promises to pay, without offset or deduction, to the order of THE COLONIAL WILLIAMSBURG FOUNDATION ("Holder"), the principal sum of TEN MILLION THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($10,300,000.00), together with interest from the date hereof on the unpaid principal balance at the rate of six percent (6%) per annum at P. O. Box 1776, Williamsburg, Virginia 23187, or at such other place as the holder hereof may hereafter from time to time designate in writing, in lawful money of the United States of America which shall be legal tender in the payment of all debts and dues, public and private, at the time of payment.

This Note shall be payable in six consecutive semi-annual installments of principal in the amount of ONE MILLION SEVEN HUNDRED SIXTEEN THOUSAND SIX HUNDRED SIXTY-SIX AND 67/100 DOLLARS ($1,716,666.67) each, together with all accrued and unpaid interest as of the date of such principal payment, beginning July 15, 2008 and thereafter continuing on January 15, 2009, July 15, 2009, January 15, 2010, July 15, 2010, and January 15, 2011.

If not paid earlier, all outstanding principal, interest, and other applicable fees, costs and charges, if any, shall be due and payable in full on January 15, 2011 ("Maturity Date").

If Maker fails to make timely payment within fifteen (15) days of its due date, the Maker agrees to pay a late charge of five percent (5%) of any payment due. This Note may be prepaid in whole or in part at any time and from time to time without any prepayment premium or penalty.

The happening of any of the following events shall constitute an event of default ("Event of Default"): (1) the failure to make when due any payment demanded herein, whether of principal, interest, late charges or otherwise and such failure continues for a period of fifteen (15) days following the date due; (2) the failure after expiration of applicable cure periods, if any, to perform, observe or comply with any of the terms, warranties, covenants, obligations or conditions, other than the obligations to pay monies, contained in this Note or in any deed of trust (the "Security Documents") which may now be executed for the purpose of securing this Note to the Holder; (3) the termination of, or occurrence of any other event affecting the validity of this Note or the validity and priority of any of the Security Documents; (4) the intentional dissolution or termination of existence of the Maker; (5) the application by a third party for the appointment of a receiver or custodian for Maker or the property of Maker or any guarantor of this Note, or the entry of an order

for relief or the filing of an involuntary petition against Maker or any guarantor of this Note, under the provisions of any bankruptcy or insolvency law, or any assignment for the benefit of creditors against Maker or any guarantor of this Note, and any such involuntary appointment, order, bankruptcy proceeding, or assignment is not dismissed within ninety (90) days of execution, filing or commencement; or (6) the application for the appointment of a receiver or custodian for Maker or any guarantor of this Note, or the property of Maker or the filing of a voluntary petition by Maker or any guarantor of this Note, under the provisions of any bankruptcy or insolvency law, or any assignment for the benefit of creditors by Maker or any guarantor of this Note.

Upon the happening of any Event of Default, and expiration of the applicable notice and cure periods, if any, this Note shall, at the sole option of the Holder, become immediately due and payable without further notice to or demand on Maker. If payment is not made upon demand, Maker shall be deemed to be in default and Holder shall be entitled to interest on the unpaid balance of this Note at the lesser of (a) the prime rate as published periodically in the Wall Street Journal plus 4.00% per annum or (b) the maximum rate allowed by law (the "Default Rate") from the time of demand until paid in full. The remedies provided in this Note and any other agreement between Maker and Holder are cumulative and not exclusive of any other remedies provided by law.

This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement or any waiver, change, modification or discharge is sought.

Any notice shall be conclusively deemed to have been received by a party hereto and be effective on the day on which delivered personally to such party at the address set forth below (or at such other address as such party shall specify to the other party in writing) or if sent by registered or certified United States mail, postage prepaid, on the second business day after the day on which mailed, addressed to such party at such address:

(a)     If to the Maker, to:

c/o Minor Ventures
199 Fremont Street, 12th Floor
San Francisco, CA 94105

With a copy to:

Steven W. Blaine, Esq.
LeClairRyan
123 East Main Street, 8th Floor
Charlottesville, VA 22902

2

  (b)  If to the Holder, to:

    The Colonial Williamsburg Foundation
    P.O. Box 1776
    Williamsburg, VA 23187
    Attn: Senior Vice President for Finance and Administration

    With a copy to:

    Paul W. Gerhardt, Esq.
    Kaufman & Canoles, P.C.
    4801 Courthouse Street, Suite 300
    Williamsburg, VA 23188

  Maker hereby waives presentment, demand, protest, notices of dishonor and of protest, the benefits of homestead, and all other waivable exemptions, and all defenses and pleas on the ground of any extension(s) of the time of payment or of the due dates of this Note, in whole or in part, before or after maturity, with or without notice, it being further agreed by all parties that Maker will pay any collection expense, court costs, and reasonable attorney's fees which may be incurred in the collection or enforcement of this Note or any part hereof.

## JUDGMENT BY CONFESSION

  **THE UNDERSIGNED HEREBY DULY CONSTITUTE AND APPOINT GAIL M. WADDELL AS THE TRUE AND LAWFUL ATTORNEY-IN-FACT FOR THEM IN ANY OR ALL OF THEIR NAMES, PLACE AND STEAD, AND UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, TO CONFESS JUDGMENT AGAINST THEM, OR ANY OF THEM, IN THE CIRCUIT COURT FOR THE CITY OF WILLIAMSBURG, VIRGINIA, UPON THIS NOTE AND ALL AMOUNTS OWED HEREUNDER, INCLUDING ALL COSTS OF COLLECTION, REASONABLE ATTORNEYS' FEES AND COURT COSTS, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID ATTORNEY-IN-FACT AS IF DONE BY THEMSELVES, EXPRESSLY WAIVING BENEFIT OF ANY HOMESTEAD OR OTHER EXEMPTION LAWS.**

  This Note is secured by a deed of trust ("Deed of Trust"), of even date herewith, conveying certain real estate in the County of James City, Virginia, and commonly known as Carter's Grove (the "Property"), to Manus E. Holmes, as trustee (who countersigns this Note to identify it as the note described in said Deed of Trust), which Deed of Trust is intended to be recorded forthwith in the Clerk's Office of the Circuit Court of the County of James City, Virginia.

Case: 11-30554  Doc# 33-2  Filed: 03/23/11  Entered: 03/23/11 16:17:48  Page 28 of 43

WITNESS the following signature and seal thereunto duly authorized:

**CARTER'S GROVE, LLC**, a Virginia limited liability company

By: _____
Halsey M. Minor, Manager

STATE OF _____ )
)   to Wit:
CITY/COUNTY OF _____ )

The foregoing Deed of Trust Note was acknowledged before me in the _____, _____ this the ____ day of _____, 20__ by Halsey M. Minor, who is _____ personally known to me, or _____ who produced _____ as identification, as Manager of Carter's Grove, LLC, a Virginia limited liability, on its behalf.

_____
Notary Public

My commission expires: _____
My registration number is: _____

The undersigned endorser and guarantor ("Guarantor") agrees to be bound by all the terms of this Note and to absolutely and unconditionally guaranty full and timely payment of all amounts due under this Note and payment and performance under any other document or agreement securing the Note, in accordance with their respective terms, including, without limitation, payment of all unpaid principal, interest, late charges, costs and expenses of collection, including, without limitation, reasonable attorneys' fees, if incurred.

This is a guaranty of payment and not of collection, and the Guarantor expressly waives any right to require that any action be brought against the Maker or to require that resort be had to any security. This guaranty shall be a continuing guaranty, not affected or diminished by any indulgence or extension of time that may be granted by the Holder to the Maker, or, by any amendment to the Note or documents securing the same, or by Maker's discharge in bankruptcy, or the cessation from any cause whatsoever of the liability of the Maker under this Note or any documents securing the same. The Guarantor subordinates all obligations of the Maker owing to the Guarantor, whether now existing or hereafter arising, to the full and prompt payment of all obligations and indebtedness of the Maker now or hereafter owing to the holder of this Note. Following the occurrence of an Event of Default as defined herein, above, any amounts received by

4

Guarantor as payment on subordinated indebtedness shall be deemed to be held in trust for the holder of this Note by Guarantor and shall be paid over to such holder without reducing or affecting in any manner the liability of the Guarantor except to the extent of such payment. So long as any amount is due under this Note or under any other document or agreement securing this Note, the Guarantor waives, relinquishes and renounces any right of subrogation, indemnity, reimbursement or any claim whatsoever that the Guarantor may have against the Maker arising out of or in any way connected with this Guaranty of Maker's obligations hereunder; and the Guarantor hereby agrees that the Guarantor will not assert any such claim against the Maker in any proceeding, legal or equitable, including any bankruptcy, insolvency or reorganization proceeding. The provisions of this Guaranty shall inure to the benefit of, and shall be enforceable by, the holder of this Note, its successors and assigns, including any trustee in bankruptcy or debtor-in-possession.

_____
Halsey McLean Minor

STATE OF _____ )
                                                              ) to Wit:
CITY/COUNTY OF _____ )

    The foregoing Deed of Trust Note was acknowledged before me in the _____, _____, this the ____ day of _____, 20__ by Halsey McLean Minor, who is _____ personally known to me, or _____ who produced _____ as identification.

_____
Notary Public

My commission expires: _____
My registration number is: _____

COUNTERSIGNED for identification only:

_____
Manus E. Holmes, Trustee

61716314

**EXHIBIT F**

(Deed of Lease - Museum)

DEED OF LEASE
(MUSEUM BUILDING)

BETWEEN

CARTER'S GROVE, LLC,
a Virginia limited liability company

AS LANDLORD

And

THE COLONIAL WILLIAMSBURG FOUNDATION,
a Virginia non-stock corporation

AS TENANT

**DEED OF LEASE (MUSEUM BUILDING)**

**TABLE OF CONTENTS**

**DESCRIPTION**                                                                                    **PAGE**

Section 1. Term ..............................................................................................1

Section 2.  Rent ............................................................................................1

Section 3.  Utilities/Janitorial Service ...........................................................1

Section 4.  Payment of Real Property Taxes ................................................2

Section 5.  Use of Premises ..........................................................................2

Section 6.  Condition of Premises ................................................................2

Section 7.  Assignment, Subletting, and Mortgaging ...................................2

Section 8.  Insurance and Indemnity ............................................................2

Section 9.  Maintenance and Repairs ...........................................................4

Section 10.  Destruction of Premises, Condemnation ..................................4

Section 11.  Holding Over ............................................................................4

Section 12.  Access by Landlord ..................................................................4

Section 13.  Defaults .....................................................................................5

Section 14.  Subordination of Lease; Estoppel Certificate ...........................5

Section 15.  Waivers .....................................................................................6

Section 16.  Quiet Enjoyment; Status of Landlord's Title ............................6

Section 17.  No Broker ..................................................................................6

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 33 of 43

Section 18.  Force Majeure ....................................................................................................6

Section 19.  Severability ........................................................................................................6

Section 20.  Governing Law ...................................................................................................6

Section 21.  Notices ...............................................................................................................6

Section 22.  Interpretation .....................................................................................................7

Section 23.  Entire Agreement ...............................................................................................7

Section 24.  Parties ................................................................................................................7

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 34 of 43

THIS DEED OF LEASE ("Lease") dated as of the 17th day of December, 2007, by and between **CARTER'S GROVE, LLC**, a Virginia limited liability company, ("Landlord"), and **THE COLONIAL WILLIAMSBURG FOUNDATION**, a Virginia non-stock corporation ("Tenant").

### Witnesseth:

That for and in consideration of the rents and covenants hereinafter set forth, Landlord hereby leases to Tenant, and Tenant hereby rents from Landlord on the terms and conditions set forth below, the premises (the "Premises"), identified as "Winthrop Rockefeller Archaeological Museum (WRAM) *underground*" on the attached Exhibit "A2", including the structure located thereon (the "Museum Building"), together with a non-exclusive easement for the purposes of pedestrian and vehicular access, ingress and egress thereto and therefrom upon, over, through and across the driveways, accessways and sidewalks now or hereafter located on the adjoining property owned by Landlord, to and from Route 60.

Section 1. Term:

(a)  The term of this Lease shall commence on the date (the "Commencement Date") on which a fully executed original of this Lease has been delivered to Tenant.  Landlord shall deliver to Tenant full and exclusive possession of the Land and Improvements, AS-IS, on or as of the Commencement Date.  As provided in Section 2 below, rent shall commence to accrue on the Commencement Date.

(b)  The term (the "Term") of this Lease shall be for the period beginning on the Commencement Date and terminating on the last day of the sixtieth (60th) full month thereafter unless sooner terminated or extended as herein provided.  The term "Lease Year" means each successive twelve (12)-month period during the term of the Lease, except that the first Lease Year shall commence on the Commencement Date and end on the last day of the twelfth full month thereafter unless the Commencement Date is the first day of a month, in which case the first Lease Year shall end on the day preceding the first anniversary of the Commencement Date.

(c)  References in this Lease to the "expiration" of the Lease term shall include "termination" and vice-versa, unless the context otherwise clearly requires.

Section 2. Rent:  Beginning on the first day of the Term, Tenant covenants to pay a base annual rental ("Base Rent") to Landlord the amount of One Dollar ($1.00).  Tenant may, at its election, pay Base Rent for the full Term in advance.  Base Rent shall be payable in advance on the first day of the Term, without demand and without offset.  All rents and other payments due Landlord shall be made payable to Landlord and sent to c/o Minor Ventures, 199 Fremont Street, 12th Floor, San Francisco, CA 94105 or to such other place as Landlord may designate in writing to Tenant.

Section 3. Utilities/Janitorial Service:  During the entire term of this Lease, Landlord shall cause to be provided and promptly pay the bills as the same become due for all of the services, telephone and other utilities for the Premises and the Museum Building, including, but not limited to, electricity, water and sewer.  Landlord shall provide, at its own cost and expense, regular janitorial and cleaning services for the

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 35 of 43

Premises, so as to keep them in clean and orderly condition, which services and the providers thereof shall be subject to Tenant's prior approval (which approval shall not be unreasonably withheld, conditioned or delayed) and Tenant's reasonable rules and regulations to ensure the security and protection of the museum artifacts located in the Museum Building.

Section 4. Payment of Real Property Taxes:  Landlord shall pay all real property tax and assessments applicable to the Premises prior to delinquency.

Section 5. Use of Premises:  Tenant may use the Premises and Museum Building solely for storage of archaeological artifacts and related activities.  Tenant will not use the Premises for any unlawful business or purpose.  Tenant will not make the Premises open to the public.

Section 6. Condition of Premises:  No representation has been made to Tenant, or Tenant's agents, by Landlord, or Landlord's agents, concerning the condition of the Premises (and the equipment thereon, if any) or any particular use that can be made thereof.

Section 7. Assignment, Subletting, and Mortgaging:  Tenant shall not assign this Lease or sublet the Premises, in whole or in part, without Landlord's prior written consent.

Section 8. Insurance and Indemnity:

    (a) Tenant's Obligations.

        (i)  Tenant, unless released pursuant to subsection 8(c) below, will indemnify and save harmless Landlord from any and all liability, direct damage, loss, costs, expense (including reasonable attorneys' fees), cause of action, suits, claims, or judgments arising from injury to person or property on the Premises, or upon the adjoining sidewalks directly caused by operations and/or activities of Tenant, Tenant's agents, employees or contractors.

        (ii)  Tenant covenants that it will keep in force at all times during the original and all renewal terms of this Lease in companies licensed to conduct business in Virginia and rated with an AM Best rating of A or higher and in form acceptable to Landlord with respect to the Premises, without claim or reimbursement, commercial liability insurance with a minimum combined single limit of Two Million Dollars ($2,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) aggregate.  Tenant shall deliver to Landlord a certificate of insurance showing the same to be in force and effect prior to the Commencement Date and shall deliver to Landlord evidence of renewal or replacement of the policy prior to the expiration of such policy.  Such policy shall name Landlord as an additional insured and such coverage shall include requirement to provide Landlord with a minimum of Thirty (30) Days written notice if said insurance is canceled (other than nonpayment of premium which shall be Ten (10) days), nonrenewed or coverage is materially changed.  Such coverage may be provided in a blanket policy so long as the availability of coverage for occurrences at the Premises shall not be diminished in any respect. Tenant will maintain damage insurance coverage on all artifacts, inventory, equipment and personal property in the Premises.

    (b) Landlord's Obligations.

Case: 11-30554     Doc# 33-2     Filed: 03/23/11     Entered: 03/23/11 16:17:48     Page 36 of 43

(i)  Landlord, unless released pursuant to subsection 8(c) below, will indemnify and save harmless Tenant from any and all liability, direct damage, loss, costs, expense (including reasonable attorneys' fees), cause of action, suits, claims, or judgments arising from injury to person or property on or about the Premises, directly caused by operations and/or activities of Landlord, Landlord's agents, employees, contractors or invitees.

(ii)  Landlord covenants that it will keep in force at all times during the original and all renewal terms of this Lease in companies licensed to conduct business in Virginia and rated with an AM Best rating of A or higher and in form acceptable to Tenant with respect to the Premises, without claim or reimbursement, commercial liability insurance with a minimum combined single limit of Two Million Dollars ($2,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) aggregate.  Landlord shall deliver to Tenant a certificate of insurance showing the same to be in force and effect prior to the Commencement Date and shall deliver to Tenant evidence of renewal or replacement of the policy prior to the expiration of such policy.  Such policy shall name Tenant as an additional insured and such coverage shall include requirement to provide Tenant with a minimum of Thirty (30) Days written notice if said insurance is canceled (other than nonpayment of premium which shall be Ten (10) days), nonrenewed or coverage is materially changed.  Such coverage may be provided in a blanket policy so long as the availability of coverage for occurrences at the Premises shall not be diminished in any respect.

(iii)  During the term of this Lease from and after the Commencement Date, Landlord shall keep all buildings and improvements located on or erected on the Premises at any time insured for the benefit of Landlord against loss or damage by fire, and those casualties covered by so-called Special Causes of Loss policies, in a minimum amount no less than the replacement value; provided, however, that (1) Landlord's obligations to maintain any of the insurance required hereunder shall always be subject to the availability of the required insurance in the required amounts; and (2) Landlord may maintain its usual deductibles on such insurance.  All proceeds payable at any time and from time to time by any insurance company under such policies shall be payable to and shall be the absolute property of Landlord, and Tenant shall not be entitled to, and shall have no interest in, the proceeds of such insurance or any part thereof, except to the extent that such insurance proceeds relate to Landlord's obligations as set forth in this Lease, and then only in the event that Landlord fails to comply with such obligations.  Tenant shall, at Landlord's cost and expense, cooperate fully with Landlord in order to obtain the largest possible recovery and shall execute any and all consents and other instruments and take all other actions necessary or desirable in order to effectuate the same and to cause such proceeds to be paid as hereinbefore provided and Tenant shall not carry any insurance concurrent in coverage and contributing in the event of loss with any insurance required to be furnished by Landlord hereunder if the effect of such separate insurance would be to reduce the protection or the payment to be made under Landlord's insurance.

(c)  Landlord and Tenant mutually release and discharge each other (as well as the officers, directors, members, partners, agents and employees of each other) from responsibility and liability (by way of subrogation or otherwise) for loss or damage to any building, structure or other property (real or personal) of the other party, or any resulting loss of income, that is an insured loss under the terms of the insurance policy(ies) of the releasing party or that involves a fire, casualty or other risk or loss required to be insured (or self-insured) against under this Lease or could be covered by a "special form" insurance policy.  This release and discharge shall be applicable even though such loss or damage may have been caused by the negligence of the party hereby released, but shall not be applicable to the extent of any deductible under the insured's applicable policy.  Landlord and Tenant agree to include a waiver of

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 37 of 43

subrogation endorsement or provision in each of their respective casualty insurance policies or a provision permitting the insured to prospectively waive claims.

Section 9.  Maintenance and Repairs:

(a)  Landlord shall perform all repairs, maintenance and replacements that become necessary in or about the Premises and Museum Building thereon including, without limitation, plumbing systems, electrical systems, heating, ventilation and air conditioning systems, floors, doors and glass, structural components of the Museum Building.

(b)  Tenant shall, subject to Landlord reimbursement as provided below, (i) regularly inspect throughout the Term equipment to control the climate inside the Museum Building, and/or other technology required to ensure the preservation of museum artifacts, and (ii) maintain remote monitoring services to ensure the security of the Museum Building (including but not limited to fire and burglar alarms).  Landlord shall pay to Tenant, quarterly and on a time and materials expended basis, Tenant's cost to fulfill its obligations under this subsection 9(b), upon Tenant's presentation to Landlord of a quarterly invoice together with supporting documentation.  During the term of this Lease, Tenant shall keep and maintain the security box located at the Museum Building.  Upon expiration or earlier termination of this Lease, Tenant shall remove said security box.

Section 10.  Destruction of Premises, Condemnation:  If all or any portion of the Premises are damaged or destroyed by fire or other casualty covered by insurance, or condemned by public authority, whether by eminent domain or otherwise, notwithstanding any Virginia law to the contrary, then, unless Tenant and Landlord agree to the contrary, this Lease shall terminate as of the date of such destruction or condemnation, and Tenant shall be liable for the rent only to the date of such destruction or condemnation, and the entire amount of insurance proceeds and/or condemnation award for the Premises shall belong to and be payable to Landlord; provided, however, that Tenant shall have the right to make its own claim for any separate condemnation award that may be made for loss Tenant may sustain in the removal of its trade fixtures, artifacts, equipment and furnishings.  As used herein, the date of condemnation shall be the date on which title vests in the condemning authority or the date on which Landlord enters into a contract for the sale for public use upon the threat of condemnation, whichever first occurs.

Section 11.  Holding Over:  In the event that Tenant shall remain in possession of the Premises following the expiration of the term or of Tenant's right of possession, any such holdover shall be a tenancy at will and all of the terms and provisions of this Lease shall be applicable during such period.  No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Lease except as may be herein provided.  The provisions of this clause shall not be held as a waiver by Landlord of any right of re-entry, or any other right of Landlord as provided under this Lease; nor shall the receipt of said payment or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to forfeit this Lease and the term hereby granted for the period still unexpired, for any breach of any of the covenants herein or any other of Landlord's rights hereunder.

Section 12.  Access by Landlord:  Tenant shall permit Landlord, its agents, or employees reasonable access, with prior notice, to inspect the Premises and all parts thereof and to enforce and carry out any provision of this Lease and for the further purpose of showing the Premises to prospective tenants and purchasers and others.  Tenant shall permit the Landlord, by prior arrangement, to use the Premises for

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 38 of 43

lawful purposes, provided Tenant's property stored within the Museum Building is not moved, disturbed, damaged, handled, destroyed or compromised in any manner.

Section 13. Defaults:

(a) The following events shall constitute events of default under this Lease:

(i) Tenant's failure to pay any installment of rent when the same shall be due and payable and the continuance of such failure for a period of thirty (30) days after receipt by Tenant of notice in writing from Landlord specifying the nature of such failure; or

(ii) Tenant's failure to perform any of the other covenants, conditions and agreements herein contained on Tenant's part to be kept or performed and the continuance of such failure without the curing of same for a period of sixty (60) days after receipt by Tenant of notice in writing from Landlord specifying the nature of such failure, provided, however, in the event that Landlord gives notice of a default referred to in this Section 13(a)(ii) and said default is of such a nature that it cannot be cured within such sixty (60)-day period then such default shall not be deemed to continue so long as Tenant, after receiving such notice, promptly proceeds to cure the default and continues to take all steps necessary to complete the same promptly. No default shall be deemed to continue if and so long as Tenant shall be delayed in or prevented from curing the same by any cause specified in the Section of this Lease entitled "Force Majeure".

(b) Upon the occurrence of an event of default and the failure of Tenant to cure the same within the cure period specified, Landlord may give to Tenant a notice of election to end the term of this Lease upon a date specified in such notice, which date shall be not less than sixty (60) days (Saturdays, Sundays and legal holidays excluded) after the date of receipt by Tenant of such notice from Landlord, and upon the date specified in said notice, and provided such event of default has not been cured, the term and estate hereby vested in Tenant shall cease and any and all other right, title and interest of Tenant hereunder shall likewise cease without further notice or lapse of time, as fully and with like effect as if the entire term of this Lease had elapsed; provided however, nothing herein shall limit the remedies available to Landlord under the laws of the Commonwealth of Virginia.

(c) Upon any termination of the term of this Lease pursuant to Section 13(b), or at any time thereafter, Landlord may, in addition to and without prejudice to any other rights and remedies Landlord shall have at law or in equity, re-enter the Demised Premises and recover possession thereof and dispossess any or all occupants of the Demised Premises in the manner prescribed by the statute relating to summary proceedings, or similar statutes.

Section 14. Subordination of Lease; Estoppel Certificate:

(a) Subordination. Landlord hereby covenants and agrees that during the term of this Lease, if there are any mortgages or deeds of trust encumbering the Demised Premises which are not subject and subordinate to this Lease and the rights of Tenant hereunder in all respects, then Landlord shall cause such holders of said mortgage(s) or deed(s) of trust to enter into a non-disturbance agreement with Tenant in form and substance reasonably acceptable to Tenant.

Case: 11-30554   Doc# 33-2   Filed: 03/23/11   Entered: 03/23/11 16:17:48   Page 39 of 43

(b) Estoppel. Either party shall, without charge, at any time and from time to time hereafter, within fourteen (14) days after written request of the other, certify by written instrument duly executed and acknowledged to the requesting party or any other person, firm or corporation specified in such request: (i) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (ii) as to the validity and force and effect of this Lease, in accordance with its tenor as then constituted; (iii) as to the existence of any default under this Lease; (iv) as to the existence of any offsets, counterclaims or defenses thereto on the part of such other party; (v) as to the commencement and expiration dates of the term of this Lease; and (vi) as to any other matters as may reasonably be so requested. Any such certificate may be relied upon by the party requesting it and any other person, firm or corporation to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

Section 15. Waivers: Failure of Landlord or Tenant to complain of any act or omission on the part of the other party no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by Landlord or Tenant at any time, express or implied, of any breach of any provision of this Lease shall be deemed a waiver of a breach of any other provision of this Lease or a consent to any subsequent breach of the same or any other provision.

Section 16. Quiet Enjoyment; Status of Landlord's Title: Tenant, upon paying the rent and additional rent and all other sums and charges to be paid by it as herein provided, and observing and keeping all covenants, warranties, agreements and conditions of this Lease on its part to be kept, shall quietly have and enjoy the Demised Premises during the term of this Lease, without hindrance or molestation by anyone claiming by, through, or under Landlord.

Section 17. No Broker: Landlord and Tenant agree that no brokers have been involved in this lease transaction. Landlord and Tenant each agrees to hold and indemnify the other harmless from and against any losses, damages, costs or expenses (including reasonable attorneys' fee) that either party may suffer as a result of claims made or suits brought by any broker in connection with this transaction, the obligated party hereunder to be the party whose conduct gives rise to such claim. The provisions of this Section shall survive any termination of this Lease.

Section 18. Force Majeure: In the event that Landlord or Tenant shall be delayed, hindered in or prevented from the performance of any act required hereunder by reason of or resulting from an act of God, strikes, lock-outs, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, the act, failure to act or default of the other party, war or any reason beyond their control, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. Lack of funds shall not be a basis for avoidance or delay of any obligation under this Lease.

Section 19. Severability: The invalidity of any provision of this Lease as determined by a court of competent jurisdiction shall in no way affect the validity of any other provision hereof.

Section 20. Governing Law: This Lease and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the Commonwealth of Virginia.

Section 21. Notices: Every notice, approval, consent, or other communication authorized or required by this Lease shall not be effective unless same shall be in writing and delivered in person, by courier, by

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 40 of 43

reputable overnight courier guaranteeing next day delivery, or sent postage prepaid by United States registered or certified mail, return receipt requested, directed to the other party at its address shown below, or such other address as either party may designate by notice given from time to time in accordance with this Section. Such notices or other communications shall be effective when received or refused by the party to whom such notice is addressed. Any such notice or other communication which requires or anticipates a response by the receiving party within a certain period or prior to a certain date shall be deemed to have been given to the receiving party when received or refused by the party to whom such notice or other communication is addressed. The rent payable by Tenant hereunder shall be paid to Landlord at the same place where a notice to Landlord is herein required to be directed or as may be otherwise directed by Landlord. The address for notices for each party is as follows:

Landlord:

        c/o Minor Ventures
        199 Fremont Street, 12th Floor
        San Francisco, CA 94105

Tenant:

        The Colonial Williamsburg Foundation
        P. O. Box 1776
        Williamsburg, VA 23187-1776
        Attention: General Counsel

Section 22. Interpretation: Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require. The section headings used herein are for reference and convenience only, and shall not enter into the interpretation hereof. This Lease may be executed in several counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. The term "Landlord" whenever used herein shall mean only the owner at the time of Landlord's interest herein, and upon any sale or assignment of the interest of Landlord, its successors in interest and/or assigns shall, during the term of its ownership of its estate herein, be deemed to be Landlord.

Section 23. Entire Agreement: No oral statement or prior written matter shall have any force or effect. Landlord and Tenant agree that they are not relying on any representations or agreements other than those contained in this Lease. This Lease shall not be modified except by writing executed by Landlord and Tenant.

Section 24. Parties: Except as herein otherwise expressly provided, the covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, successors, successors in title, administrators and assigns.

      IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

{SIGNATURES ON FOLLOWING PAGES}

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 41 of 43

**LANDLORD:**

**CARTER'S GROVE, LLC,**

a Virginia limited liability company

By: _____ (SEAL)

Name: Halsey M. Minor

Its: Manager

Date of Execution By Landlord:

_12_ / _17_, 20_07_

*[Tenant Signature Page to Follow]*

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 42 of 43

TENANT:                           **THE COLONIAL WILLIAMSBURG FOUNDATION,**

a Virginia non-stock corporation

By: _~Robert B. Taylor~_ (SEAL)

Name: _Robert B. Taylor_

Its: _Senior Vice President for Finance and Administration_

Date of Execution By Tenant:

_December 18_, 20_07_

6171155\9

Case: 11-30554    Doc# 33-2    Filed: 03/23/11    Entered: 03/23/11 16:17:48    Page 43 of 43