1 Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
2 John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
3 150 California Street, 15th Floor
San Francisco, California 94111-4500
4 Telephone: 415/263-7000
Facsimile: 415/263-7010
5 E-mail: rpachulski@pszjlaw.com
         dgrassgreen@pszjlaw.com
6        jlucas@pszjlaw.com

7 Attorneys for Carter's Grove, LLC
Debtor and Debtor in Possession

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

9               **UNITED STATES BANKRUPTCY COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10               **SAN FRANCISCO DIVISION**

11 In re:                          | Case No.: 11-30554 (TC)

12 **CARTER'S GROVE, LLC**,         | Chapter 11

13                 Debtor.         | **DEBTOR'S DISCLOSURE
                                 | STATEMENT IN SUPPORT OF PLAN
14                                 | OF REORGANIZATION**

15                                 | **Hearing:**

16                                 | Date:  TBD
                                 | Time:  TBD
17                                 | Place: U.S. Bankruptcy Court
                                 |        235 Pine Street, 19th Floor
18                                 |        San Francisco, California
                                 | Judge: Honorable Thomas E. Carlson
19

20 **THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE
BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER
21 BANKRUPTCY CODE SECTION 1125(b) FOR USE IN THE SOLICITATION OF
ACCEPTANCES OR REJECTIONS OF THE CHAPTER 11 PLAN DESCRIBED HEREIN.
22 ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS DISCLOSURE
STATEMENT ARE NOT INTENDED TO BE, AND SHOULD NOT IN ANY WAY BE
23 CONSTRUED AS, A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE
INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT BE RELIED ON
24 FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT
THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE
25 INFORMATION.  THE DEBTOR RESERVES THE RIGHT TO AMEND OR
SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE
26 HEARING TO CONSIDER THIS DISCLOSURE STATEMENT.**

27

28

93801-002\DOCS_SF:76005.3

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND PLAN OVERVIEW ..................................................................... 1

    A.    Introduction ............................................................................................................ 1

    B.    Information Regarding the Plan .............................................................................. 2

          1.    Plan Governing Document ......................................................................... 2

          2.    Source of Information. ............................................................................... 2

          3.    Warning Regarding Federal and State Income Tax Consequences of the Plan ................................................................................................... 3

          4.    Bankruptcy Court Approval ...................................................................... 3

    C.    Voting Instructions ................................................................................................ 3

          1.    How to Vote ............................................................................................. 3

          2.    Who May Vote .......................................................................................... 4

    D.    Confirmation .......................................................................................................... 5

    E.    Disclaimers ............................................................................................................ 6

    F.    Plan Overview ........................................................................................................ 9

II. OVERVIEW OF CHAPTER 11 CASE ........................................................................... 11

    A.    Events Leading Up to the Filing of the Chapter 11 Case ..................................... 11

          1.    Description of the Debtor ......................................................................... 11

          2.    Debtor's Assets ....................................................................................... 12

          3.    Debtor's Liabilities ................................................................................. 12

          a.    CWF Deed of Trust .................................................................... 12

          b.    AVN Guarantee and Deed of Trust ............................................ 13

          c.    Sotheby's Deed of Trust ............................................................. 13

          d.    Tax Claims .................................................................................. 14

          e.    Priority Employee Claims ........................................................... 14

          f.    Trade Debt .................................................................................. 14

          4.    The Bankruptcy Filing ............................................................................ 15

          5.    The Debtor's Management ....................................................................... 15

    B.    Summary of Events During the Debtor's Chapter 11 Case .................................. 16

          1.    Postpetition Management .......................................................................... 16

          2.    CWF's Motion to Transfer Venue ........................................................... 16

          3.    Filing of Schedules, Meeting of Creditors and Bar Date ......................... 18

          4.    Retention of Professionals ....................................................................... 18

          5.    Objection to Secured Claim of CWF ...................................................... 18

          6.    Postpetition Settlement with AVN ........................................................... 19

          7.    Postpetition Discussions with Sotheby's ................................................. 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:48   Page 2 of 51

53801-002\DOCS_SF:77009.3

|  |  | 8. | Approval of the Disclosure Statement and Solicitation Procedures | 19 |
|---|---|---|---|---|
| III. | DESCRIPTION OF THE PLAN | | | 19 |
| | A. | Description Of Classes | | 20 |
| | B. | Treatment of Unclassified Claims | | 20 |
| | | 1. | Allowed Administrative Expense Claims | 21 |
| | | 2. | Allowed Priority Tax Claims | 21 |
| | C. | Treatment of Classified Claims and Interests | | 22 |
| | | 1. | Allowed Other Priority Claims | 22 |
| | | 2. | Secured Claim of CWF | 22 |
| | | 3. | Secured Claim of AVN | 23 |
| | | 4. | Secured Claim of Sotheby's | 23 |
| | | 5. | Other Secured Claims | 23 |
| | | 6. | General Unsecured Claims | 23 |
| | | 7. | Interests | 24 |
| | D. | Implementation of the Plan | | 24 |
| | | 1. | Effective Date Transactions | 24 |
| | | 2. | Revesting of Estate Assets | 24 |
| | | 3. | Continued Existence | 24 |
| | | 4. | Management of Reorganized Debtor | 25 |
| | | 5. | Continued Management of Reorganized Debtor | 26 |
| | | 6. | Retained Claims and Defenses | 26 |
| | | 7. | Distribution Procedures | 27 |
| | | 8. | Resolution of Disputed Claims | 27 |
| | | 9. | Allocation of Distributions. | 27 |
| | | 10. | Disputed Payments | 28 |
| | | 11. | Unclaimed Property. | 28 |
| | | 12. | Setoffs | 28 |
| | | 13. | No Distributions on Late-Filed Claims | 28 |
| | | 14. | Post-Effective Date Reports | 29 |
| | | 15. | Post Effective Date Employment and Compensation of Professionals | 29 |
| | | 16. | Final Decree | 29 |
| | E. | Executory Contracts | | 29 |
| | F. | Conditions to Confirmation of the Plan | | 30 |
| | G. | Effects of Confirmation | | 31 |
| | | 1. | Binding Effect | 31 |
| | | 2. | Revesting of Property Free and Clear | 31 |
| | | 3. | Discharge of Debtor | 32 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:35:48   Page 3 of 51

95801-002\DOCS_SF:77009.3

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

| | | | |
|---|---|---|---|
| | 4. | Injunction | 32 |
| | 5. | Full and Final Satisfaction. | 33 |
| | 6. | Limitation of Liability | 33 |
| **IV. OTHER PLAN PROVISIONS** | | | 34 |
| | A. | Retention of Jurisdiction | 34 |
| | B. | Exemption from Transfer Taxes | 34 |
| | C. | Post-Confirmation Date Notices | 35 |
| | D. | Certain Actions | 35 |
| **V. TAX DISCLOSURE** | | | 35 |
| | A. | Tax Implications | 35 |
| | | 1. Tax Consequences to the Reorganized Debtor | 36 |
| | | 2. Tax Consequences to Creditors | 36 |
| **VI. LIQUIDATION ANALYSIS** | | | 37 |
| **VII. RISK ANALYSIS** | | | 39 |
| **VIII. CONFIRMATION OF THE PLAN** | | | 40 |
| | A. | Confirmation Hearing | 40 |
| | B. | Requirements For Confirmation | 40 |
| | C. | Classification of Claims and Interests | 41 |
| | D. | Acceptance | 41 |
| | E. | Best Interests of Creditors | 41 |
| | F. | Feasibility | 42 |
| | G. | Cramdown | 42 |
| | H. | Alternatives to Confirmation of Plan | 43 |
| **IX. RECOMMENDATION AND CONCLUSION** | | | 44 |

<u>EXHIBITS</u>

A – Debtor's Plan of Reorganization

B – Disclosure Statement Order

C - Minor Material Assets/Obligations

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# I.

## INTRODUCTION AND PLAN OVERVIEW

**A.    Introduction**

On February 14, 2011 (the "Petition Date"), Carter's Grove, LLC (the "Debtor") commenced the above-captioned bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's case is administered in the United States Bankruptcy Court for the Northern District of California, San Francisco Division, before the Honorable Thomas E. Carlson.

This Disclosure Statement (the "Disclosure Statement") contains information with respect to the proposed plan of reorganization (the "Plan") proposed by the Debtor. Except as otherwise provided herein, capitalized terms used in this Disclosure Statement will have the meanings set forth in the Plan, which is attached hereto as **Exhibit A**.

Pursuant to section 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan. **The Debtor is solvent and the Plan provides for all Allowed Claims to be paid in full**. The Plan also provides that if the Debtor defaults on any Plan obligations, the Debtor's property will be sold pursuant to the Orderly Sale Process. The Debtor has examined various alternatives and, based on information contained in this Disclosure Statement, has proposed the Plan because it provides for full recovery to creditors while, at the same time, preserving the substantial equity in the Debtor's main asset for the Interest Holder.

As discussed herein, the Debtor was formed for the sole purpose of holding title to Carter's Grove, an historic 475 acre property in Virginia. The Debtor does not maintain or carry on any business or operations at Carter's Grove. As a result, the Debtor does not have any income but is instead entirely dependent upon Halsey M. Minor ("Mr. Minor"), the controlling principal of the Debtor, to pay debt service and to fund day-to-day expenses and capital expenditures. Under the Plan, Mr. Minor will fund the continued maintenance and operating expenses of the Debtor and the payments to Creditors pursuant to the terms and conditions set forth in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:37:25    Page 5 of 51

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The Disclosure Statement describes the Plan and contains information concerning, among other matters, the history, management, and assets and liabilities of the Debtor, and the proposed distribution to Creditors. The Debtor requests that you carefully review the contents of this Disclosure Statement and the Plan (including the exhibits to each) before making a decision to accept or reject the Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor.

Your vote on the Plan is important. In order for the Plan to be accepted by a Class of Claims, the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims in such Class who vote on the Plan must vote for acceptance. The Debtor is soliciting the votes of members of Class 2 (Secured Claim of CWF), Class 3 (Secured Claim of AVN), Class 4 (Secured Claim of Sotheby's) and Class 5 (Other Secured Claims).

Non-acceptance of the Plan may lead to a liquidation under chapter 7 of the Bankruptcy Code, or to the confirmation of another plan. These alternatives may not provide for a distribution of as much value to holders of Allowed Claims as the Plan. Accordingly, the Debtor urges you to accept the Plan by completing and returning the enclosed ballot no later than 4:00 p.m. (Pacific) [DATE], 2011.

**B.** **Information Regarding the Plan**

**1. Plan Governing Document.**

Although the Debtor believes that this Disclosure Statement accurately describes the Plan, all summaries of the Plan contained in this Disclosure Statement are qualified by the Plan itself and the documents described therein which are controlling.

**2. Source of Information.**

Factual information, including all financial information, contained in this Disclosure Statement has been provided by the Debtor or Mr. Minor or has been obtained from the Debtor's records, except where otherwise specifically noted. Neither the Debtor nor Mr. Minor represents or warrants that the information contained in this Disclosure Statement is free from any inaccuracy. The Debtor and, to the extent applicable, Mr. Minor, have attempted to present the information accurately and fairly, and the Debtor and Mr. Minor believe that the information is substantially

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:21   Page 6 of 51
53801-002\DOCS_SF:77009.3                                    DEBTOR'S DISCLOSURE STATEMENT
                                                IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

accurate.  The assumptions underlying the projections contained in this Disclosure Statement concerning the sources and amounts of payments to Creditors represent the best estimate of the Debtor and Mr. Minor as to what they expect will happen.  Because these are only assumptions about or predictions of future events, many of which are beyond the Debtor's or Mr. Minor's control, there can be no assurances that the assumptions will in fact materialize or that the projected realizations will in fact be met.  Except as otherwise provided herein, this Disclosure Statement will not reflect any events which occurred subsequent to the date that the Debtor submitted the Disclosure Statement to the Bankruptcy Court for approval.

### 3.  Warning Regarding Federal and State Income Tax Consequences of the Plan

The tax consequences of the Plan will vary based on the individual circumstances of each holder of a Claim.  Accordingly, each Creditor is strongly urged to consult with its own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

### 4.  Bankruptcy Court Approval

Following a hearing held on [DATE], 2011, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor to make an informed judgment about the Plan.  Under section 1125 of the Bankruptcy Code, this approval enabled the Debtor to send you this Disclosure Statement and solicit your acceptance of the Plan.  The Bankruptcy Court has not, however, passed any judgment on the Plan itself, nor conducted a detailed investigation into the contents of this Disclosure Statement.

### C.  Voting Instructions

### 1.  How to Vote

A ballot is enclosed herewith for Creditors to use in voting on the Plan.  To vote on the Plan, indicate on the enclosed ballot that you accept or you reject the Plan and sign your name and mail the ballot in the envelope provided for this purpose.

**In order to be counted, ballots must be completed, signed and returned so that they are received no later than 4:00 P.M. prevailing Pacific Time on [DATE], 2011 at the following address:**

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:47   Page 7 of 51
53801-002\DOCS_SF:77009.3

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: (415) 263-7000
Attn: John W. Lucas and Patricia Jeffries

**Do not send your ballot via facsimile or e-mail.**

If your ballot is not properly completed, signed and returned as described, it will not be counted. If your ballot is damaged or lost, you may request a replacement by sending a written request to the above address.

**2.** <u>**Who May Vote**</u>

The Plan divides the Claims of Creditors into six (6) Classes. There is one (1) Class of Interests.

Classes of Creditors that are impaired by the Plan are entitled to vote. Each holder of an Allowed Claim in an impaired Class that will receive distributions under the Plan on account of such Claims may vote to accept or reject the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the claims or interests of the Class are modified, other than by curing defaults and reinstating maturities.

Class 2 (Secured Claim of CWF), Class 3 (Secured Claim of AVN), Class 4 (Secured Claim of Sotheby's), and Class 5 (Other Secured Claims) are impaired under the Plan and are entitled to vote thereon. Class 1 (Other Priority Claims), Class 6 (Unsecured Claims), and Class 7 (Interests) are unimpaired under the Plan and are not entitled to vote thereon. Accordingly, the Debtor is soliciting acceptances only from the members of Class 2, Class 3, Class 4, and Class 5.[1]

In determining acceptances of the Plan, the vote of a Creditor will only be counted if submitted by a Creditor whose Claim is an Allowed Claim. Generally speaking, a Creditor holds an Allowed Claim if such Claim is duly scheduled by the Debtor as other than disputed, contingent or unliquidated, or the Creditor has timely filed with the Bankruptcy Court a proof of Claim which has not been objected to or disallowed prior to ninety (90) days after the Effective Date of the Plan. The Ballot form which you received does <u>not</u> constitute a proof of Claim.

---

[1] On the date hereof, the Bar Date has not yet passed. As a result, the Debtor is not certain whether there will be Claims asserted in Class 5.

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:17   Page 8 of 51

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  **D.**     <u>**Confirmation**</u>

2      "Confirmation" is the technical phrase for the Bankruptcy Court's approval of a plan of

3 reorganization. At the Confirmation Hearing, to confirm the Plan, the Debtor must demonstrate

4 that it has met the requirements of section 1129 of the Bankruptcy Code. If the Bankruptcy Court

5 determines that all of the requirements of section 1129 have been satisfied, the Bankruptcy Court

6 will enter an order confirming the Plan. The Debtor believes that the Plan satisfies all the statutory

7 requirements of chapter 11 of the Bankruptcy Code for Confirmation of the Plan.

8      Voting is tabulated by class. As discussed above, a class of creditors has accepted a plan of

9 reorganization if the plan has been accepted by two-thirds (2/3) in dollar amount and more than

10 one-half (1/2) in number of creditors holding allowed claims in that class who actually vote to

11 accept or reject such plan.

12      Even if a class of creditors or interests votes against a plan of reorganization, that plan may

13 nevertheless be confirmed by the Bankruptcy Court, notwithstanding the rejection of the Plan by

14 that class, so long as certain statutory requirements are met by the plan. This procedure is called a

15 "cram down." The Debtor will seek confirmation of the Plan through a cram down if either Class

16 2, Class 3, Class 4 or Class 5 rejects the Plan.

17      The Bankruptcy Court has set [DATE], 2011, as the hearing date to determine whether the

18 Plan has been accepted by the requisite number of Creditors and whether the other requirements for

19 Confirmation of the Plan have been satisfied. This hearing may be continued from time to time and

20 day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the

21 Confirmation Order. Any objections to Confirmation of the Plan must be in writing and must be

22 filed with the Clerk of the Bankruptcy Court and served on the parties set forth below on or before

23 the date set forth in the Notice of Confirmation Hearing sent to you with this Disclosure Statement

24 and the Plan. Counsel on whom objections must be served are:

25

26

27

28

Case: 11-30554  Doc# 61  Filed: 06/14/11  Entered: 06/14/11 17:37:21  Page 9 of 51

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(1) Counsel for the Debtor:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Attn: Debra I. Grassgreen and John W. Lucas

and

(2) The Office of the United States Trustee

Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Attn: Minnie Loo, Esq.

**E.     Disclaimers**

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN. PLEASE READ THIS DOCUMENT WITH CARE. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. *SEE* 11 U.S.C. § 1125(a).

FOR THE CONVENIENCE OF CREDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY. ***IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING***.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE. EACH CREDITOR OR INTEREST

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  HOLDER SHOULD CONSULT HIS OR HER OWN LEGAL COUNSEL AND ACCOUNTANT

2  AS TO LEGAL, TAX AND OTHER MATTERS CONCERNING HIS OR HER CLAIM.

3  NO REPRESENTATIONS CONCERNING THE DEBTOR'S FINANCIAL CONDITION

4  OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE BANKRUPTCY COURT OR

5  DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY

6  REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT

7  ARE OTHER THAN AS CONTAINED IN OR INCLUDED WITH THIS DISCLOSURE

8  STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR

9  DECISION.

10  CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE

11  STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES

12  AND ASSUMPTIONS.  THE WORDS "ANTICIPATE," "BELIEVE," "ESTIMATE," "WILL,"

13  "INTEND," AND "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY FORWARD-

14  LOOKING STATEMENTS.  ALTHOUGH THE DEBTOR BELIEVES THAT ITS ESTIMATES

15  AND ASSUMPTIONS REFLECTED IN THOSE FORWARD-LOOKING STATEMENTS ARE

16  REASONABLE, THE DEBTOR CAN GIVE NO ASSURANCE THAT SUCH ESTIMATES

17  AND ASSUMPTIONS WILL BE REALIZED.  FORWARD-LOOKING STATEMENTS ARE

18  BASED ON ASSUMPTIONS THAT ARE UNAVOIDABLY AND INHERENTLY IMPRECISE.

19  ACTUAL RESULTS, PERFORMANCE, OR ACHIEVEMENTS WILL LIKELY DIFFER

20  MATERIALLY FROM THOSE CONTEMPLATED, EXPRESSED, OR IMPLIED BY THE

21  FORWARD-LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.

22  THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE OR REVISE ANY

23  FORWARD-LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT,

24  WHETHER AS A RESULT OF NEW DEVELOPMENTS OR OTHERWISE.

25  THE FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT

26  AND IN ANY EXHIBITS TO THE DISCLOSURE STATEMENT, UNLESS OTHERWISE

27  INDICATED, IS UNAUDITED.  REASONABLE EFFORT HAS BEEN MADE, HOWEVER, TO

28  ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    ALL PROFESSIONALS FOR THE DEBTOR HAVE RELIED UPON INFORMATION

2    PROVIDED BY THE DEBTOR IN CONNECTION WITH PREPARATION OF THIS

3    DISCLOSURE STATEMENT.  ALTHOUGH PROFESSIONALS FOR THE DEBTOR HAVE

4    PERFORMED CERTAIN LIMITED DUE DILIGENCE IN CONNECTION WITH THE

5    PREPARATION OF THIS DISCLOSURE STATEMENT, THE PROFESSIONALS HAVE NOT

6    INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED IN OR

7    ATTACHED TO THE DISCLOSURE STATEMENT.

8    UNLESS YOUR CLAIM IS ALLOWED, IN WHOLE OR IN PART, UNDER THE

9    PLAN, THE ABILITY OF THE DEBTOR AND OTHER CREDITORS OR PARTIES IN

10   INTEREST TO OBJECT TO YOUR CLAIM IN ACCORDANCE WITH THE PLAN AND

11   APPLICABLE LAW IS BEING PRESERVED AND NOT WAIVED UNDER THE PLAN.

12   MOREOVER, ANY RIGHTS OF ACTION AGAINST YOU IN FAVOR OF THE DEBTOR ARE

13   BEING PRESERVED UNDER THE PLAN.  THE DEBTOR IS ATTEMPTING TO PROVIDE

14   YOU ADEQUATE INFORMATION TO MAKE AN INFORMED JUDGMENT AS TO

15   WHETHER TO ACCEPT OR REJECT THE PLAN.  THE DEBTOR DOES NOT BELIEVE

16   THAT THIS RESERVATION OF RIGHTS SHOULD AFFECT YOUR DECISION ON HOW TO

17   VOTE ON THE PLAN.  ALTHOUGH THE DEBTOR BELIEVES THAT THE

18   CONFIRMATION OF THE PLAN IS IN THE INTERESTS OF CREDITORS OF THE DEBTOR,

19   THIS ADVISORY IS PROVIDED TO ENSURE THAT YOU DO NOT ASSUME, BY THE

20   DEBTOR'S SOLICITATION OF YOUR VOTE, BY THE ESTIMATES CONTAINED IN THE

21   DISCLOSURE STATEMENT, OR BY ANY OTHER PROVISIONS OF THE PLAN OR

22   DISCLOSURE STATEMENT (OTHER THAN AN EXPRESS PROVISION OF THE PLAN

23   ALLOWING YOUR CLAIM OR WAIVING SPECIFIED RIGHTS OF ACTION AGAINST

24   YOU) THAT THE DEBTOR, THE REORGANIZED DEBTOR, OTHER CREDITORS, OR

25   OTHER PARTIES IN INTEREST WILL NOT OBJECT TO YOUR CLAIM OR THAT THE

26   DEBTOR WILL NOT PURSUE ANY RIGHT OF ACTION AGAINST YOU.  INSTEAD, FOR

27   THE PURPOSE OF DECIDING HOW TO VOTE ON THE PLAN, IF YOUR CLAIM IS NOT

28   EXPRESSLY ALLOWED UNDER THE PLAN, YOU SHOULD ASSUME THAT THE

DEBTOR, THE REORGANIZED DEBTOR, OR THEIR RESPECTIVE SUCCESSORS OR REPRESENTATIVES WILL (A) OBJECT TO YOUR CLAIM AND (B) ASSERT ALL SETOFFS, RECOUPMENTS, RIGHTS TO SUBORDINATE, OR AFFIRMATIVE CLAIMS THAT THE DEBTOR, THE REORGANIZED DEBTOR, OR THEIR RESPECTIVE SUCCESSORS MAY HAVE WITH RESPECT TO YOU AND/OR YOUR CLAIMS AGAINST THE DEBTOR.

**F.    Plan Overview**

The Plan provides that all Allowed Claims will be paid in full (unless otherwise agreed to by the Creditor), either on the Effective Date or over time with interest.  The Minor Trust, the sole member of the Debtor, will retain its Interests in the Debtor.  The Debtor obtained a recent appraisal that estimates the fair market value of its sole asset – Carter's Grove – at $15.8 million, which is substantially more than the approximate $8.6 million to $12.5 million[2] in claims asserted against the Debtor.  The Plan allows Creditors to be made whole, while preserving the equity in Carter's Grove.  The following chart briefly summarizes the treatment of Creditors and Interest Holders under the Plan.  Amounts listed below are estimated.

| Class No. | Claims | Estimate of Claim Amounts[3] and Recoveries | Treatment |
|---|---|---|---|
| N/A | Allowed Administrative Claims | $500,000  100% | Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, will be paid in full by a one time Cash payment by the Reorganized Debtor on the latest of: (a) the Effective Date; (b) such date as may be fixed by the Bankruptcy Court; (c) the fourteenth day after such Claim is Allowed; and (d) such date as the holder of such Claim and the Reorganized Debtor may agree. |
| N/A | Allowed Priority Tax Claims | $22,064  100% | At the Debtor's option, either a one time Cash payment on the Effective Date or periodic cash payments plus statutory interest. |
| 1 | Allowed Other Priority Claims | $0.00  100% | At the Debtor's option, either a one time Cash payment on the Effective Date or periodic cash payments plus interest. |

[2] The Claims of AVN are liquidated in the approximate amount of $1.1 million and contingent in the amount of $5 million.  So long as Mr. Minor performs under the AVN Lease Documents, the $5 million contingent claim will not be enforceable against the Debtor.
[3] As discussed herein, the general claims bar date has not yet passed as of the filing of this Disclosure Statement.  Thus, the Debtor is still in the process of reviewing proofs of claim.  The total amount of Allowed Claims for a particular category or Class may differ substantially from the estimated amounts set forth herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| Class No. | Claims | Estimate of Claim Amounts[3] and Recoveries | Treatment |
|---|---|---|---|
| 2 | Allowed Secured Claim of CWF | $4,000,000[4]<br><br>100% | On the later of the Effective or as soon as the Secured Claim of CWF is Allowed, the holder of an Allowed Class 2 Claim will receive the New CWF Note pursuant to which the holder will receive: (i) quarterly interest payments at the rate of 3.25% per annum subject to a default rate of 5.25%; (ii) payment of all outstanding interest and principal on or before three years after the Effective Date. All payment obligations are subject to a 15 day window to cure any Plan Default. If any Plan Default is not cured within this 15 day window, the Debtor will be required to sell Carter's Grove pursuant to the Orderly Sale Process. |
| 3 | Secured Claim of AVN | $1,100,000[5]<br><br>100% | On the Effective Date, the holder of an Allowed Class 3 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder <u>except</u> that in the event of a Plan Default, in addition to the remedies AVN may have against Minor, the sole remedy on account of the AVN Guarantee and the AVN Deed of Trust will be the Orderly Sale Process, rather than foreclosure. |
| 4 | Secured Claim of Sotheby's | $3,400,000<br><br>100% | On the Effective Date, the holder of an Allowed Class 4 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder except that (i) in the event of a Plan Default, in addition to any remedies Sotheby's has against Minor, the sole remedy against the Reorganized Debtor will be the Orderly Sale Process, rather than foreclosure and (ii) section 2(a) of the Sotheby's Agreement shall be amended to replace December 31, 2011 with March 31, 2012. |
| 5 | Other Secured Claims | None[6]<br><br>100% | On or prior to the Effective Date, the Debtor will select whether to (i) abandon or surrender the property securing such Claim; (ii) pay Cash equal to the amount of such Claim; or (iii) leave the rights of the holder of such Claim unimpaired. |
| 6 | Unsecured Claims | $62,000<br><br>100% | Except to the extent that the holder of an Allowed Unsecured Claim accepts, or has accepted, less favorable treatment, each holder of an Allowed Unsecured Claim will receive, in exchange for and in full and final satisfaction of such Claim, quarterly Cash payments over one (1) year plus simple interest at the Federal Judgment Rate per annum that in the aggregate will equal 100% of the amount of its Allowed Claim as of the Effective Date. |
| 7 | Interests | 100% | The legal, equitable, and contractual rights of the holder of the Interests shall be left unaltered. |

[4] Generally in line with the Debtor's estimate, CWF filed a proof of claim (Claim No. 2) in the amount of $4.078 million. However, the Secured Claim of CWF is subject to objection in its entirety by the Debtor. As a result, the Allowed Claim maybe substantially less than the amount set forth in CWF's proof of claim.

[5] The amount of the Secured Claim of AVN represents the remaining payments due under the AVN Lease Documents. However, AVN has a contingent claim for $5,000,000 pursuant to AVN Lease Documents.

[6] The Debtor is unaware of any Class 5 Claims. However, the Bar Date has not yet passed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# II.

## OVERVIEW OF CHAPTER 11 CASE

This section of the Disclosure Statement discusses the significant events in the Chapter 11 Case to date, including events leading up to the commencement of this case. Copies of all relevant court papers are on file with the Bankruptcy Court.

**A.      Events Leading Up to the Filing of the Chapter 11 Case**

**1.   Description of the Debtor**

As discussed above, Carter's Grove is located in the town of Grove, James City County, Virginia, located along Route 60, eight miles east from historic Williamsburg. The area includes a number of estate properties dating to the 18th and 19th centuries. These properties, like the Carter's Grove property, were customarily located on navigable waterways which were originally used as transportation routes. Prior to the Debtor's acquisition of Carter's Grove, CWF owned and operated Carter's Grove as a museum for over 20-years and, in 2002, closed the property to the public.

Subsequently, on or about October 22, 2007, the Minor Trust and CWF entered a contract for the purchase and sale of Carter's Grove. The Minor Trust purchased Carter's Grove from CWF for an initial purchase price of $15,300,000 (the "Sale"), subject to the terms of the CWF Note and secured by the CWF Deed of Trust in favor of CWF. The agreed purchase price was payable as $5,000,000 cash and the CWF Note in the amount of $10,300,000 payable in six consecutive semi-annual installments of $1,766,666.67 beginning on July 15, 2008 through January 15, 2011.

The Minor Trust is the named purchaser of Carter's Grove. However, the purchase agreement was assigned to the Debtor with the consent of CWF at or about the time of the Sale. Accordingly, the Debtor, a Virginia limited liability company, was formed on December 10, 2007 to hold title to Carter's Grove. The sole member of the Debtor is the Minor Trust. Mr. Minor is the trustee of the Minor Trust, the designated manager of the Debtor, and the sole beneficiary of the Minor Trust.

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:30:25
SF:77669.2   DOCS_SF:77669.2

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2. Debtor's Assets**

The Debtor's primary asset is Carter's Grove. Subject to Debtor's analysis of potential causes of action and claims other than those asserted in the CWF Adversary Proceeding, the Debtor has no other assets of material value.

In May 2011, after the stabilization of the real estate market, the Debtor obtained an appraisal (the "Appraisal") of Carter's Grove, which shows, based on the assumptions and conditions set forth therein, that Carter's Grove is worth no less than $15,800,000. In preparing the Appraisal, sales, cost, and demographic information were gathered, confirmed, and analyzed. Local sources of information included, but were not limited to, area real estate brokers, property managers, property owners, and government officials. Published sources of information included various government and investment publications.

The Debtor believes the value of Carter's Grove is no less than $15,800,000 million provided that the property is marketed for a sufficient amount of time, which might be up to twelve (12) months. Accordingly, the Debtor believes that the fair market value of Carter's Grove substantial exceeds the $8.6 million to $12.5 million in Claims asserted against the Debtor. Notably, there is an equity cushion of 300% with respect to the Secured Claim of CWF and substantial equity with respect to the Secured Claims of both AVN and Sotheby's.

**3. Debtor's Liabilities**

a. CWF Deed of Trust

In December 2007, the Debtor (through Mr. Minor) executed the CWF Note for the benefit of CWF promising to pay $10,300,000 in exchange for the purchase of Carter's Grove. The CWF Note requires the Debtor to make six installment payments beginning July 15, 2008, each in the amount of $1,766,666.67. Subsequent installment payments were due every six months thereafter until the CWF Note was paid in full. The Debtor's repayment obligations under the CWF Note are secured by the CWF Deed of Trust, which provides CWF with a first priority interest in the Debtor's property and the personal guarantee of Mr. Minor.

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:32:05   Page 16 of
SF:77007.2                                                                        51
DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    As of the Petition Date, the Debtor had not made the last two installment payments due

2    under the CWF Note (July 15, 2010 and January 15, 2011).  Accordingly, CWF filed a secured

3    proof of claim against the Debtor's estate in the approximate amount of $4.078 million.

4           b.     AVN Guarantee and Deed of Trust

5    The Minor Trust for the benefit of Mr. Minor entered into the AVN Lease, dated May 22,

6    2005, with AVN for a certain aircraft.  In or around February 2010, Mr. Minor and AVN

7    restructured the obligations under the AVN Lease by entering into various forbearance,

8    modification, and guaranty agreements.  To secure the payment obligations under these agreements,

9    Carter's Grove guaranteed the obligations to AVN in the maximum amount of $5,000,000 and

10   executed the AVN Deed of Trust, dated February 1, 2010, in favor of AVN having a limitation of

11   liability of $5,000,000.  It should be noted that AVN agreed that the $5,000,000 would only be due

12   and owing if the Minor Trust or Mr. Minor failed to pay the remaining payments due under the

13   restructured AVN Lease Documents.  The Minor Trust and Mr. Minor will continue to make all

14   payments due under the AVN Lease Documents.  Accordingly, on the date hereof, the Debtor

15   estimates that the Secured Claim of AVN is approximately $1.1 million, inasmuch as the

16   $5,000,000 is contingent.

17          c.     Sotheby's Deed of Trust

18   Prior to the Petition Date, Sotheby's obtained a judgment against Mr. Minor arising from

19   his purchase of certain art from Sotheby's.  Mr. Minor satisfied the initial judgment through a

20   payment of over $6 million to Sotheby's and appealed that judgment.  Thereafter, in November

21   2010, Sotheby's obtained an additional judgment for attorneys' fees (the "Fee Judgment").

22   Sotheby's subsequently executed on the Fee Judgment and obtained liens and restraining notices

23   against various art, furniture, and design property belonging to Mr. Minor (the "Personal Property")

24   having an approximate value in excess of $6-$8 million.  Sotheby's also levied upon cash and

25   receivables owing to Mr. Minor (approximately $1.3 million) that was generated from the sale of

26   certain art belonging to Mr. Minor.  As a result, from early November 2010 through the Petition

27   Date, Mr. Minor's assets were completely frozen.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  On or around February 14, 2011, Mr. Minor and Sotheby's entered into the Sotheby's

2  Settlement Agreement regarding the Fee Judgment and the appeal of the prior judgment.  In

3  connection therewith, Mr. Minor agreed to (i) withdraw the appeal, (ii) permit Sotheby's to sell the

4  Personal Property and use the sale proceeds to pay secured tax claims and to satisfy the $3.4

5  million Fee Judgment, and (iii) cause the Debtor to execute the Sotheby's Deed of Trust in favor of

6  Sotheby's to secure Mr. Minor's payment of the Fee Judgment.

7  Notably, as part of the Sotheby's Settlement Agreement, the State of California Franchise

8  Tax Board and Mr. Minor agreed to a repayment plan regarding states taxes.  This agreement

9  provides for the necessary consent State of California Franchise Tax Board of the Personal

10  Property.  In addition, Mr. Minor is currently in discussions with the Internal Revenue Service

11  regarding the payment of federal taxes and obtaining its consent to the sale of the Personal

12  Property.

13  d.    Tax Claims

14  James City County has a lien against Carter's Grove arising from the Debtor's obligation to

15  pay certain property taxes.  The property taxes were assessed on June 5, 2010 and December 6,

16  2010.  As of the Petition Date, the Debtor estimates that James City County is owed approximately

17  $22,000.

18  e.    Priority Employee Claims

19  The Debtor has identified in its Schedules less than $15,000 in potential Priority Employee

20  Claims owed to three individuals.  However, since the Petition Date, Mr. Minor has paid these

21  clams with his personal funds.  Accordingly, on the date hereof, there are no prepetition Priority

22  Employee Claims.

23  f.    Trade Debt

24  Of the eleven general unsecured creditors listed in the Debtor's Schedules,[7] seven are

25  utilities, two are insurance related, and two relate to services provided to Carter's Grove.  In the

26  aggregate, the Debtor has scheduled trade claims totaling approximately $62,000.

27

28

---

[7] As discussed herein, the Debtor expects to amend its Schedules.

Case 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:39:12    Page 18 of
DOCS_SF:77607.5    DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### 4.  **The Bankruptcy Filing**

The commencement of the Debtor's chapter 11 case was precipitated by Mr. Minor's liquidity issues.  As noted, the Debtor does not operate or generate any revenue.  All of the expenses of maintaining and preserving Carter's Grove have at all times been funded by Mr. Minor.

As discussed above in connection with the Secured Claim of Sotheby's, Mr. Minor's liquid assets were frozen from early November 2010 through the Petition Date.  Mr. Minor has also been embroiled in costly and protracted litigation for the past several years, and his ability to monetize assets was adversely impacted by the overall economic downturn in the U.S.

As a result, Mr. Minor could not fund payments to CWF.  Consequently, on or about January 26, 2011, CWF quickly initiated foreclosure proceedings, and the foreclosure sale was noticed on an extremely short timetable (approximately three weeks) for February 15, 2011.  The proposed foreclosure sale was scheduled to take place at the circuit court located in Williamsburg, Virginia with little, if any, marketing or exposure of Carter's Grove to prospective buyers.

Given the substantial amount of equity left in the Debtor's property, on February 14, 2011, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor's case was filed prior to the scheduled foreclosure sale in order to preserve the Debtor's substantial equity in Carter's Grove.  Since the Petition Date, the Debtor continues to manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case.  Also since the Petition Date, Mr. Minor has funded nearly $100,000 in operating insurance, maintenance expenses, and employee wages.

### 5.  **The Debtor's Management**

Mr. Minor has at all relevant times been overseeing the preservation and management of Carter's Grove and will continue to do so after the Effective Date.  Mr. Minor is the trustee of the Minor Trust, the sole member of the Debtor.  Mr. Minor is a successful entrepreneur, having founded CNET, a media company, and various other successful technology businesses.  Mr. Minor ran CNET for approximately eight years, during which time it became one of the Internet's first companies to achieve profitability.  CNET was later purchased by CBS in 2008 and is now CBS

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:39:12   Page 19 of
51
SF:77607.2

Interactive. Mr. Minor is an avid preservationist, and is managing Carter's Grove as a personal passion; he is not paid by the Debtor for his services.

**B.    Summary of Events During the Debtor's Chapter 11 Case**

The following is a summary of important events that have taken place since the Petition Date.

**1.    Postpetition Management**

Since the Petition Date, the Debtor's property has been under the direct supervision of Mr. Minor and certain of his employees, two of whom live on the Carter's Grove premises. In this regard, the Debtor, through Mr. Minor, has been attending to the day-to-day management and welfare of the Debtor's property and has been funding ongoing operating expenses. These expenses include: (i) property insurance in the amount of $41,000, (ii) employee wages in the amount of $31,000, (iii) various utility expenses necessary to maintain interior of mansion located on Carter's Grove in the amount of $11,000.

**2.    CWF's Motion to Transfer Venue**

On March 3, 2011, CWF filed the Venue Transfer Motion seeking an order transferring the venue of the Debtor's Chapter 11 Case, pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(a), to the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division, for the alleged convenience of the parties and in the interest of justice. CWF argued that the case should be transferred because allegedly (a) the Debtor is a Virginia entity, (b) its sole asset, most of its creditors, and the likely witnesses are located in Virginia, (c) the major issues in the case will involve experts in Virginia and the application of Virginia law, (d) unsecured creditors will be deprived, as a practical matter, of the opportunity to participate in the case if venue was retained in the Northern District of California and before the Bankruptcy Court, and (e) the Debtor has waived any objection based on inconvenience through its actions in connection with Carter's Grove and its manager's initiation of a bankruptcy case for another entity in the Bankruptcy Court for the Western District of Virginia.

On March 23, 2011, the Debtor filed the Venue Objection to the Venue Transfer Motion, arguing that said motion should be denied because, *inter alia*, (a) the principal place of business –

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:35:01   Page 20 of
51
SF:77667.5   DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the nerve center – for the Debtor is clearly located in San Francisco, and thus, the Debtor is entitled to select the Northern District of California as the venue for the Debtor's case since it is proper; (b) nothing in the Venue Transfer Motion is sufficient to outweigh that deference to a debtor's venue selection mandated by Congress; (c) approximately 67% in both number and amount of the claims asserted against the Debtor are held by creditors located in, or represented by, counsel in California and outside of Virginia and support venue in the Northern District of California; and (d) contrary to CWF's insinuations, bankruptcy courts, including the Bankruptcy Court currently administering the Debtor's case, regularly administer assets outside their district and regularly decide issues that are based on substantive laws of other states.

As noted above, on March 23, 2011, Sotheby's also filed an objection to the Venue Transfer Motion. On March 28, 2011, AVN filed a joinder to the Debtor's Venue Objection. On March 28, 2011, the Debtor filed a Status Conference Statement. On March 29, 2011, CWF filed a reply in support of the Venue Transfer Motion.

On March 30, 2011, the Court entered a tentative ruling in which the Court reserved its decision on the Venue Transfer Motion stating:

> Whether venue should be transferred depends upon what activities will be important to the administration of the case. If Debtor objects to [CWF]'s claim on the basis of alleged misrepresentation re [Carter's Grove], or if Debtor seeks to challenge conservation easements against the Property, those matters should be heard in Virginia and venue should be transferred. If Debtor's principal merely seeks time to pay Debtor's obligations in full, administration can be handled effectively in the present venue. The court is inclined to set a prompt deadline for filing objections to claims, and to continue the matter to see what claim objections are filed.

On April 1, 2011, an initial hearing on the Venue Transfer Motion was held, at which time the parties informed the Court of their agreement relating to the Venue Transfer motion. Specifically, the Debtor and CWF agreed, as amended, to the following, among other things: (a) the parties will engage in an informal Bankruptcy Rule 2004 process whereby the Debtor can obtain information from CWF to determine whether the Debtor has grounds to prosecute claims against CWF or defenses to CWF's claims based on, *inter alia*, alleged misrepresentations or incomplete disclosures at the time of the sale of Debtor's property from CWF to the Debtor; (b) CWF will file

its proofs of claim against the Debtor no later than April 12, 2011; (c) CWF will produce persons for depositions during the week of May 23, 2011; (d) the Debtor will file an objection against CWF's claims on or before June 10, 2011; (e) the Debtor must file its plan of reorganization and supporting disclosure statement on or before June 14, 2011; and (f) the hearing on the Venue Transfer Motion will be adjourned to June 16, 2011. The Court entered an order approving this agreement on July 7, 2011.

### 3. Filing of Schedules, Meeting of Creditors and Bar Date

Upon the Debtor's motion, the Court extended the time for the Debtor to file its Schedules until March 11, 2011 and they were filed on such date. The Schedules provide detailed information on the Debtor's assets and liabilities, as well as other information about the Debtor and its operation. The Debtor expects to have amended its Schedules prior to the approval of this Disclosure Statement.

In addition, on March 22, 2011, the United States Trustee conducted the Section 341 meeting of creditors in the Debtor's chapter 11 case at which the Debtor's management appeared with the Debtor's counsel to answer Creditors' questions about the case.

The Bankruptcy Court established June 20, 2011, as the deadline for the filing of proofs of Claim in the Bankruptcy Case for non-Governmental Units, and the 180th day after the Petition Date as the deadline for Governmental Units. The Debtor has also filed monthly operating reports and continues to file such reports as they come due.

### 4. Retention of Professionals

The Bankruptcy Court has authorized the Debtor to retain Pachulski Stang Ziehl & Jones LLP as its general bankruptcy counsel, which employment was approved on March 14, 2011.

### 5. Objection to Secured Claim of CWF

The Debtor has prepared an objection to the Secured Claim of CWF. Barring a settlement of such Claim, the Debtor intends to file the objection to the Secured Claim of CWF on June 24, 2011. In such case, the Debtor will update the Disclosure Statement to reflect such objection.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### 6. Postpetition Settlement with AVN

As set forth in the treatment section below, the Debtor and AVN have agreed to a modification of the AVN Lease Documents through the Plan. Under the Plan, AVN shall retain, unaltered, all of the legal, equitable and contractual rights of its Secured Claim except that in the event of a Plan Default, in addition to the remedies AVN may have against Minor, the sole remedy on account of the AVN Guarantee and the AVN Deed of Trust will be the Orderly Sale Process, rather than foreclosure.

### 7. Postpetition Discussions with Sotheby's

As set forth in the treatment section below, the Debtor is in discussions with Sotheby's regarding a proposed modification to the Sotheby's Settlement through the Plan. Sotheby's shall retain, unaltered, all of the legal, equitable and contractual rights of its Secured Claim except that (i) in the event of a Plan Default, in addition to any remedies Sotheby's has against Minor, the sole remedy against the Reorganized Debtor will be the Orderly Sale Process, rather than foreclosure, and (ii) section 2(a) of the Sotheby's Agreement shall be amended to replace December 31, 2011 with March 31, 2012.

### 8. Approval of the Disclosure Statement and Solicitation Procedures

On [DATE], 2011, the Debtor filed a notice scheduling (i) approval of the adequacy of the Disclosure Statement, procedures for soliciting votes on the Plan and the dissemination of the Disclosure Statement, the manner and form of notice of the Plan, and (ii) the granting of related relief. The Bankruptcy Court's order approving the Debtor's motion is enclosed with this Disclosure Statement for your review.

**III.**

**DESCRIPTION OF THE PLAN**

A discussion of the principal provisions of the Plan as they relate to the treatment of Classes of Allowed Claims is set forth below. The discussion of the Plan which follows constitutes a summary only, and should not be relied upon for voting purposes. You are urged to read the Plan (which is attached to this Disclosure Statement as **Exhibit A**) in full in evaluating whether to accept

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

or reject the Plan proposed by the Debtor. If any inconsistency exists between this summary and the Plan, the terms of the Plan will control.

**A.** **Description Of Classes**

The Plan divides Creditors and Interest Holders into Classes. Creditors with similar Claims are placed in the same Class. There are six (6) Classes of Claims and one (1) Class of Interests under the Plan as follows:

**Class 1 Claims**. Class 1 will consist of all Other Priority Claims.

**Class 2 Claims**. Class 2 will consist of the Secured Claim of CWF.

**Class 3 Claims**. Class 3 will consist of the Secured Claim of AVN.

**Class 4 Claims**. Class 4 will consist of the Secured Claim of Sotheby's.

**Class 5 Claims**. Class 5 will consist of all Other Secured Claims. Each holder of an Allowed Claim in Class 5 will be considered to be in its own separate subclass, and each subclass will be deemed to be a separate Class for purposes of the Plan.

**Class 6 Claims**. Class 6 will consist of all Unsecured Claims.

**Class 7 Interests.** Class 7 will consist of all Interests in the Debtor.

**B.** **Treatment of Unclassified Claims**

The treatment of unclassified claims is discussed below and in Article III of the Plan. The Plan sets forth the treatment of Administrative Claims (including Claims for Professional Fees) and Priority Tax Claims, which are not classified under the Plan. The Plan also provides for an Administrative Claims Bar Date, which requires that all requests for payment of Administrative Claims must be filed on or before the first business date that is thirty (30) days after the date on which the Bankruptcy Court enters the Confirmation Order; *provided, however*, holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtor's business following the Petition Date are not required to comply with the Administrative Claim Bar Date, *provided that*, (i) such holders have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the Debtor in the ordinary course of business, and (ii) such Claims are not past due according to their terms.

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

DOCS_SF:77607.5

## 1. **Allowed Administrative Expense Claims**

Each Allowed Administrative Claim, unless the holder of such Claim has agreed to a different treatment, will be paid in full by a one time Cash payment by the Reorganized Debtor on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such other date as the holder of such Claim and the Reorganized Debtor may agree.

## 2. **Allowed Priority Tax Claims**

Each Allowed Priority Tax Claim, unless the holder of such Claim has agreed to a different treatment, will receive at the option of the Reorganized Debtor the following: (i) payment in full in Cash, without interest, by the Reorganized Debtor from Available Cash and/or the Effective Date Cash Contribution on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such other date as the holder of such Claim and the Reorganized Debtor may agree, or (ii) deferred cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the statutory rate under applicable non-bankruptcy law or at a rate to be agreed upon by the Reorganized Debtor and the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; provided, however, that the Reorganized Debtor may prepay any or all such Claims at any time, without premium or penalty. In the event the Reorganized Debtor elects payment option (ii), the payment of each Allowed Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (a) the first Business Day following the end of the first full calendar quarter following the Effective Date, (b) the first Business Day following the end of the first full calendar quarter following the date an order allowing such Claim becomes a Final Order, and (c) such other time or times as may be agreed with the holder of such Claim. Each installment shall include simple interest on the unpaid balance of the Allowed Tax Claim, without penalty of any kind, at the non-default rate of interest prescribed, agreed to or determined under option (ii). In addition, to the extent the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:37:28    Page 25 of
51
DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION
DOCS_SF:77667.2

Reorganized Debtor elects payment option (ii), the holder of any Secured Tax Claim shall retain its underlying liens on the applicable collateral pending full payment.

**C.   Treatment of Classified Claims and Interests**

The treatment of classified Claims and Interest is discussed below and in Article IV of the Plan.  A summary of the treatment of classified Claims and Interests is also provided in the chart set forth in Section 1.F of this Disclosure Statement.  As set forth in the Plan and herein, Class 2, Class 3, Class 4, and Class 5 are each impaired and are entitled to vote on the Plan.  Class 1, Class 6 and Class 7 are not impaired and are not entitled to vote on the Plan.

**1.   Allowed Other Priority Claims**

Each holder of an Allowed Other Priority Claim will receive full payment of the Allowed amount of such Claim on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim.

**2.   Secured Claim of CWF**

The holder of an Allowed Class 2 Claim will receive the New CWF Note, pursuant to which the holder will receive:

(a)   Interest:  Interest only payable quarterly in arrears at the rate of 3.25% per annum, with default interest accruing following an uncured Plan Default at the default rate of 5.25% per annum.  The first quarterly interest payment shall be payable on or before the fifteenth (15th) day of the month following the month in which the Effective Date occurs, and each following quarterly interest payment shall be payable on or before the fifteenth (15th) day of the month every successive three (3) months.  To the extent that the Claim becomes an Allowed Claim pursuant to a Final Order, then on the next quarterly payment date after the applicable Final Order, the holder of the Allowed Class 2 Claim shall receive a sufficient catch-up payment so that the holder receives the aggregate amount that would otherwise have been paid to it, up to that point, if the Class 2 Claim had been Allowed in its full amount as of the Effective Date in accordance with the foregoing interest payment schedule.

(b)   Maturity:  All unpaid amounts due under the New CWF Note, including principal, shall be due and payable on the date that is 3 years from the later of (a) the Effective Date or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim (the "CWF Maturity Date").

(c)   Cure Period upon Default:  The Reorganized Debtor shall have 15 days following written Plan Default Notice of a default to cure any monetary Plan Default and 30 days to cure any other asserted Plan Default under the New CWF Note.  The remedy upon Plan Default, will, however, be the Orderly Sale Process, rather than foreclosure.  The other terms and conditions of the restructured debt will be set forth in the New CWF Note filed in the Plan Supplement.

### 3. **Secured Claim of AVN**

On the Effective Date, the holder of an Allowed Class 3 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder <u>except</u> that in the event of a Plan Default, in addition to the remedies AVN may have against Minor, the sole remedy on account of the AVN Guarantee and the AVN Deed of Trust will be the Orderly Sale Process, rather than foreclosure.

### 4. **Secured Claim of Sotheby's**

On the Effective Date, the holder of an Allowed Class 4 Claim shall retain, unaltered, all of the legal, equitable and contractual rights to which such Claim entitles the holder except that (i) in the event of a Plan Default, in addition to any remedies Sotheby's has against Minor, the sole remedy against the Reorganized Debtor will be the Orderly Sale Process, rather than foreclosure and (ii) section 2(a) of the Sotheby's Agreement shall be amended to replace December 31, 2011 with March 31, 2012.

### 5. **Other Secured Claims**

On or prior to the Effective Date, the Debtor will select, in its discretion, one of the following alternative treatments for each Allowed Other Secured Claim in Class 5, which treatment will be in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Other Secured Claim:

(a) <u>Abandonment or Surrender</u>: The Debtor will abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim;

(b) <u>Cash Payment</u>:  The Debtor will pay to the holder of such Claim Cash equal to the amount of such Claim, or such lesser amount to which the holder of such Claim and the Debtor will agree, in full satisfaction and release of such Claim;

(c) <u>Unimpairment</u>:  The Debtor will leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

### 6. **General Unsecured Claims**

Except to the extent that the holder of an Allowed Unsecured Claim accepts, or has accepted, less favorable treatment, each holder of an Allowed Unsecured Claim will receive, in exchange for and in full and final satisfaction of such Claim, quarterly Cash payments over one (1)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

year plus simple interest at the Federal Judgment Rate per annum that in the aggregate will equal 100% of the amount of its Allowed Claim as of the Effective Date.

**7. Interests**

The legal, equitable, and contractual rights of the holder(s) of the Interests shall be left unaltered.

**D. Implementation of the Plan**

Article V of the Plan provides the principal means for the implementation of the Plan. Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan will be obtained from Mr. Minor's infusion of the Effective Date Cash Contribution and subsequent Post-Emergence Cash Contributions, Available Cash (if any), any proceeds from the sale or other disposition of assets of the Reorganized Debtor, as deemed necessary and appropriate by the Reorganized Debtor, and from any other lawful source.

**1. Effective Date Transactions**

On (or, where appropriate, after) the Effective Date, the following actions will occur: (i) the transactions contemplated under the Plan will be consummated; (ii) Mr. Minor will cause the Effective Date Cash Contribution to be provided to the Debtor; and (iii) the Reorganized Debtor or Disbursing Agent, if any, will make all Cash distributions required under the Plan on the Effective Date.

**2. Revesting of Estate Assets**

Except as otherwise provided in any provision of the Plan including with respect to the CWF Deed of Trust, the AVN Deed of Trust, and the Sotheby's Deed of Trust, upon the Effective Date, the Reorganized Debtor will be vested with all right, title and interest in the Estate Assets free and clear of all Claims and Liens other than any obligations under the Plan.

**3. Continued Existence**

As of the Effective Date, the Reorganized Debtor will continue to maintain its legal existence for all purposes under the Plan, and retain all the powers of a legal entity under applicable law. The Reorganized Debtor will be authorized to execute such other documents as are necessary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:06   Page 28 of
DS580100204\DOCS_SF:77602c   DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   and appropriate to carry out the provisions of the Plan, without the necessity of filing such

2   documents with the Bankruptcy Court.

3       **4.**  **Management of Reorganized Debtor**

4          The Minor Trust, the trustee and sole beneficiary of which is Mr. Minor, is the owner and

5   sole member and manager of the Debtor. Mr. Minor, as trustee of the Minor Trust, manages the

6   Debtor, and will manage the Reorganized Debtor in accordance with the Plan, the Debtor's Articles

7   of Organization, as may be amended from time to time, and applicable nonbankruptcy law.

8          As discussed above, Mr. Minor has at all relevant times been overseeing the preservation

9   and management of Carter's Grove since the purchase thereof in 2007. Mr. Minor is a successful

10  entrepreneur, having founded CNET, a media company, and various other successful technology

11  businesses. Mr. Minor had run and overseen CNET's operations for approximately eight years,

12  during which time it became one of the Internet's first companies to achieve profitability. CNET

13  was later purchased by CBS in 2008 and is now CBS Interactive.

14         In addition to CNET, Mr. Minor has founded or co-founded the following internet

15  companies (a) salesforce.com, (b) E! Online, (c) Open DNS, (d) Vignette, (e) ScoutLabs,

16  (f) Grandcentral/Google Voice, and (g) Snap!/NBCi. Through Mr. Minor's efforts, these

17  companies have created value in excess of $56 billion.

18         Most recently, Mr. Minor, through Minor Studios, is marketing his latest internet product,

19  Atmosphir, LLC ("Atmosphir"). Through atmosphir.com, Mr. Minor has created a set of online

20  tools that allow people on the internet to build and share virtual worlds, some of which look like the

21  real world and others that are pure fantasy. Since December, 120,000 virtual worlds have been

22  created on atmosphir.com which can be played on PC, Mac, and soon IPAD. The Atmosphir

23  generates revenue from the sale of virtual items like clothes, cars, special powers, etc. The market

24  in this area is exploding, reaching $10 billion next year. Atmosphir is quickly growing. Mr. Minor

25  is the sole owner of Minor Studios, which currently owns approximately 84% of Atmosphir. Mr.

26  Minor is currently soliciting proposal for certain convertible debt financing secured by the assets of

27  Atmosphir and his interest in Atmosphir, which will be used to fund payments under the Plan.

28

An avid preservationist, Mr. Minor is managing Carter's Grove as a personal passion, and is not paid by the Debtor for his services.

## 5. **Continued Management of Reorganized Debtor**

On and after the Effective Date, the Reorganized Debtor will continue to manage and may use, acquire and dispose of the Estate Assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules

## 6. **Retained Claims and Defenses**

On and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor will retain and may enforce the Retained Claims and Defenses (including through objections to Claims) with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code to the extent of and consistent with its authority under the Plan. The Reorganized Debtor may investigate Retained Claims and Defenses and may assert, settle or enforce any such claims or defenses in a manner consistent with the Plan. To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Reorganized Debtor as successor to the Debtor may continue the prosecution of such Retained Claims and Defenses. Any proceeds received from or on account of the Retained Claims and Defenses will constitute Estate Assets and will vest entirely in the Reorganized Debtor. In connection with the Retained Claims and Defenses, the Reorganized Debtor will be authorized to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, and (ii) employ and compensate Professionals. From and after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, the Reorganized Debtor will be free to operate without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

The Debtor is not currently aware of any potential causes of action and claims of the Estate against third parties, other than against its claim against CWF; however, the Debtor's analysis is ongoing. The Debtor reserves all its rights with respect to any and all Retained Claims and Defenses, including the right to object to any Claims as the Debtor completes its analysis and reconciliation of Claims, including, but not limited to, Claims that were either asserted, filed or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  amended after the date of this Disclosure Statement, and in accordance with the provisions set forth

2  in the Plan and applicable law.

3      **7.**  **Distribution Procedures**

4      Except as otherwise agreed by the holder of a particular Claim, or as provided in the Plan,

5  all amounts to be paid by the Reorganized Debtor or the Disbursing Agent, as applicable, under the

6  Plan will be distributed in such amounts and at such times as is reasonably prudent, with sufficient

7  reserves established in the Reorganized Debtor's discretion to satisfy any Disputed and unpaid

8  Professional Fees.  Unless otherwise provided in the Plan, all distributions to Creditors will be:

9  (i) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a

10  domestic bank, and (ii) by first-class mail (or by other equivalent or superior means as appropriate).

11      **8.**  **Resolution of Disputed Claims**

12      All objections to Claims will be filed and served not later than 90 days following the

13  Effective Date, _provided_, _that_, such date may extended by the Bankruptcy Court for cause shown.

14  If an objection is not timely filed by the deadline established in this Section, any remaining

15  Disputed Claims will be deemed to be Allowed Claims for purposes of the Plan.  Unless otherwise

16  provided in the Confirmation Order, the Reorganized Debtor will be authorized to settle, or

17  withdraw any objections to, any Disputed Claim following the Confirmation Date without further

18  notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim will be

19  deemed to be an Allowed Claim in the amount compromised for purposes of the Plan, _provided_,

20  _however_, that the Bankruptcy Court will retain jurisdiction to hear and adjudicate the allowance or

21  disallowance of Claims, as provided for in Article IX of the Plan.  Under no circumstances will any

22  distributions be made on account of Disallowed Claims.

23      **9.**  **Allocation of Distributions.**

24      Distributions to any holder of an Allowed Claim will be allocated first to the principal

25  amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the

26  extent the consideration exceeds such amount, to the remainder of such Claim comprising interest,

27  if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

28

SF:77607.5

**10. <u>Disputed Payments.</u>**

In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Reorganized Debtor or the Disbursing Agent, as applicable, may, in lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof will be determined by the Bankruptcy Court.

**11. <u>Unclaimed Property.</u>**

Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity will forfeit all rights to any distribution under the Plan. Upon forfeiture, such Cash (including interest thereon) will be made available for distribution to (i) in the event of forfeiture of a payment made on account of an Allowed Unsecured Claim, to the holders of Allowed Unsecured Claims; or (ii) in the event of a forfeiture of a payment made on account of any other claim, to the Reorganized Debtor. Entities which fail to claim Cash will forfeit their rights thereto and will have no claim whatsoever against the Reorganized Debtor or the Disbursing Agent, as applicable, or any holder of an Allowed Claim to whom distributions are made under the Plan, <u>provided</u>, <u>however</u>, that the Disbursing Agent will undertake reasonable efforts, in its business judgment, to locate creditors whose distributions are returned to the Disbursing Agent without any return or forwarding address.

**12. <u>Setoffs</u>**

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any right of setoff or recoupment the Debtor or the Reorganized Debtor may have against any Creditor.

**13. <u>No Distributions on Late-Filed Claims</u>**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date will be a Disallowed Claim, and no distribution will be made to a holder of such a Claim, <u>provided</u>, <u>that</u>, to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, such Claim will be treated as an Allowed Claim in the amount in which it was so listed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**14. <u>Post-Effective Date Reports</u>**

Upon the Effective Date, the Reorganized Debtor will prepare and submit to the Bankruptcy Court and the Office of the United States Trustee, post-confirmation reports for a revested debtor in the form suggested by the Office of the United States Trustee for Region 17. The first post-confirmation report will be due within thirty (30) days following the end of the first calendar quarter from the Effective Date, and reports will be filed on a quarterly basis thereafter, unless otherwise agreed by the Reorganized Debtor and the Office of the United States Trustee.

**15. <u>Post Effective Date Employment and Compensation of Professionals</u>**

After the Effective Date, professionals for the Debtor will take only those actions as are authorized by the Reorganized Debtor. Professionals will not be required to file formal applications for Bankruptcy Court approval of post-Effective Date employment or payment of post-Effective Date fees and expenses. To the extent that the Reorganized Debtor requires Professionals to perform services following the Effective Date, the Reorganized Debtor is authorized to compensate Professionals without further order of the Bankruptcy Court with respect to fees and expenses incurred subsequent to the Effective Date.

**16. <u>Final Decree</u>**

Upon substantial consummation of the Plan, the Reorganized Debtor will be authorized to file a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code. Concurrently with the motion for entry of final decree, the Reorganized Debtor will also file a report with the Court and the Office of the United States Trustee that sets forth the distributions made by the Reorganized Debtor pursuant to the Plan.

**E. <u>Executory Contracts</u>**

Article VI of the Plan sets forth procedures governing the assumption and rejection of the Debtor's executory contracts and unexpired leases.

Upon the Effective Date, the Debtor will assume each of the Assumed Contracts except for any Rejected Contracts identified in the Plan Supplement. The Debtor reserves the right to make additions to the Plan Supplement up to fourteen (14) days prior to the date on which objections

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:08   Page 33 of
51
SF:77607.2 58800/002 DOCS_SF:77607.2

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  must be filed to the Plan with respect to the Confirmation Hearing. The Reorganized Debtor will

2  be responsible for all Cure Obligations, if any, with respect to the Assumed Contracts.

3         The Rejected Contracts are any contracts and leases listed in the Plan Supplement.

4  Inclusion of a contract or lease in the Plan Supplement does not constitute a waiver by the Debtor

5  or the Reorganized Debtor of the right to contend that some or all of such contract or lease is not

6  executory. Any Rejection Claim arising from the rejection of an executory contract or unexpired

7  lease pursuant to the Plan must be filed within thirty (30) days of entry of the Confirmation Order,

8  provided that such deadline is not applicable to any executory contract or unexpired lease rejected

9  prior to the Effective Date and for which a different Rejection Claim Bar Date was previously fixed

10  by the Bankruptcy Court pursuant to Bankruptcy Rule 3002(c)(4). The notice of entry of the

11  Confirmation Order will provide the Rejection Claim Bar Date for agreements rejected pursuant to

12  the Plan. Any Rejection Claim not filed by the applicable Rejection Claims Bar Date will be a

13  Disallowed Claim and will be forever barred as a Claim against the Debtor, the Reorganized

14  Debtor, or any property of the Debtor and from sharing in any distribution under the Plan.

15  **F.      Conditions to Confirmation of the Plan**

16         Confirmation of the Plan is conditioned upon the entry of an order confirming the Plan

17  which will, among other things, (a) authorize the implementation of the Plan in accordance with its

18  terms; (b) contain findings supported by evidence adduced at the Confirmation Hearing that the

19  Plan is proposed in good faith, that all actions contemplated by the Plan are necessary to implement

20  the restructuring contemplated by the Plan are authorized by all corporate action, and pursuant to

21  section 1146(a) of the Bankruptcy Code the issuance of securities, if any, and the grant of liens and

22  security interests pursuant to the Plan are not subject to any stamp, real estate, or transfer tax;

23  (c) issue the injunction set forth in the Plan, effective as of the Effective Date; (d) decree that on the

24  Effective Date, the revesting of assets in the Debtor contemplated by the Plan is or will be legal,

25  valid and effective, and vest or will vest in the Reorganized Debtor good and marketable title to

26  such property free and clear of all Liens, Claims, and Interests except as provided in the Plan; and

27  (e) confirm the Plan and authorize implementation in accordance with its terms. If any of the

28

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:30:51   Page 34 of
51
DOCS_SF:77667.5                                    DEBTOR'S DISCLOSURE STATEMENT
                                        IN SUPPORT OF PLAN OF REORGANIZATION

foregoing terms and conditions is not met, the Debtor may, at its sole option, withdraw the Plan and, if withdrawn, the Plan will be of no further force or effect.

The effectiveness of the Plan is subject to the Confirmation Order becoming a Final Order, unless waived by the Debtor. If no stay of the Confirmation Order is then in effect, the Plan will become effective.

## G. Effects of Confirmation

### 1. Binding Effect

The provisions of the confirmed Plan will bind the Debtor, the Reorganized Debtor, any entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts will be as fixed and adjusted pursuant to the Plan. With respect to any taxes of the kind specified in Bankruptcy Code section 1146(a), the Plan will also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded.

### 2. Revesting of Property Free and Clear

Upon the Effective Date, title to all Estate Assets will vest in the Reorganized Debtor for the purposes contemplated under the Plan and will no longer constitute property of the Estate pursuant to section 541 of the Bankruptcy Code. Except as otherwise provided by the Plan, including with respect to the CWF Deed of Trust, the AVN Deed of Trust and the Sotheby's Deed of Trust, and to the full extent allowed by sections 1141(b) and (c) of the Bankruptcy Code, upon the Effective Date, all Estate Assets will be free and clear of all Claims, Liens and Interests, including Unsecured Claims. Following the Effective Date, the Reorganized Debtor may use, acquire or dispose of any such property free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order. Except as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

otherwise expressly provided in the Plan or Confirmation Order, all rights or causes of action are hereby preserved and retained for enforcement solely and exclusively by and at the discretion of the Reorganized Debtor.

### 3. **Discharge of Debtor**

Except with respect to the Assumed Obligations and as otherwise provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims. Confirmation of the Plan will discharge the Debtor and the Reorganized Debtor from all Claims or other debts that arose at any time before the Effective Date (other than the Assumed Obligations), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a Proof of Claim based on such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed under section 502 of the Bankruptcy Code; or (iii) the holder of a Claim has accepted the Plan. As of the Effective Date all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim as a liability of the Debtor or the Reorganized Debtor to the full extent permitted by section 524 of the Bankruptcy Code.

### 4. **Injunction**

The Confirmation Order will be a judicial determination, effective on the occurrence of the Effective Date, of discharge and termination of all liabilities and of all claims against the Debtor and the Reorganized Debtor as provided in the Plan. On the Effective Date, and except as otherwise provided by the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Debtor's estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Reorganized Debtor with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Reorganized Debtor or any assets

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:28   Page 36 of

DOCS_SF:77667.2

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

or property of the Reorganized Debtor with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Reorganized Debtor or any property of the Reorganized Debtor with respect to any such Claim; (d) asserting, directly or indirectly any obligation against the Reorganized Debtor or any property of the Reorganized Debtor with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Except as otherwise provided in the Plan, no claims of the Debtor or Reorganized Debtor against any person or entity will be discharged, released, or compromised pursuant to the Plan or Confirmation Order.

### 5. **Full and Final Satisfaction.**

Commencing upon the Effective Date, the Reorganized Debtor or the Disbursing Agent, as applicable, will be authorized and directed to distribute the amounts required under the Plan to the holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor will be deemed fixed and adjusted pursuant to the Plan and the Debtor and the Reorganized Debtor will have no further liability on account of any Claims or Interests except as set forth in the Plan. All payments and all distributions made by the Reorganized Debtor or the Disbursing Agent, as applicable, under the Plan will be in full and final satisfaction, settlement and release of all Allowed Claims.

### 6. **Limitation of Liability**

The Debtor, the Reorganized Debtor and their respective members, officers, directors, managers, employees, agents, and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Case or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Case, provided that, this limitation will not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan or the non-debtor party to an Assumed Contract to enforce its rights under the Assumed Contract, nor will the foregoing exonerate any of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Exculpated Parties from any liability that is determined that would otherwise result from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. In addition, notwithstanding any other provision of the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, will have any right of action against any Exculpated Party for any act or omission in connection with, relating to or arising out of the Chapter 11 Case or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

## IV.

## OTHER PLAN PROVISIONS

**A.**    **Retention of Jurisdiction**

From and after the Confirmation Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including, but not limited to, for the purposes set forth in Article IX of the Plan.

**B.**    **Exemption from Transfer Taxes**

Pursuant to the provisions of section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities, if any, under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Debtor or Reorganized Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:28   DEBTOR'S DISCLOSURE STATEMENT
DOCS_SF:77607.5                                                              IN SUPPORT OF PLAN OF REORGANIZATION

transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

**C.**    **Post-Confirmation Date Notices**

From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Court prior to such date will no longer be effective. No further notices (other than notice of entry of the Confirmation Order) will be required to be sent to any entities other than the Office of the U.S. Trustee and any party who files a renewed request for service of pleadings.

**D.**    **Certain Actions**

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, members, directors, managers, or officers of the Debtor under the Plan, including, without limitation, (a) the distribution of Cash pursuant to the Plan, (b) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (c) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor will be deemed to have occurred and will be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable limited liability company and/or other applicable business entity laws of the state in which the Debtor or the Reorganized Debtor is chartered, organized or incorporated, without any requirement of further action by the owners, members, directors, managers, or officers of the Debtor.

**V.**

**TAX DISCLOSURE**

**A.**    **Tax Implications**

Implementation of the Plan may have federal, state, and local tax consequences to the Debtor and Creditors. No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan, and the following disclosure (the "Tax Disclosure") does not constitute

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and is not intended to constitute either a tax opinion or tax advice to any person. Rather, the Tax Disclosure is provided for informational purposes only.

Moreover, the Tax Disclosure summarizes only certain of the federal income tax consequences associated with the Plan's implementation, and does not attempt to comment on all such aspects of the Plan's implementation. In addition, certain of the federal income tax consequences described in the Tax Disclosure are dependent on factual determinations that are subject to uncertainties. Similarly, the Tax Disclosure does not attempt to consider any facts or limitations applicable to any particular Creditor which may modify or alter the consequences described below. The Tax Disclosure also does not address state, local, or foreign tax consequences or the consequences of any federal tax other than the federal income tax. No assurance can be given that legislative, judicial, or administrative changes will not be forthcoming that would affect the accuracy of the discussion below. Any such changes could be material and could be retroactive with respect to the transactions entered into or completed prior to the enactment or promulgation thereof. Finally, the tax consequences of certain aspects of the Plan are uncertain due to a lack of applicable legal authority and may be subject to judicial or administrative interpretations that differ from the discussion below.

Creditors, therefore, are advised to consult with their own tax advisors regarding the tax consequences to them of the transactions contemplated by the Plan, including federal, state, local, and foreign tax consequences.

**1.   Tax Consequences to the Reorganized Debtor**

On the Effective Date, the Interest Holder will continue to retain the Interests. The Reorganized Debtor will comply with its tax reporting and filing obligations with governmental authorities, to the extent it has any, as appropriate and proper under various tax laws and regulations to which it is subject.

**2.   Tax Consequences to Creditors**

Pursuant to the Plan, holders of Allowed Claims will receive distributions of Cash in exchange for their Allowed Claims. Whether and the extent to which such a payment to a Creditor holding an Allowed Claim is includible in the holder's gross income will be determined by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  reference to the claim in respect of which the distribution is made. The holder may recognize

2  ordinary income in respect of such payment if the claim is in respect of an item generating ordinary

3  income, such as wages, to such holder. Similarly, if a claim is held as part of a trade or business,

4  the holder of such claim may recognize ordinary loss to the extent that such holder's adjusted basis

5  in the claim exceeds the amount received by such holder with respect to such claim. Any

6  distribution attributable to accrued but unpaid interest may be treated as ordinary income,

7  regardless of whether the origin of the claim is capital in nature or whether gain or loss is otherwise

8  recognized on the Claim.

9  EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING

10  THE CONSEQUENCES FOR SUCH CREDITOR OF THE TRANSACTIONS

11  CONTEMPLATED BY THE PLAN.

12  **VI.**

13  **LIQUIDATION ANALYSIS**

14  With respect to each impaired class of claims and interests, confirmation of a plan requires

15  that each such holder either (a) accept the plan or (b) receive or retain under the plan property of a

16  value, as of the effective date of the plan, that is not less than the value such holder would receive

17  or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is

18  referred to as the "best interests test." This analysis requires the Bankruptcy Court to determine

19  what the holders of allowed claims and allowed interests in each impaired class would receive from

20  a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of

21  the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the

22  value of the distributions from the proceeds of the liquidation of the debtor's assets and properties

23  (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value

24  offered to such classes of claims and interests under the plan.

25  In a chapter 7 liquidation, the cash available for distribution to creditors would consist of

26  the proceeds resulting from the disposition of the unencumbered assets of the debtor, augmented by

27  the unencumbered cash held by the debtor at the time of the commencement of the liquidation case.

28  Such cash amount would be reduced by the costs and expenses of the liquidation, including, but not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

limited, to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and by such additional administrative and priority claims that may result from the termination of the debtor's business and the use of chapter 7 for the purpose of liquidation.

Here, since the Plan provides for **full payment** to holders of Allowed Claims and Interests, by definition, the Plan satisfies the "best interest" test because the amount proposed to be paid to Creditors and Interest Holders –full payment– is not less than the amount each Creditor and Interest Holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. In fact, the Debtor estimates that, given the unique nature of Carter's Grove, a liquidation of its assets under chapter 7 of the Bankruptcy Code would adversely affect the value of the Debtor's assets and potentially result in less than full recovery to Creditors.

For example, the May 2011 appraisal of the Debtor's asset provides that any sale of the property should be preceded by a marketing period of up to twelve (12) months. If the Chapter 11 Case was converted to case under chapter 7 of the Bankruptcy Code and the Debtor's assets converted to Cash through a liquidation sale, the value of the property would likely be reduced by as much as 20% to 40%.

In addition, under a chapter 7 liquidation, other factors could affect the value of the Debtor's assets and recoveries of Creditors: (a) the increased costs and expenses of a chapter 7 liquidation, including the appointment of a trustee, the trustee's employment of attorneys and other professionals (including a real estate broker that would be entitled to a commission for the sale of the property), and additional administrative and priority claims that may result from the continued administration of the case and management of the Debtor's assets; (b) the expected delay in distributions to holders of impaired Claims and Interests; and (c) the likelihood that assets may need to be sold or otherwise disposed of in a less orderly fashion and that the value achievable for such assets in a chapter 7 liquidation might be less than realized in chapter 11.

In light of the fact that all holders of impaired Claims or Interests are being paid in full under the Plan, the "best interest" test is satisfied.

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:38:56   Page 42 of
9380100\2\DOCS_SF:77607.2   DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

**VII.**

**RISK ANALYSIS**

As noted above, the recovery of Creditors is not solely tied to the Debtor's future financial performance (assuming that the transactions under the Plan are consummated) because generally Creditors with Allowed Claims will be paid through the funding provided by Mr. Minor -- the Effective Date Cash Contribution (funded on the Effective Date) and the subsequent Post-Emergence Cash Contributions. There are events that could occur and risk associated with the Debtor's reorganization that could conceivably hinder the Debtor's ability to meet its Plan obligations. These events and risk factors include, but are not limited to the following:

(a) <u>Unforeseen financial difficulties of Mr. Minor</u>: The Debtor's ability to implement the Plan and pay its ongoing obligations is dependent on Mr. Minor's personal financial situation. As demonstrated by the list of material assets and liabilities of Mr. Minor ("<u>Minor Material Assets/Obligations</u>") to be annexed hereto as **Exhibit C**, which will be filed on a subsequent date, the Debtor believes that the Plan is feasible because Mr. Minor will have sufficient liquidity to make the payments contemplated under the Plan. However, Mr. Minor may experience unforeseen events or circumstances that may adversely affect his financial condition and/or liquidity.

In the event Mr. Minor's financial condition and/or liquidity is adversely affected, the Debtor believes that Creditors will nonetheless be paid in full provided that the sale of the Debtor's assets is conducted pursuant to the Orderly Sale Process.

(ii) <u>Unforeseen events affecting the Reorganized Debtor and the Carter's Grove</u>: Further, unforeseen events or circumstances may adversely affect the Carter's Grove, including, without limitation, acts of god, unforeseen or materially underestimated expenses (including Allowed Claims in amounts higher than expected). However, the Debtor believes that it will be able to satisfy the expenses of the Debtor as they come due.

In sum, although the Debtor currently expects that all of the transactions required under the Plan (including Mr. Minor's timely funding of the Post-Emergence Cash Contributions) will be consummated, there is always a risk that an unforeseen development could affect either the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554   Doc# 61   Filed: 06/14/11   Entered: 06/14/11 17:37:14   Page 43 of
DOCS_SF:77602.5                                                    DEBTOR'S DISCLOSURE STATEMENT
                                                       IN SUPPORT OF PLAN OF REORGANIZATION
51

confirmation or the implementation of the Plan or affect the transactions contemplated under the Plan after confirmation. Finally, while the Debtor believes that the Plan satisfies all of the confirmation requirements under section 1129 of the Bankruptcy Code, there is no guarantee that the Bankruptcy Court will concur with this analysis and necessarily confirm the Plan.

**VIII.**

**CONFIRMATION OF THE PLAN**

The Debtor will seek confirmation of the Plan at the Confirmation Hearing, pursuant to applicable provisions of the Bankruptcy Code.

**A.    Confirmation Hearing**

The Bankruptcy Court will hold a hearing on [DATE], 2011 to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. The hearing on confirmation will be held at the United States Bankruptcy Court, 235 Pine Street, 19th Floor, San Francisco, California.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objection to confirmation of the Plan must be made in writing and specify the legal grounds for such objection, the nature and amount of the Claim held by such party, and must be filed with the Bankruptcy Court, together with proof of service, and served on all required parties by the objection deadline set by the Bankruptcy Court. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**B.    Requirements For Confirmation**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the provisions of section 1129 of the Bankruptcy Code have been satisfied. If all of the provisions of section 1129 of the Bankruptcy Code are met, the Bankruptcy Court may enter an order confirming the Plan. The Debtor believes that all of the requirements of section 1129 of the Bankruptcy Code will be satisfied. Among other things, the Debtor believes that the Plan will be accepted by the requisite number of votes and satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code. The Debtor submits that it has complied or will have complied with all of the requirements

of chapter 11, and that the Plan has been proposed and is made in good faith. In addition, the Debtor submits that the Plan satisfies the "best interest" of creditors test and is not likely to be followed by liquidation or the need for further reorganization.

## C. Classification of Claims and Interests

The Bankruptcy Code requires that a plan of reorganization place each creditor's claim and each equity interest in a class with other claims or interests that are "substantially similar." The Plan establishes seven (7) Classes of Claims and Interests. Under the Plan, Claims which are secured or entitled to priority are placed in separate Classes from Unsecured Claims. Article II of the Plan sets forth the description of the Classes of Claims and Interests.

The Debtor believes that the Plan's classification of Claims and Interests fully complies with the requirements of the Bankruptcy Code.

## D. Acceptance

As a condition to Confirmation, the Bankruptcy Code requires that each class of holders of claims or interests accept the plan, except as otherwise described in this Disclosure Statement. The Bankruptcy Code defines acceptance by a class of holders of claims as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of claims of that class, but for this purpose counts only those who actually vote to accept or reject the plan. Holders of claims who fail to vote are not counted as either accepting or rejecting the plan.

Classes of claims and interest that are not "impaired" under a plan are deemed to have accepted the plan. A class is generally "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash. A class that receives nothing under a plan is deemed to reject such plan.

IN THIS CASE, CLASS 2, CLASS 3, CLASS 4, AND CLASS 5 ARE IMPAIRED UNDER THE PLAN AND ENTITLED TO VOTE ON THE PLAN.

## E. Best Interests of Creditors

As addressed above, the Debtor believes that confirmation of the Plan is in the best interests of the holders of Claims because Creditors are being paid in full under the Plan. Creditors are not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:37:15    Page 45 of
51

DS:00100292\DOCS_SF:77607.2    DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

entitled to more than full payment. Moreover, in light of the unique nature of Carter's Grove, a liquidation sale, rather than an Orderly Sale Process, could result in Creditors receiving less than full payment..

**F.    Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires a finding that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Plan proposed by the Debtor satisfies these requirements and is "feasible" because the implementation of the Plan and the reorganization of the Debtor's affairs will be funded by the Effective Date Cash Contribution and the Post-Emergence Cash Contributions by Mr. Minor who has substantial personal net worth and has a demonstrated track record in private equity, generating average annual adjusted income since 1998 (not inclusive of 2010, which is not yet due) of $24 million per year. Mr. Minor will cause adequate Cash to make the payments required under the Plan to be contributed to the Debtor and the Reorganized Debtor. Mr. Minor anticipates that one of his principal private equity investments –Minor Studios and Atmophir– will generate substantial cash through certain convertible debt financing prior to the Effective Date of the Plan and such Cash will provide one of the key sources of funding of the Plan. Mr. Minor's maintenance of the assets and outstanding liabilities set forth in Minor Material Assets/Obligations demonstrate that the Reorganized Debtor will have sufficient resources to meet its obligations under the Plan. Moreover the Plan provides for the Orderly Sale Process if for some unforeseen reason Mr. Minor's liquidity is not sufficient to satisfy the obligations under the Plan. The Orderly Sale Process is consistent with the proposed marketing period in the recent appraisal. Thus, under the Plan, Creditors will be paid in full either through periodic payments from Cash supplied from Mr. Minor from the proceeds of sale of Carter's Grove.

**G.    Cramdown**

A court may confirm a plan, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims and the plan meets the "cramdown"

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the

2  Bankruptcy Code requires that the court find that a plan is "fair and equitable" and does not

3  "discriminate unfairly" with respect to each non-accepting impaired class of unsecured claims or

4  interests. With respect to a dissenting class of unsecured claims, the "fair and equitable" standard

5  requires, among other things, that a plan contain one of two elements. It must provide either that

6  each holder of an unsecured claim in such class receive or retain property having a value, as of the

7  effective date of a plan, equal to the allowed amount of its claim, or that no holder of allowed

8  claims or interests in any junior class receive or retain any property on account of such claims or

9  interests. With respect to a dissenting class of interests, the "fair and equitable" standard requires

10  that the plan contain one of two elements. It must provide either (i) that each holder of an interest

11  in the class receive or retain property having a value, as of the Effective Date, equal to the greater

12  of the allowed amount of any fixed liquidation preference to which such holder is entitled, or the

13  value of such interests, or (ii) that no holder of an interest in any junior class receive or retain any

14  property on account of such interests. The strict requirement of the allocation of full value to

15  dissenting classes before junior classes can receive a distribution is known as the "absolute priority

16  rule."

17         The Debtor will request that the Bankruptcy Court confirm the Plan in accordance with

18  section 1129(b) of the Bankruptcy Code or modify the Plan in accordance with the terms thereof.

19  **H.     Alternatives to Confirmation of Plan**

20         If the Plan is not confirmed by the Bankruptcy Court and consummated, the alternatives

21  include (i) liquidation of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code; or

22  (ii) confirmation of an alternative plan of reorganization under chapter 11 of the Bankruptcy Code.

23         If the Plan is not confirmed, the Debtor will decide which alternative to pursue by weighing

24  each of the available options and choosing the alternative or alternatives that are in the best

25  interests of the Debtor, its Creditors and other parties in interest. However, the Debtor believes that

26  the Plan, as proposed, provides the greatest possible return currently available for the holders of

27  Claims in this chapter 11 case.

28

# IX.

# RECOMMENDATION AND CONCLUSION

Based on the foregoing, the Debtor believes that the Plan is in the best interests of Creditors and urges Creditors to vote to accept the Plan.

Dated:    June 14, 2011                    CARTER'S GROVE, LLC

                                          By    /s/ Halsey M. Minor
                                                _____
                                                Halsey M. Minor
                                                Trustee for the Halsey McLean Revocable
                                                Trust 11304, Sole Member

Respectfully, submitted,

PACHULSKI STANG ZIEHL & JONES LLP.

By    /s/ John W. Lucas
      _____
      Richard M. Pachulski
      Debra I. Grassgreen
      John W. Lucas
      Attorneys for Carter's Grove, LLC,
      Debtor and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:32:53    Page 48 of
DOCS_SF:77607.5                                                                        51
DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

**EXHIBIT A**

**(Debtor's Plan of Reorganization)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

58801002\DOCS_SF:77607.5

Case: 11-30554    Doc# 61    Filed: 06/14/11    Entered: 06/14/11 17:37:43    Page 49 of
51

# EXHIBIT B

## (Disclosure Statement Order)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

SF:77667.5 DOCS_SF:77667.5

DEBTOR'S DISCLOSURE STATEMENT
IN SUPPORT OF PLAN OF REORGANIZATION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

**(Minor Material Assets/Obligations)**

DOCS_SF:77607.5